1c2QfhaC

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK

2  ------------------------------x
   IN RE:

3  FEDERAL HOUSING FINANCE AGENCY          11 CV 5201 (DLC)

4  ------------------------------x
   Also Docket Nos.

5  11 CV 6188, 11 CV 6189, 11 CV 6190,
   11 CV 6192, 11 CV 6193, 11 CV 6195,

6  11 CV 6196, 11 CV 6198, 11 CV 6200,
   11 CV 6201, 11 CV 6202, 11 CV 6203,

7  11 CV 6739, 11 CV 6916, 11 CV 7010,
   11 CV 7048

8  ------------------------------x

9  VNB REALTY,
                Plaintiff,               11 CV 6805

10          v.
   Bank of America, et al.

11              Defendants.

12 ------------------------------x

13                                      New York, NY

14                                      December 2, 2011
                                        2:00 p.m.

15
   Before:

16
                    HON. DENISE L. COTE,

17
                                        District Judge

18

19

20

21

22

23

24

25

1c2QfhaC

1                                   APPEARANCES

2

QUINN, EMANUEL, URQUHART & SULLIVAN, LLP
3        Attorneys for Plaintiffs FHFA
PHILIPPE SELENDY
4   CHRISTINE CHUNG
ADAM ABENSOHN
5   MANISHA SHETH

6   KASOWITZ, BENSON, TORRES & FRIEDMAN, LLP
        Attorneys for Plaintiffs FHFA
7   MARC KASOWITZ
MICHAEL SHUSTER
8   KANCHANA LEUNG

9   SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
        Attorneys for Defendant UBS Investment Bank
10  JAY KASNER
SCOTT MUSOFF

11

SULLIVAN & CROMWELL
12       Attorneys for Defendants
PENNY SHANE (JP Morgan Chase)
13  BRUCE CLARK (First Horizon Nat. Corp and Nomura Holding Amer.)
AMANDA DAVIDOFF (First Horizon Nat. Corp. & Normura Holding)
14  JEFFREY SCOTT (Barclays Bank PLC)
THEODORE EDELMAN (Goldman Sachs & Co. & Goldman Sachs Mort. Co)
15  MICHAEL TOMAINO
JORDAN RAZZA

16

17  PAUL, WEISS, RIFKIND, WHARTON & GARRISON, LLP
        Attorneys for Defendants Citigroup
18  BRAD SCOTT KARP
SUSANNA BUERGEL

19

20  CRAVATH, SWAINE & MOORE, LLP
         Attorneys for Defendants Credit Suisse
21  RICHARD CLARY

22  SIMPSON, THACHER & BARTLETT, LLP
         Attorneys for Defendants
23  THOMAS RICE (Deutsche Bank & RBS)
MICHAEL CHEPIGA (Samuel L. Molinaro)

24

25

1c2QfhaC

1                          APPEARANCES CONTINUED

2

3    WILLIAMS & CONNOLLY, LLP
          Attorneys for Defendants Bank of America & Merrill Lynch
     DAVID S. BLATT
4    EDWARD BENNETT

5

6    MAYER BROWN, LLP
          Attorneys for Defendants HSBC North America Holding
     RICHARD SPEHR
7    MICHAEL WARE

8

9    GOODWIN PROCTER, LLP
          Attorneys for Defendants Countrywide Fin. Corp.
10   BRIAN PASTUSZENSKI
     MARK HOLLAND

11

12   DAVIS, POLK & WARDWELL, LLP
          Attorneys for Defendants Morgan Stanley
13   JAMES ROUHANDEH

14

15   WEIL, GOTSHAL & MANGES, LLP
          Attorneys for Defendants General Electric Co.
     GREG DANILOW

16
     GIBSON, DUNN & CRUTCHER, LLP
17        Attorneys for Defendants Citigroup, Deutsche Bank,
          RBS & UBS
18   ARIC WU

19   LEVINE LEE, LLP
          Attorneys for Defenedant David Spector
20   SCOTT KLUGMAN

21

22   SNR DENTON
          Attorneys for Individual Defendants
23   SANDRA HAUSER

24

25

4

1c2QfhaC

```
1                     APPEARANCES CONTINUED

2    RICHARDS, KIBBE & ORBE, LLP
          Attorneys for Individual Defendants
3    NEIL BINDER

4    PAUL HASTINGS
          Attorneys for Individual Defendants
5    KEVIN LOGUE

6    DLA PIPER US, LLP
          Attorneys for Individual Defendants
7    KEARA GORDON

8    CALDWELL, LESLIE & PROCTOR, PC
          Attorneuys for Individual Defendant
9    DAVID WILLINGHAM

10   KRAMER, LEVIN, NAFTALIS
          Attorneys for Individual Defendant
11   JADE BURNS

12   MORRISON & FOERSTER
          Attorneys for Individual Defendants
13   LASHANN DeARCY

14

15

16

17

18

19

20

21

22

23

24

25
```

1c2QfhaC

1          (In open court)

2          THE DEPUTY CLERK:  I am going to call each case, and I

3    will ask counsel to please state their name for the record.

4          In the matter of the Federal Housing Finance Agency

5    and others against UBS America, Inc. and others.  Counsel for

6    plaintiffs, are you ready to proceed?  If you would please

7    state name for the record.

8          MR. SELENDY:  Yes, we are.  Philippe Selendy for the

9    Federal Housing Finance Agency.

10          THE DEPUTY CLERK:  Would you introduce each attorney?

11          MR. SELENDY:  For UBS.  We are also here with Adam

12    Abensohn.  And Manisha Sheth.

13          THE COURT:  For the defendant, please state your name

14    for the record.

15          MR. KASNER:  Good afternoon, your Honor.  Jay Kasner

16    and my partner Scott Musoff from Skadden Arps.

17          THE DEPUTY CLERK:  In the case of Federal Housing

18    Finance Agency against JP Morgan Chase & Company and others.

19          Counsel for plaintiffs, please state your name for the

20    record.

21          MR. SELENDY:  Again, your Honor, Philippe Selendy and

22    our team.

23          THE COURT:  You don't need to reintroduce other

24    members of your team, Mr. Selendy if they are the same.  Thank

25    you very much.

1c2QfhaC

1          For the defendant.

2          MS. SHANE:  Penny Shane, your Honor, from Sullivan &

3     Cromwell for JP Morgan.

4          MR. RICE:  Tom Rice for RBS Securities which is one of

5     a number of defendants in this case.  Do you want to have

6     appearances as you go through them for the main defendant in

7     this case?

8          THE COURT:  For each defendant who is represented --

9     well, for each defendant in the case by at least principal

10    trial counsel for them in that case.

11         MR. RICE:  In that case, I am appearing for RBS

12    Securities in this case.

13         MR. CLARY:  William Clary from Cravath, Swaine & Moore

14    representing the Credit Suisse defendants in the JP Morgan

15    case.

16         MR. KARP:  Brad from Paul, Weiss, along with my

17    partner Susanna Buergel, representing the Citigroup defendants

18    in that case.

19         THE DEPUTY CLERK:  In the matter of Federal Housing

20    Finance Agency against HSBC North American Holdings, Inc. and

21    others.  Counsel for plaintiffs, please state your name for the

22    record.

23         MR. ABENSOHN:  Adam Abensohn, your Honor, for FHFA.

24         THE COURT:  I'm sorry?

25         MR. ABENSOHN:  Adam Abensohn for FHFA.

1c2QfhaC

1          MR. SPEHR:  For HSBC Richard Spehr and Michael Ware

2     from Mayer Brown.

3          THE DEPUTY CLERK:  In the matter of Federal Housing

4     Finance Agency against Barclays Bank PLC and others.

5          MS. SHETH:  Manisha Sheth on behalf of the FHFA.

6          THE COURT:  Any defense counsel in that case?

7          MR. SCOTT:  It's Jeff Scott from Sullivan and Cromwell

8     on behalf of Barclays.

9          THE COURT:  So, Mr. Scott, you are way back there.

10    You need to come on up.  There is a chair for you right up

11    here.

12         THE DEPUTY CLERK:  In the matter of Federal Housing

13    Finance Agency against Deutsche Bank AG and others.

14         Counsel for plaintiffs, state your name for the

15    record.

16         MR. SELENDY:  Philippe Selendy for FHFA.

17         MR. RICE:  Good afternoon, your Honor.  Tom Rice for

18    the Deutsche Bank defendants.

19         THE COURT:  We are going to read the docket number for

20    each of these cases too to make sure that we are all on the

21    same page with respect to which case we are calling.

22         THE DEPUTY CLERK:  Federal Housing Finance Agency

23    against First Horizon National Corp. and others, Docket No. 11

24    CV 6193.

25         Counsel for the plaintiff, please state your name for

1c2QfhaC

1    the record.

2              MS. CHUNG:  Good afternoon, your Honor.  Christine

3    Chung for the plaintiff, FHFA.

4              MR. CLARK:  Good afternoon, your Honor. Bruce Clark

5    and Amanda Davidoff, Sullivan and Cromwell for the defendant.

6              THE COURT:  Mr. Clark, do you want to come up to the

7    jury box?

8              MR. CLARK:  I would be glad to join you.

9              THE COURT:  Very well.

10             MR. BENNETT:  Edward Bennett with my partner David

11   Blatt, Williams & Connolly for Merrill Lynch.

12             THE DEPUTY CLERK:  Step up and state your name again

13   for the record for the court reporter.

14             MR. BENNETT:  Edward Bennett and David Blatt from

15   Williams & Connolly for Merrill Lynch.

16             MR. KASNER:  Jay Kasner on behalf of UBS.

17             MR. CLARY:  Richard Clary on behalf of the Credit

18   Suisse defendants.

19             THE DEPUTY CLERK:  Is there anyone else in the matter

20   of 11 CV 6193.

21             MS. SHANE:  Penny Shane for JP Morgan, Sullivan &

22   Cromwell.

23             THE DEPUTY CLERK:  Federal Housing Finance Agency

24   against Bank of America Corp. and others, case number 11 CV

25   6195.

1c2QfhaC

| | |
|---|---|
| 1 | Counsel for the plaintiff, please state your name for |
| 2 | the record. |
| 3 | MS. CHUNG:  Christine Chung for FHFA. |
| 4 | MR. BLATT:  David Blatt for Bank of America |
| 5 | defendants. |
| 6 | MR. BENNETT:  Edward Bennett for Bank of America as |
| 7 | well. |
| 8 | MR. BINDER:  Neil Binder, Richards, Kibbe & Orbe.  We |
| 9 | represent several individuals for the Bank of America, in the |
| 10 | case of Paul Park, Robert Caruso -- |
| 11 | THE COURT:  I think several is just fine. |
| 12 | MR. BINDER:  Several, but not all, your Honor. |
| 13 | THE COURT:  Thank you. |
| 14 | Any other defense counsel in that case? |
| 15 | So, do you know where defense counsel for the other |
| 16 | individual defendants is? |
| 17 | MR. BINDER:  No, your Honor.  Some of them, I think |
| 18 | haven't been served. |
| 19 | THE COURT:  Thank you. |
| 20 | THE DEPUTY CLERK:  The matter of Federal Housing |
| 21 | Finance Agency against Citigroup, Inc. and others 11 CV 6196. |
| 22 | Counsel for the plaintiffs, please state your name for |
| 23 | the record. |
| 24 | MR. SELENDY:  Philippe Selendy for FHFA. |
| 25 | MR. KARP:  Your Honor, Brad Karp for CitiGroup. |

1c2QfhaC

1    THE DEPUTY CLERK:  Is there anyone else for defendants

2    in this case?

3         In the matter of Federal Housing Finance Agency

4    against Goldman, Sachs & Company, 11 CV 6198.

5         Counsel for the plaintiff?

6         MR. SELENDY:  Philippe Selendy for FHFA.

7         THE DEPUTY CLERK:  Is there someone else?

8         MR. EDELMAN:  We are here on behalf of defendants,

9    Theodore Edelman, Michael Tomaino and Jordan Razza from

10   Sullivan & Cromwell.

11        THE COURT:  Spell your last names, please.

12        MR. EDELMAN:  Certainly, your Honor.  Edelman,

13   E-D-E-L-M-A-N.

14        MR. TOMAINO:  T-O-M-A-I-N-O.

15        MS. RAZZA:  R-A-Z-Z-A.

16        THE COURT:  Thank you.  If you could come up and join

17   us in the jury box.

18        MR. EDELMAN:  We represent also the Goldman Sachs

19   defendants in JP Morgan Chase matter, which is 11 CV 6188.

20        THE DEPUTY CLERK:  Federal Housing Finance Agency

21   against Credit Suisse Holdings USA, Inc., 11 CV 6200.

22        Counsel for the plaintiffs, please state name for the

23   record.

24        MS. CHUNG:  Christine Chung for the FHFA.

25        MR. CLARY:  Richard Clary for all the defendants in

1c2QfhaC

```
1    that case.

2              THE DEPUTY CLERK:  Thank you.

3              Paragraph Federal Housing Finance Agency against

4    Numora Holding America, Inc. and others, 11 CV of 6201.

5              MR. ABENSOHN:  Adam Abensohn for the FHFA.

6              MR. CLARK:  Bruce Clark for the Nomura defendants.

7              MR. RICE:  Tom Rice for RBS Securities.

8              THE DEPUTY CLERK:  In the matter Federal Housing

9    Finance Agency against SG America, Inc. and others, case number

10   11 CV 6203.

11             Counsel for the plaintiffs.

12             MR. KASOWITZ:  Marc Kasowitz for FHFA.  My partner,

13   Mike Shuster and Kanchana Leung.

14             THE DEPUTY CLERK:  For the defendant.

15             MR. KASNER:  Good afternoon again, your Honor.  Jay

16   Kasner and Scott Musoff from Skadden, Arps for the defendants.

17             MS. SHANE:  Penny Shane Sullivan, Cromwell for JP

18   Morgan.

19             MR. RICE:  Tomorrow Rice for Deutsche Bank Securities.

20             THE COURT:  Federal Housing Finance Agency against

21   Morgan Stanley and others, case number 11 CV 6739.

22             Counsel for the plaintiffs, please state your name for

23   the record.

24             MR. KASOWITZ:  Marc Kasowitz for FHFA.

25             MR. ROUHANDEH:  Good afternoon, your Honor, Jim
```

1c2QfhaC

1 Rouhandeh from Davis, Polk & Wardwell for Morgan Stanley.

2 　　　　MR. CLARY:  Richard Clary for the Credit Suisse

3 defendants.

4 　　　　MR. RICE:  Tom Rice for RBS Securities.

5 　　　　THE COURT:  The Federal Housing Finance Agency against

6 Countrywide Financial Corporation and others, 11 CV 6916.

7 　　　　Counsel for the plaintiff, please state your name for

8 the record.

9 　　　　MS. CHUNG:  Christine Chung for the FHFA.

10 　　　　MR. PASTUSZENSKI:  Good afternoon, your Honor.  Brian

11 Pastuszenski from Goodwin Procter LLP for Countrywide

12 defendants.  And with me my partner, Mark Holland from Goodwin

13 Procter.

14 　　　　THE DEPUTY CLERK:  Counsel, if you could come forward

15 and state your name.

16 　　　　MR. WILLINGHAM:  Good afternoon, your Honor. David

17 Willingham, Caldwell Leslie on behalf of defendant Stanford

18 Kurland and Jeff Grogin.

19 　　　　MR. LOGUE:  Kevin Logue from Paul Hastings for

20 defendants Boone, Kripalani, McLaughlin and Sandefur.

21 　　　　MR. WU:  Aric Wu from Gibson Dunn for Citigroup

22 Deutsche Bank, RBS and UBS.

23 　　　　MS. GORDON:  Good afternoon, Keara Gordon from DLA

24 Piper for defendant Eric Sieracki.

25 　　　　MR. KLUGMAN:  Scott Klugman from Levine Lee for

1c2QfhaC

```
1    defendant David Spector.

2              MR. BENNETT:  Edward Bennett and David Blatt from

3    Williams & Connolly for Bank of America.

4              THE DEPUTY CLERK:  Federal Housing Finance against

5    Ally Financial, Inc. and others 11 CV 7010.

6              MR. KASOWITZ:  Marc Kasowitz for plaintiff.

7              MR. SPEHR:  Richard Spehr, Michael Ware, Mayer Brown

8    for Ally.

9              MR. KASNER:  Good afternoon again, your Honor.  Jay

10   Kasner for UBS and the Ally Financial matter.

11             MR. KARP:  Brad Karp for Citigroup, Citigroup

12   defendants.

13             MR. CLARY:  Richard Clary for Credit Suisse

14   defendants.

15             MS. SHANE:  Penny Shane for JP Morgan.

16             MR. EDELMAN:  Theodore Edelman for Goldman, Sachs &

17   Company.

18             MR. SCOTT:  Jeff Scott for Barclays Capital, Inc.

19             MR. RICE:  Tom Rice for RBS Securities.

20             THE DEPUTY CLERK:  In the matter of Federal Housing

21   Finance Agency against General Electric Company and others,

22   case number 11 CV 7048.

23             MR. KASOWITZ:  Marc Kasowitz for FHFA.

24             MR. DANILOW:  Greg Danilow, Weil, Gotshal for the

25   General Electric defendants.
```

1c2QfhaC

1          MR. ROUHANDEH:  Jim Rouhandeh, Davis Polk for Morgan

2     Stanley defendants.

3          MR. CLARY:  Richard Clary for Credit Suisse

4     defendants.

5          THE COURT:  Thank you.

6          THE DEPUTY CLERK:  There is one more.

7          MS. HAUSER:  Sandra Hauser for several individual

8     defendants.  I apologize for not introducing sooner.

9          THE COURT:  That's fine.

10          MS. BURNS:  Also for case 6188, Jade Burns for

11     defendant Jeffrey Wertleiser from Kramer, Levin, Naftalis &

12     Frankel.

13          MS. DeARCY:  Lashann DeArcy, your Honor, also for case

14     6188.  I am with Morrison & Foerster for defendants Michael

15     Nierenberg and Thomas Moreino.

16          MR. CHEPIGA:  Your Honor, Michael Chepiga from

17     Simpson, Thacher 6188 for defendant Sam Molinaro.

18          THE DEPUTY CLERK:  You can sit.  Come up with way.

19     There are more chairs here.

20          THE COURT:  I am going to call one additional case,

21     VNB Realty against Bank of America and others, 11 CV 6805.  For

22     the plaintiff.

23          MR. TSAPATSARIS:  Peter Tsapatsaris from Peter N.

24     Tsapatsaris, LLC for VNB Realty.

25          THE COURT:  For the defendants in 11 CV 6805.

1c2QfhaC

1        MS. KOTLER:  Meredith Kotler from Cleary Gottlieb on

2   behalf of all defendants except Mr. Kamat, who has not been

3   served.

4        MR. BINDER:  Your Honor, unless I missed it, I don't

5   believe 11 CV 6202 was called FHFA, Merrill Lynch.

6        THE COURT:  6202?

7        MR. BENNETT:  Yes.

8        THE COURT:  Thank you so much.  So we will call that

9   case now.

10       FHFA against Merrill Lynch and others 11 CV 6202 for

11   the plaintiff.

12       MS. SHETH:  Manisha Sheth often behalf of FHFA.

13       THE COURT:  For the defendants?

14       MR. BENNETT:  Ted Bennett on behalf of Merrill Lynch.

15       MR. BINDER:  Neil Binder on behalf of individual

16   defendants.

17       THE COURT:  Thank you, Mr. Binder.

18       So, as much as I studied the appearance sheet lists

19   that I have, I really appreciate this demonstration of the

20   overlap in parties and their counsel.  Let me thank you for

21   making yourselves available today.  I expect counsel have a lot

22   of issues they would like to raise with me.  Let me give you an

23   overview of the issues I have identified that I would like to

24   cover this afternoon.

25       there are a number of administrative issues that I

1c2QfhaC

1   want to address with you.  There is the issue of outstanding

2   motion practice and the scheduling of that motion practice.  I

3   want to talk about discovery issues.

4         I want to talk about coordination of any cases that

5   are not before me right now and get a sense of how many more

6   cases there might be filed in this court or in other courts

7   that may or may not be related.

8         I want to explore on that coordination issue the case

9   I will refer to as 6805, which was the penultimate case called.

10  I expected it to be the last, but it was the penultimate case

11  called.

12        Lastly, on my list is settlement.  I want to talk

13  about a process to get these cases organized for settlement

14  discussions.  I am not expecting them to be settled tomorrow,

15  but I want to begin talking about process.

16        So let's just talk about administrative matters.  I

17  should say, I won't end this conference without making sure

18  everyone has an opportunity to present any additional issues

19  they think should be discussed at today's conference.

20        Consolidation of these cases.  I have talked with our

21  clerk's office because I am concerned about getting notice to

22  everybody in the most efficient manner possible and yet making

23  sure that each of these cases is treated separately as

24  appropriate.  So I think probably -- and you can speak to this

25  and explain why you think we should handle it some other way,

1c2QfhaC

1    but I think I probably will not be entering any kind of

2    consolidation order even for pretrial purposes, but that

3    everything that I issue in this group of cases, I will docket

4    in the first case 5201, and in every other case where it is

5    appropriate to do so with respect to that order.

6           So, let us say that I was granting a motion to dismiss

7    in the case 6200, that opinion or order would be docketed two

8    places:  In the case 5201 and in the case 6200.  Some docketing

9    will occur in every case, and it will have the kind of caption

10   one way or another like you saw with the scheduling of this

11   conference.

12          That means that -- and, again, there may be many

13   volunteers for this task I think we need to talk about, and it

14   would be helpful to me to have just for liaison purposes and

15   for no other purposes, not substantive, one plaintiff's counsel

16   that I can call or my chambers can call, and one defense

17   counsel that my chambers can call who would take upon

18   themselves the obligation to make sure everyone else is

19   notified.  Obviously, I hope to do most notification through

20   docketing and reliance on our ECF notice process, but unless

21   you are part of the case 5201, you will not get ECF notice, and

22   this is what I talked to our clerk's office about.  I can only

23   get ECF notice to all of you for something filed in 5201 if I

24   consolidate all the cases into 5201.

25          So, Mr. Kasner, you are the likely volunteer.

1c2QfhaC

1          MR. KASNER:  Your Honor, and I appreciate it, if you

2     hadn't asked, I actually was going to raise my hand.  The one

3     caveat, your Honor, is Ms. Farrell has since gone to the U.S.

4     Attorney's office.  However, I'm confident that some of our

5     colleagues will fill her very large shoes.  So we're happy to

6     do that.  Thank you, your Honor.

7          THE COURT:  Thank you, Mr. Kasner.  It's a pleasure to

8     see your name on this roster today.

9          MR. KASNER:  Appreciate it, your Honor.  Thank you.

10          THE COURT:  So for plaintiff's volunteer, Mr. Selendy?

11          MR. SELENDY:  Yes, I will be glad to do that, your

12     Honor.

13          THE COURT:  Thank you so much.  My clerk's office asks

14     me to remind everyone that your email address and your law firm

15     identification information should be current.  Make sure it is.

16     Make sure you have an ECF log-in and password.  Make sure you

17     filed a notice of appearance.  All of those things have to

18     happen if you are going to get effective ECF notice from us.

19          In terms of communication with the Court, we do not

20     accept faxes.  I have no secretary.  I have three wonderful law

21     clerks and no secretary.  So we operate by letter, and, as you

22     know, in the Southern District you cannot file letters on ECF.

23     So it is snail mail or hand delivery.

24          The letter can be no longer than two pages.  If it

25     requires more substantive discussion than two pages permits, I

1c2QfhaC

1   will get everybody on the phone, or, if necessary, hold a

2   conference.  I won't necessarily wait for a responsive letter

3   before I get everybody on the phone.  It depends.

4         Hand deliveries.  If something is urgent and you need

5   me to act on it that very day, and, therefore, read your letter

6   that very day, it can be hand delivered to the Worth Street

7   entrance, but we won't know it's there unless you tell us.

8   Things that are delivered to the Worth Street entrance go

9   through security and then they go to the mail room and then

10  hopefully I will get it within the next day or two.  So if you

11  would actually like me to read it that day, that's fine, just

12  call us and let us know there's a hand delivery, and have your

13  messenger call chambers again when it's actually there, so one

14  of my staff can go down and retrieve it.

15        If you hand deliver something to us Friday after 5:00

16  or on a weekend, which hopefully won't happen, but in any

17  event, you should understand that the security folks are going

18  to put it in the night depository so I will not see it until

19  Monday afternoon.  So, it is particularly important in those

20  circumstances that you have made a phone call so that we can

21  make sure that we personally pick it up.

22        There is one disclosure I want to make.  I have two

23  wonderful sisters.  One of them happens to live in Seattle.

24  Her name is Lenore Cote, and she is vice-president of

25  operations risk at the Federal Home Loan Bank of Seattle.

1c2QfhaC

1          So let's turn to motion practice.  I am putting to the

2     side for a moment the VNB case.  So right now I am just going

3     to talk about the other cases.  I want to thank counsel for the

4     way they responded to Judge Kaplan's order which helped inform

5     this Court about management issues and the extent that there is

6     overlap or lack of overlap among the cases.  Out of those

7     submissions and a discussion among several of us, and then

8     ultimately agreement by all of us, a volunteer raised her hand

9     and has this group of cases, very happily.

10         So the first thing I did was issue the order staying

11    all motion practice except in the lead case 5201.

12         I want to make sure that we set up briefing of the

13    motion to dismiss issues in the way that's most helpful to the

14    plaintiffs and defendants.  I want to make sure that 5201 is a

15    good vehicle.  I notice it doesn't have a 10-b claim.

16         I have the second lowest Docket No. 6188 as it was

17    originally filed, and it does have a 10-b claim.

18         I am thinking about having two motions to dismiss.  I

19    don't want to do duplicative work, but I was thinking that

20    counsel might find it useful to have actually complete motions

21    to dismiss in at least one case and maybe two, and that at

22    least one of those cases should be a case with a 10b-5 claim.

23    So I am anxious to hear from you on that.

24         I am thinking, and you noticed this from my proposal,

25    that plaintiffs would have the right to amend in response to

1c2QfhaC

```
 1    the first motion to dismiss, but that would be it with respect
 2    to any issue raised in the motion to dismiss.  It would be apt
 3    to cure the issues that were raised or not, and then we would
 4    have full briefing of the motion to dismiss if it were renewed.
 5         I would like to do that on sort of a tight schedule,
 6    not unreasonably tight because we have holidays here and it is
 7    falling at a period of time when I know lots of people have
 8    family plans and travel plans, but I think that you would like
 9    to know, at least from the representative cases that we are
10    going to choose out of today's meeting and the motion to
11    dismiss was due in 5201 today, at least on the common issues, I
12    thought you'd like to have as soon as I am able to get it to
13    you, a reading on the issues presented by any motion to
14    dismiss.
15         Let me tell you what I think would happen after that.
16    I am thinking that I will stay discovery until I rule on the
17    motions to dismiss, and I am aware that we have motion practice
18    ongoing, whether the PSLRA stay of discovery applies or not
19    given the nature of the plaintiffs here, or the plaintiff, but
20    that if a sufficient amount of the one or two complaints that
21    are tested through the motion practice survive, that then we
22    would move immediately into document discovery on all the cases
23         I have one caveat on that, and, that is, I don't have
24    a feeling yet for how important the statute of limitations
25    issues are going to be and how unique they are with respect to
```

1c2QfhaC

```
 1    the different cases, so whether or not any resolution of a

 2    statute of limitations issue with respect to 5201 and

 3    potentially 6188 would be decided, how universally those

 4    rulings would apply across the board I have no feeling.

 5              (Pause; machine malfunction)

 6              (In open court)

 7              THE COURT:  Just to summarize, we just discussed in

 8    the interim the fact that there are many private actions filed

 9    around this country in different courts brought by private

10    plaintiffs based on the securitizations that are present in the

11    Fannie Mae/Freddie Mac litigation before me.

12              So I think we were at the point where I was anxious to

13    hear from counsel about the best way to approach motion

14    practice.  Again, while you can say anything, I am most

15    interested in hearing whether 5201 is a good vehicle to

16    litigate the common issues in, whether or not it makes sense to

17    add a 10b-5 case to the initial motion practice, and whether if

18    it does make sense, it should be 6188 which is, again, just

19    arbitrarily the lowest Docket No. case with a 10b-5 claim in

20    it.

21              Let me start with Mr. Selendy.  I will give you a

22    chance to be heard on that issue

23              MR. SELENDY:  OK, your Honor.  We think that the

24    coordination approach that you outlined, coordination but not

25    consolidation is appropriate and sensible.
```

1c2QfhaC

1          With respect to the motions to dismiss, as you are

2     aware, our view is that the so-called common issues outlined by

3     defendants in many cases have fact-intensive questions that

4     truly are not common, but if there is to be a case designated,

5     we think it's entirely appropriate to select the first filed

6     and second filed cases.

7          Just to clarify, we have not asserted 10b-5 claims; we

8     have asserted common law fraud claims, and that will be true in

9     the half dozen cases you referred to.  But those do raise

10    issues which are distinct from the claims in the non-fraud

11    cases, obviously because scienter is an element only for the

12    fraud case whereas the Section 11 and 12 claims do not involve

13    that.

14         There are also the state statutory claims, although

15    those are common across all of these actions, and there are

16    certain very important differences between the state statutory

17    claims and the federal statutory claims that we can address.

18         In general, your Honor, we think that the approach is

19    sensible.  Our primary concern is not so much the scheduling of

20    the briefing but discovery, as we set forth in the PSLRA

21    briefing.  This is a series of public actions brought by

22    independent federal agency.  In its capacity as conservator for

23    Fannie Mae Freddie Mac, it's trying to vindicate public rights,

24    public interests in the protection of the housing market and

25    its statutorily mandated objective of preserving and conserving

24

1c2QfhaC

1    the assets of the GSE's.  And while we were prepared to extend

2    to all defendants a stipulation until today, that was based on

3    the presumption that all briefing would be done as of today,

4    and we had not agreed that discovery would be held back.

5            So, what we are concerned about is that we will run

6    another three or six months before discovery begins, and we

7    would like to see that process start even as to limited areas,

8    for example, production of the loan files which are required to

9    be maintained by defendants, initial disclosures, initial

10   discussions of custodians and electronic search terms.  We

11   think it's very important to begin that process.  And as to the

12   briefing of defendant's motions, your schedule sounds

13   appropriate.

14           THE COURT:  Thank you very much, Mr. Selendy.

15           MR. SELENDY:  Thank you.

16           THE COURT:  Mr. Kasner.

17           MR. KASNER:  Good afternoon, your Honor.  If it please

18   the Court, for efficiency's sake, we had spoken amongst

19   ourselves.  I am prepared to address your Honor's questions

20   with respect to motion practice, if that is all right with the

21   Court.  Mr. Clary, who is the litigating client on the issue of

22   lifting the stay, is prepared to address issues associated with

23   discovery, your Honor.

24           Then counsel from Davis Polk will address the remand

25   if you have any issues relating to remand because our clients

1c2QfhaC

 1    are not associated primarily with any of those motions, if that

 2    is all right with your Honor.

 3            With respect to the motion practice itself, we have

 4    not had an opportunity to confer with Ms. Shane, who is counsel

 5    in the JP Morgan case.

 6            Yes, the UBS case, which is the lowest number, does

 7    not have a 10b-5 claim; it doesn't have a common law fraud

 8    claim.  If there are pleading issues associated with that type

 9    of claim, scienter being one of them, actual reliance under

10    applicable state law principles potentially being another.  If

11    it please the Court, that is something I would defer to counsel

12    in the JP Morgan case to address.

13            With respect to the issue that your Honor asked about,

14    the motion practice that as soon as I get back to the office, I

15    will review for one last time and then we are prepared to file.

16            There are issues that cut across all of the cases.

17    Your Honor picked up one with respect to the statute of

18    limitations.  There are a number of case dispositive issues,

19    your Honor.  I know your Honor well enough to know I am not

20    certainly here today to argue those motions.  I only advise the

21    Court of sort of generally what the issues are so that your

22    Honor can understand why they would cut across if that is

23    something that the Court is interested in.

24            THE COURT:  No.  I just want to know if you think 5201

25    is a good vehicle to present those common issues.

1c2QfhaC

1          MR. KASNER:  Your Honor, the issues associated with

2     all of the cases that are raised in our motion would be

3     appropriate for all of the other cases, your Honor.  There are

4     some issues that are derivative of when Fannie and

5     Freddie actually purchased these securities, but in terms of

6     statute of repose arguments under federal law and the state

7     laws under which the claim in our case are brought and the

8     others, there is an absolute bar, your Honor, of three years

9     from the date of purchase.  It is undisputed in the record

10    cutting across all of the cases, your Honor, that the last

11    purchase by Fannie and Freddie was more than three years ago.

12    The legal arguments that will be presented by both sides as to

13    why that repose does or does not apply will apply across all of

14    the cases.

15          There are arguments concerning inquiry notice.  Those

16    will apply, by and large, to all of the cases.

17          There is an issue, your Honor, with respect to the

18    impact of tolling agreements as a tertiary argument.  Again,

19    depending on individual cases, the legal principles that your

20    Honor articulates in the UBS matter, the lowest number, ought

21    to apply across the board there as well.  I'm not saying this

22    to your Honor because our papers are ready, but I do think,

23    your Honor, that they do cut across, and it would not surprise

24    the Court to learn that we obviously had the benefit of views

25    of co-counsel on the common issues as well.

1c2QfhaC

```
 1          THE COURT:  I was expecting that.  I had thought I
 2   could put that in the order that everybody should consult, but
 3   I knew you would.  Thank you.
 4          What about this, Mr. Kasner, if the plaintiff amends
 5   and you decide to move to dismiss again, how about making it to
 6   dismiss the entire pleading as opposed to just addressed to the
 7   common issues, or is the motion you've already prepared to
 8   dismiss the entire pleading?
 9          MR. KASNER:  For our client in the lowest numbered
10   case, your Honor -- I keep saying lowest number I should know
11   it -- 5201, yes, it would be to dismiss the whole case.
12          At this juncture there isn't unique jurisdictional or
13   other issue that would apply to us that we're not raising.
14   That is not to say, your Honor, that down the road should some
15   individual issue be decided by the Court that somehow would
16   apply to us that we wouldn't come back to the Court and say we
17   should be dismissed as well.
18          THE COURT:  Ms. Shane, is it helpful to have a motion
19   to dismiss in a case of the fraud claim or not?
20          MS. SHANE:  If that is what your Honor would prefer to
21   have, JP Morgan would be pleased to have its case serve as that
22   vehicle.  If your Honor wouldn't mind, I would like to consult
23   with my colleagues briefly about whether, given their greater
24   familiarity with their own cases and the pleadings in them, a
25   comparison among us about which would be a good vehicle and
```

1c2QfhaC

1    whether this would be in fact the best one, given the number,

2    it is in fact right.

3           It seems perfectly reasonable, and I don't doubt that

4    we could get there, but it might be that I don't know of a

5    particular way in which one of their cases does get there.

6           THE COURT:  Well, we are going to take a break so

7    folks will have a chance at the appropriate point to consult

8    and revisit any of these issues.

9           I would be happy to have just one motion to dismiss.

10   So, if you tell me that there is really not enough extra

11   learning that you get from a decision on a case with a fraud

12   claim, then I feel no need to decide a second motion to dismiss

13          MS. SHANE:  Your Honor, if I might, I think one of the

14   things we would like to consult about and get back to you is

15   the suspicion that there may be nothing to be added at this

16   stage with respect to fraud because if the pleading does not

17   survive the arguments that are being made with respect to the

18   statute of limitations, for example, and also the common law

19   claims that are asserted in the UBS matter, including negligent

20   misrepresentation, one could infer that the pleading will not

21   survive on the fraud standard or its elements.

22          THE COURT:  Absolutely.  That would be, I think, the

23   assumption.

24          MS. SHANE:  Thank you.

25          THE COURT:  Good.  So why don't we say that everyone

1c2QfhaC

1    will have a chance during our break to talk about these issues,

2    but right now based on what I have heard, there will be just

3    the one motion to dismiss.  It will be in 5201.  There will be

4    an amendment or not, and if there is an amended pleading, we

5    have a schedule for it, and then we have the renewed motion to

6    dismiss and it would be made against the complete complaint to

7    the extent defense counsel can articulate arguments.  It

8    wouldn't be restricted to the so-called common issues.  They

9    would be included, but it wouldn't be restricted to them.

10          Counsel, I proposed a schedule for this motion

11   practice.  I haven't heard anybody say that that schedule won't

12   work.  I have suggested that if there is an amendment, it would

13   be filed December 21.  If there is no amendment, then

14   opposition would be due January 6, and reply would be due

15   January 27.  I'm not hearing opposition.

16          MR. KASOWITZ:  Your Honor, before we turn to the

17   schedule, I just have one question about the issue of a

18   common -- a motion with respect to a complaint that would be

19   common to others.

20          THE COURT:  Counsel, I'm so sorry, I'm going to ask

21   you, and really everyone else who stands, just because there

22   are so many voices to be heard here, that before you speak, if

23   you could just identify yourself for the record.

24          MR. KASOWITZ:  I'm sorry for that, your Honor, of

25   course.  Marc Kasowitz for plaintiff.  The question I have is

1c2QfhaC

| | |
|---|---|
| 1 | this, your Honor -- and this will be helpful to us when we |
| 2 | confer amongst ourselves, and I'm sure when the defendants |
| 3 | do -- but I am assuming that it is not the case that a decision |
| 4 | on a complaint that's common will end up necessarily to be |
| 5 | binding as to all other matters. |
| 6 |    This is, I take it, your Honor, for the Court's |
| 7 | edification on issues that might deem to be common, but there |
| 8 | are many, many different issues in all of these complaints |
| 9 | including ones that would differ with respect to almost all of |
| 10 | the claims.  So, while some of the issues certainly are common |
| 11 | and some of the legal argument will be common, there are so |
| 12 | many factual disparities and the like that the Court isn't |
| 13 | suggesting, I assume, that there will be a binding effect to |
| 14 | the motion on the first complaint. |
| 15 |    THE COURT:  No, that is absolutely correct.  Thank you |
| 16 | so much, Mr. Kasowitz for raising that issue.  It's an |
| 17 | important thing for us to all -- for me to articulate my |
| 18 | understanding of the impact of the decision on the motion to |
| 19 | dismiss in 5201. |
| 20 |    Every case is being treated on its own merits.  This |
| 21 | is not consolidated litigation.  So I will do my best to |
| 22 | address any motion to dismiss that is made in 5201.  The |
| 23 | complaint will survive or it won't.  If it survives, I plan -- |
| 24 | right now, I am going to be a lot wiser after I address this |
| 25 | motion practice, but the presumption would be that discovery |

1c2QfhaC

```
 1    will go forward in all cases, at least document discovery and

 2    at least core document discovery, and we are about to get to

 3    the discovery issue in a moment.

 4          But there would be a right to bring other motions to

 5    dismiss in the other actions or no motion to dismiss an answer,

 6    but in bringing a motion to dismiss and I've denied the

 7    argument that you're about to make in addressing the same issue

 8    in 5201, I plan probably to just adopt my reasoning in 5201.

 9          Again, the only exception that I am thinking about

10    now, and I will be much wiser after I have the full briefing on

11    that first motion to dismiss, is whether or not if some other

12    case has a terrific statute of limitations argument that has

13    not been captured by the 5201 briefing, whether or not I should

14    stay discovery in that particular action because of its unique

15    statute of limitations argument.

16          So does that answer your question Mr. Kasowitz?

17          MR. KASOWITZ:  It does, your Honor.  Thank you.

18          THE COURT:  Meanwhile, I would be resolving the remand

19    motions as promptly as I could.

20          So I think just to summarize where we are again -- you

21    can revisit this after you have your joint meeting -- but there

22    is only going to be one motion to dismiss.  It's going to be in

23    5201.  We are not going to have a motion to dismiss in 6188.

24    There is nothing to be gained by it at this initial phase.

25          And we move on now to discovery.  Let me talk about
```

1c2QfhaC

```
1    discovery.  I do think it makes sense for counsel to start

2    their discussions about electronic discovery protocols, and

3    that we set a schedule today for those discussions to be

4    completed and any failures to agree to be raised with me.

5         I am going to let during the break you folks talk

6    about what would be a reasonable schedule for those discussions

7    given the fact that it's December and we are moving into the

8    holiday period, but I would like an end date for an agreement

9    or a two-page letter to me outlining the issues that there is a

10   failure to agree upon and then we will have a conference.

11        With respect to document discovery, I can't remember

12   who mentioned it here, but someone mentioned the loan files.

13   Are the loan files electronic or are they hard copy?

14        MR. SELENDY:  Your Honor, Phillipe Selendy.  Typically

15   in our experience, the electronic files, the loan files are

16   maintained both in electronic form and hard copy, although it

17   depends on how good the operations are of the various banks and

18   services.  There is a contractual obligation for those files to

19   be maintained as to every single securitization, and that is

20   because those are the basic documents that inform the quality

21   of the loan, the creditworthiness of the borrower, the value of

22   the property and the like, and the trustees in the various RMBS

23   trusts are entitled to get access to those files.

24        It's a primary source of evidence, although not the

25   only source of evidence, to test whether the representations of
```

1c2QfhaC

1    warranties made as to individual loans are in fact accurate and

2    whether those loans were eligible to be included in the trust

3    or not.

4              So, all of the defendants who maintain loan files are

5    in fact obligated to maintain them in a way that can be readily

6    transferred upon demand, and that is why we focused upon that

7    as an initial request because that should not be unduly

8    burdensome, and it's something that ought to be maintained in

9    the ordinary course and readily handed over.

10             THE COURT:  They may be accessible, but it may still

11   be burdensome.  Can you give me a sense -- and there may be no

12   average -- how many loan files are behind any one

13   securitization?

14             MR. SELENDY:  That does vary.  It can range from the

15   thousands to the tens of thousands, although we are prepared to

16   frame a request that is much more narrow than that because we

17   believe that the allegations of systemic representation can be

18   tested on a sampling basis.

19             So, provided we avoid any cherry picking of those

20   loans, and we identify a random sort, then we can identify a

21   much smaller number in order to then evaluate that.  And we

22   would be prepared to do that across the cases.

23             THE COURT:  OK.  Is it Mr. Clary?

24             MR. CLARY:  Yes, your Honor.  Richard Clary for Credit

25   Suisse defendants, and I am counsel in six of the 18 cases we

1c2QfhaC

1    have here today.  I'm also counsel for Credit Suisse in a

2    variety of other lawsuits by institutional investors bringing

3    claims similar to the Fannie and Freddie claims, so I actually

4    have pretty good firsthand information about how discovery has

5    proceeded.

6            Just to set the table, your Honor, in this set of

7    cases, the FHFA cases, there are 535 different securitizations

8    at issue across 18 cases which translates, because we have been

9    doing the math and collecting the information on the number of

10   loans in each of the pools, it's over 2.7 million loans, so

11   that is over 2.7 million loan files.

12           In other litigation, principally litigation over

13   whether or not to stay discovery in the state court actions

14   where there is no PSLRA stay, the evidence has been that on

15   average, an average loan file in one of these has about 300

16   pages.  So that takes us to 815 million pages if they're just

17   on the 300 page.  Some of the loan files in other cases have

18   had over a thousand pages in a loan file.  Some will have less

19   than 300, but on average the figures we have been getting are

20   300 pages.

21           The loan files are in many instances not held by any

22   of the defendants.  They're held by non-parties, by various

23   services, for instance.

24           In at least some of the state court cases, I am aware

25   that those non-parties came forward and said we don't keep the

1c2QfhaC

loan files in one physical place.  We have collections of

electronic documents.  We have also boxes of hard copy

documents that are in various warehouses with various vendors,

and that what would be required would be for those, whoever has

the loan files, and frequently it's non-parties, to physically

pull the hard copies and the electronic copies because they

keep the parts present that they actually need to be able to

use, and the rest goes off to various warehouses and mountains

or wherever they go.  And they would have to pull all that

material, reassemble each of the loan files, and then of course

they have to be reviewed because, as I'm sure your Honor is

aware, all of the loan files would contain a great deal of

personal financial information.  There will have to be

protective orders entered.  Some of that information may still

have to be blocked out under various federal statutes such as

the borrower's social security numbers and things like that.

There are a lot of mechanical issues to be addressed.

So it's not nearly the simple process that Mr. Selendy

suggested.  It is quite a bit of time, effort and money on the

part not only of the defendants to the extent they have loan

files but of the non-parties who have loan files.

THE COURT:  What I am hearing really suggests that

both plaintiff's counsel and defense counsel may actually be in

agreement that we need a good sampling technique.  That it

would be extraordinarily burdensome and inefficient to

1c2QfhaC

1    reassemble, gather, review and analyze all of these files.

2              MR. CLARY:  Your Honor, may I intercede?

3              THE COURT:  Yes.

4              MR. CLARY:  Although what I described is one of the

5    reasons why we think it is entirely appropriate to not commence

6    that effort until such time as your Honor has had a chance to

7    at least rule on motions to dismiss in the test case, because

8    at least some of the grounds of that motion will dispose of all

9    of the actions, and, therefore, any need to look at any of

10   these if in fact the cases proceed, I for one am somewhat

11   skeptical about the sampling for the simple reason that the

12   claims here are that in each securitization which has its own

13   prospectus supplement describing its particular mortgage pool

14   whether or not there are material misstatements about that

15   mortgage pool, and I am not sure -- there's been some

16   discussion in various cases around the country about whether or

17   not sampling would or would not work, and there are some

18   serious issues as to whether in fact you can create a

19   statistical sample that in fact covers each of those 595

20   separate pools because each pool has to be analyzed against the

21   supplemental prospectus towards that pool and for that tranche

22   of that pool that these particular clients Fannie and Freddie

23   have purchased.  So I am certainly not --

24              THE COURT:  Do I have the wrong number?  Is it 535?

25              MR. KASNER:  I'm sorry, 535 securitizations, but

1c2QfhaC

1    within those securitizations there are tranches and different

2    mortgages are relied on to pay different tranches, and I

3    believe the total number of tranches is 600 something.  I had

4    had that number, and, I apologize, I lost it in the papers.

5            THE COURT:  OK.

6            MR. SELENDY:  Your Honor, may I respond briefly?

7            THE COURT:  Well, sure.

8            MR. SELENDY:  I just wanted to point out first that

9    Mr. Clary's argument about the extraordinary difference between

10   all of the securitizations is obviously in direct tension with

11   their argument that these issues are common and can be commonly

12   tested.  Moreover, in both federal and state court in New York,

13   the principle of sampling specifically as to RMBS trusts in

14   order to determine whether there have been systemic

15   misrepresentations of representations and warranties as we have

16   alleged here as to several different categories of

17   representations of warranties, that has been accepted.  And

18   there is a reason for it is --

19           THE COURT:  Well, Mr. Selendy, I don't want to cut you

20   off but I am.  We are not going to argue the issue right now.

21           MR. SELENDY:  I did have one proposal.  We are

22   certainly prepared to work with defense counsel to identify

23   those files that are in fact maintained electronically, to

24   select files on a sampling basis which reduces the burden of

25   defendants, and obviously it will be our burden to demonstrate

1c2QfhaC

1   to the court why sampling is appropriate.  We are totally

2   prepared to do that.

3          The servicers are in fact obligated to maintain the

4   files in order to exercise their servicing responsibilities,

5   which is why it's somewhat difficult for them to say they don't

6   have the files.  We're prepared to work with counsel.

7          THE COURT:  Thank you.

8          So, during this period of briefing and analysis of the

9   motion to dismiss, besides working on a protocol for the

10  production of any electronically kept materials, I do want

11  counsel to work to see if you can achieve agreement with

12  respect to production of a sample of loan files.  I will hear

13  you on a schedule that you'll discuss and present to me after

14  our break if you are not able to reach agreement about it, and

15  we will take that up at a separate conference, but I want you

16  to use this next month or two to try to organize a discovery

17  plan that would include sampling of the loan files.

18         I think as a practical matter, the burden on the

19  defendants and the plaintiffs of personally and individually

20  reviewing 2.7 million loan files, each of which has at least

21  300 pages, says there has to be a better way.  So, I am going

22  to count on you to figure out the better way, and use this time

23  to do that, and give me a schedule by which you will have

24  finished those discussions and we will meet again if you don't

25  have agreement.

1c2QfhaC

```
 1              I want you to use this time also to come up with a
 2     discussion about limitation on depositions should we get that
 3     far.  And Mr. Kasner and Mr. Karp at least are familiar with
 4     one system that was used before me for limiting the number of
 5     days of depositions.  There are many different systems that can
 6     be used to reduce the burden of depositions, so I want you to
 7     use this time as well to think creatively about how to manage
 8     the deposition process.
 9              I do not know if there is some core discovery here
10     that can be produced relatively expeditiously once discovery
11     begins that would give the parties great insight into the
12     factual development of this case such that having that
13     discovery in hand would permit you to make a reasonable
14     assessment about settlement discussions.
15              So I want you also to think about sequencing of
16     discovery.  I don't know that this is a case that you can
17     identify some core group of documents or a 30(b)(6) deposition
18     or something that would give you the insight to put you in a
19     good position to settle this case sooner rather than later, or
20     these cases.
21              So that is what I wanted to talk about with respect to
22     discovery.  Let's move on to coordination issues.
23              MR. CLARY:  Your Honor?
24              THE COURT:  Yes.
25              MR. CLARY:  Did you want me -- I know Mr. Selendy
```

1    started his arguing about the PSLRA.  Did you want me to

2    discuss at all the PSLRA or should we leave that, and,

3    similarly, if your Honor is inclined to decide now that

4    discovery will be held in abeyance at least through the motion

5    to dismiss on a test case, then perhaps my office can be

6    relieved of the burden of filing the reply brief on the PSLRA

7    status that is due next week.  Otherwise, we will file it on

8    the 7th per Judge Patterson's order.

9         THE COURT:  You don't have to file a reply.  I am

10   going to finish going through my outline.  Then we are going to

11   take a break so that you get a chance to talk with each other

12   and come back and convince me why my tentative suggestions here

13   are wrong and I should change my mind, but right now there will

14   be no discovery until I issue a ruling on the motion to

15   dismiss.

16        If 5201 survives that motion to dismiss, right now I'm

17   thinking that discovery would proceed in all of the cases.

18   There is one caveat.  If I got a sense that there was a really

19   strong statute of limitations argument in another case or two,

20   that the motion practice in 5201 didn't really tee up well, I

21   would be open to extending the discovery stay in that small set

22   of cases.  That is my preliminary thinking.

23        So we use this time while the motion to dismiss is

24   being briefed and decided for you folks to talk about if

25   discovery starts how it would be organized both in terms of

1c2QfhaC

```
 1    electronic discovery, sampling of documents, deposition limits,

 2    etc.  So we wouldn't have to waste any time.  We could hit the

 3    ground running after a motion assuming that it's denied.

 4          Coordination:  We have the Connecticut case before

 5    Judge Thompson, and I looked at the docket sheet, and I have

 6    some information about that case that we were able to glean.

 7    It doesn't look to me -- feel free to correct me if I'm

 8    wrong -- that those parties have had a conference.  It is not

 9    clear to me why there is a case in Connecticut.  I'm happy to

10    take that case, but there may be very good reasons to have the

11    case in Connecticut.  So, at the very least, if the case

12    doesn't come here and get folded into our coordinated plan, I

13    would want to reach out to Judge Thompson, and to the extent

14    that it makes sense and he agrees to coordinate what we do so

15    that the burdens on the parties are equally borne.  So I will

16    just say that for now.

17          I am not aware of any other case brought by the GSEs

18    other than the Connecticut case.  Are there others?

19          MR. SELENDY:  That's correct, your Honor, that's the

20    universe.

21          THE COURT:  OK.  Good.  Are there going to be more

22    filed?

23          MR. SELENDY:  Well, I think that's a question for the

24    Federal Housing Finance Agency.  I don't know if I can answer

25    that.
```

1c2QfhaC

1          MR.HART:  Your Honor?

2          THE COURT:  Sir, could you put your name on the

3     record?

4          MR. HART:  Stephen Hart.  There could be another case

5     or two, but that is a decision that will have to be made by the

6     director of the agency, and it will not come soon.

7          THE COURT:  Thank you.  Do you expect if it is filed

8     or they are filed, will they be in this courthouse?

9          MR. HART:  That would be my anticipation.

10          THE COURT:  Thank you so much.

11          In terms of coordination, I think we are up to in my

12     outline VNB Realty.

13          MR. TSAPATSARIS:  Your Honor, if I may, Peter

14     Tsapatsaris for VNB Realty.  VNB is the owner of a single

15     security that overlaps with the securities owned by FHFA in

16     case against Bank of America.

17          THE COURT:  Keep your voice up.

18          MR. TSAPATSARIS:  Of course.  We filed this case

19     related case because we rely very heavily on the FHFA complaint

20     and the forensic review results that they report within.  We do

21     think there are going to be significant common issues of fact.

22     However, the last thing we want to do is delay the FHFA case or

23     interfere with the schedule in that case.  I did confer with

24     counsel for Bank of America who takes no position on

25     relatedness, and I have heard the Court's reticence to raise

1c2QfhaC

1    its hand and act as a lightening rod for private actions that

2    overlap all over the nation.

3            That being the case, I would like the opportunity to

4    confer with Bank of America again and Quinn Emanuel and then

5    submit a letter to the Court potentially withdrawing or setting

6    up arguments on why we think the case should be related.

7            THE COURT:  OK.  Well, we are unlikely to have another

8    conference on that issue.  I am not saying we won't, but I

9    appreciate what you're saying.  Let me just give you my

10   off-the-cuff reaction.  I am happy to keep this case and fold

11   it in and coordinate document production and everything, but if

12   there were 15 more or 50 more private plaintiff lawsuits, I

13   would have to think really carefully about what we are doing

14   and if it makes sense for this core group to be joined by these

15   additional cases.

16           So, why doesn't everybody have a chance to think about

17   that, and you may all be in agreement.  You may have

18   disagreements.  And you will feel free to write me a letter no

19   longer than two pages.

20           MS. KOTLER:  Your Honor, Meredith Kotler for Bank of

21   America.  If we may, let me confer with my adversary over the

22   break, and perhaps we can come back to you at the beginning

23   with what might be a somewhat different position on this.

24           THE COURT:  Thank you.

25           MS. CHUNG:  Your Honor, I'm sorry, but just because --

1c2QfhaC

1          THE COURT:  Ms. Chung.

2          MS. CHUNG:  Christine Chung.  Because it's come up a

3    couple of times, to make the record clear, FHFA does not

4    believe that the VNB case is related, so we would object to any

5    related designation, and the reasons have already been

6    discussed so I don't want to belabor the record.  In fact, the

7    area of overlap is a single securitization.  I think your Honor

8    started with, you are a private entity.  That really is the

9    distinction.  There are so many other cases where if this was

10   the rule, it could end up being the case that many -- the fact

11   that there might be overlapping securitizations is not the same

12   thing in our mind as saying there is true judicial efficiency

13   by putting that case together with this case.  So we'll confer,

14   but I just wanted to make clear that our view is that the cases

15   are not related.

16          THE COURT:  Good.

17          So why don't we take a break, and during the break

18   counsel can feel free to discuss any of the issues I've raised

19   and ask me to revisit them because they have now had a chance

20   to confer with each other and there is something they want me

21   to hear or suggest any additional issues that I haven't raised

22   at all that you think should be discussed at this conference.

23   Let's take a ten minute break.

24          (Recess)

25          (In open court)

1c2QfhaC

1          THE COURT:  One issue I didn't mention was the

2     protective order.  One of you mentioned it.  So that is another

3     thing that should be worked on during our interim period here.

4          So I will just sort of in grand topic form, anybody

5     have anything they want to revisit on sort of the

6     administration aspects of the litigation?

7          Anybody have anything they want to revisit on the

8     overview issue of motion practice?

9          Ms. Shane.

10          MS. SHANE:  Thank you, your Honor.  Penny Shane,

11     Sullivan Cromwell.  We have conferred about the idea of having

12     a separate or subsequent briefing on fraud issues or doing it

13     at the same time; and having conferred, the defendants' view is

14     that it would make sense for your Honor to receive a brief with

15     respect to the fraud issues, but that rather than pick a

16     particular case, the group believes your Honor would benefit

17     more from a single brief that seeks to address the fraud issue

18     as it arises in each of the six cases in which it arises, and

19     the defendants would work to coordinate to make sure that we

20     best present those issues in a way that successful and capable

21     of resolution.

22          As to the scheduling of it, your Honor, the defendants

23     are happy to be guided by your Honor's view of what makes most

24     sense, but we would suggest that in the event that the

25     plaintiff plans to amend the schedule your Honor already set

1c2QfhaC

1    out with respect to the UBS case, that amendment come with

2    respect not only to the UBS case but with respect to the cases

3    in which the fraud claim does arise so that we can all address

4    our motions to the amended pleading and can do it in a way that

5    will have some finality to it.

6          In the event that the plaintiff does not elect to

7    amend, we would suggest to your Honor that we could be on

8    roughly the same briefing schedule sort of carried a little bit

9    further back as your Honor has imposed in the UBS case, and

10   that in order to permit time to coordinate, we would be

11   prepared to file sometime in mid January.

12         THE COURT:  So thank you.  Very helpful.  I think what

13   I would prefer to do then is pick one of the fraud cases.  If

14   it is not 6188, that's fine.  I am going to say I will presume

15   it will be 6188 but if defense counsel agree among themselves

16   it should be one of the other fraud cases, that's fine with me.

17   We will set a schedule today for you to move to dismiss.  The

18   plaintiffs will have an opportunity to amend in response or to

19   oppose.

20         I am trying to think whether you should move to

21   dismiss before we see any amended pleading in 5201 or not.  It

22   is now December 2.  I think that amended pleading is

23   December 23.

24         MS. SHANE:  December 21, your Honor.

25         THE COURT:  December 21.

1c2QfhaC

1          MR. SELENDY:  Your Honor, if the purpose is to test

2     the separate fraud allegations, then the amendment of the UBS

3     complaint would not appear to be relevant to that purpose, and

4     we would suggest as defendants have all been operating until

5     recently on the assumption that they would file their briefs by

6     today, that there be a very early date set such as next week

7     for the fraud claim.

8          THE COURT:  Good.  Thank you.

9          So let me throw this out as a possible schedule for

10    motion to dismiss in 6188; that the motion to dismiss be filed

11    January 6.  If there is going to be an amended pleading in 6188

12    in response to that motion, it be filed January 27.  If there

13    is no amended pleading, that the opposition be served

14    February 3, and the reply due February 17.  How does that

15    sound, Ms. Shane?

16         MS. SHANE:  That sounds fair, your Honor, and just to

17    clarify this motion in 6188 or such other case we may

18    substitute in would be a motion strictly addressing the fraud

19    claim notwithstanding that there are other issues that have

20    been and are being briefed fully in the UBS case, is that

21    correct?

22         THE COURT:  I don't think so.  I don't want to set up

23    a situation where we have multiple motions to dismiss in every

24    action.  We either do this sort of concurrently or we don't do

25    it at all now, and we wait for an opinion on the motion to

1    dismiss in 5201.  I can see arguments both ways.  I'm sure you

2    can too.  I think there is such a benefit from getting you a

3    decision sooner rather than later that argues in favor of

4    concurrent briefing.

5        MS. SHANE:  We recognize that as well, your Honor,

6    which is why we suggested that we go ahead and do a brief on a

7    rough and contemporaneous schedule.  The concern I think may be

8    that whichever case ends up being the vehicle for that briefing

9    will be in a position unlike either the UBS case that has come

10   before or those that are to come after in the sense that while

11   addressing the fraud claim, there will be a need to anticipate

12   a ruling with respect to the other common issues that have been

13   briefed by UBS but not decided yet and no instruction will yet

14   have been given.

15       So that that second test case might be thought of as

16   foregoing the opportunity to analyze your Honor's decision,

17   avoid duplication of argument or repetition of anything that

18   you have properly decided once you get around to deciding the

19   UBS case, but that opportunity shouldn't be lost, I don't

20   think, and the repetition that would result from having to

21   anticipate how your Honor might rule on the UBS issues and how

22   that might or might not affect that defendant might be worth

23   seeking to avoid.

24       MR. SELENDY:  Your Honor, if I may, in the ordinary

25   course, defendants would have to file their motions without

1c2QfhaC

| | |
|---|---|
| 1 | some initial test rulings being made available by the Court. |
| 2 | So the idea that it would be somehow inadequate for defense |
| 3 | counsel to have to file motions just two motions across 18 |
| 4 | cases without having initial guidance. |
| 5 | THE COURT:  17 -- |
| 6 | MR. SELENDY:  Well, I left open the fact we have also |
| 7 | the RBS complaint then. |
| 8 | THE COURT:  No, Connecticut is what I am thinking of. |
| 9 | MR. SELENDY:  Yes.  Yes. |
| 10 | THE COURT:  Hopefully 18. |
| 11 | MR. SELENDY:  So, in light of that we submit that |
| 12 | there should not be further delay from discovery in particular |
| 13 | by waiting for a ruling on the first test case before having |
| 14 | another test case. |
| 15 | Further, your Honor, although you've suggested that |
| 16 | defendants could select, we think the process should be |
| 17 | non-arbitrary, and it should be the lowest docket number JP |
| 18 | Morgan rather than some selection by defendants among them. |
| 19 | MS. SHANE:  Your Honor, may I suggest as a way to |
| 20 | resolve the difficulty or clarify, we are not looking for an |
| 21 | opportunity to have another brief that is any different than |
| 22 | the other brief that your Honor's current schedule contemplates |
| 23 | from those defendants who are to become educated, as everybody |
| 24 | will become educated, by the result of the UBS brief. |
| 25 | So that simply in order to prevent the one defendant, |

1c2QfhaC

1   which JP Morgan will be happy to be, from being in a different

2   position, all that we would seek to have happen is that JP

3   Morgan would likely adopt and reiterate the arguments that have

4   been made by UBS and would not take the trouble to try to

5   anticipate, distinguish and otherwise show how they will apply

6   when they haven't yet been rendered and will not be prejudiced

7   at such time as your Honor renders decision in the UBS case by

8   the fact that JPM has filed a brief already with respect to the

9   fraud issues adopting the UBS arguments, but instead would have

10  the same opportunity other defendants would have to present to

11  your Honor distinctions, if any, from the UBS ruling that

12  deserve your Honor's attention on those common issues only.

13          THE COURT:  Counsel know their pleadings.  I don't.  I

14  love the idea, Ms. Shane, that you will just adopt arguments

15  that have been made in 5201 on common issues and not seek to

16  submit different briefing with respect to those issues.  I

17  would encourage that approach.  I am not sure that you are

18  going to get a second chance to revisit any of the issues.  If

19  6188 has one motion to dismiss, I think I will decide that

20  motion to dismiss, and that's going to be it.

21          MS. SHANE:  Thank you, your Honor.

22          THE COURT:  So we will get out a scheduling order

23  adopting my proposed schedule in 5201 and the proposed schedule

24  I've just outlined in 6188, and if there is a substitution at

25  defense counsel's choice of a different fraud case than 6188,

1c2QfhaC

```
 1    counsel, I would ask you to advise me of that by December 9.
 2    Is there.
 3              Is there any other issue that counsel wish to raise
 4    with me on the general topic of the motion practice?
 5              With respect to discovery, counsel, we are going to
 6    confer about some scheduling here of proposals.  Do we have a
 7    date by which you would have completed your discussions on
 8    electronic discovery protocols?
 9              MR. SELENDY:  Unfortunately, your Honor, we did not
10    have an opportunity to confer with defense counsel.  It seems
11    that we each were participating in our own meetings.  I would
12    suggest that we come back in as to each of the issues you've
13    raised -- sampling, electronic discovery, depositions and
14    protective order -- in early January, perhaps January 6, and
15    inform the Court of the results of discussions.
16              THE COURT:  I would look forward to seeing everyone
17    again, of course, but I know that it is a real burden on
18    counsel and your clients to spend an afternoon in this
19    beautiful courtroom.
20              So, I will take a report from counsel, and hopefully
21    it will be a joint report with a proposal that I can adopt on
22    January 10, and it will address a protective order, ediscovery,
23    sampling of documents, that's for loan files, and limits on
24    depositions, and, of course, a proposal with respect to the
25    time frame for document production and a separate proposal for
```

1c2QfhaC

1    time frame for depositions and then for expert discovery and

2    summary judgment practice.

3        MR. CLARY:  Your Honor, had also mentioned before the

4    break --

5        THE COURT:  Mr. Clary?

6        MR. CLARY:  I'm sorry.  Richard Clary for the Credit

7    Suisse defendants.

8        Before the break, your Honor, had also mentioned

9    potentially sequencing of discovery, and I assume you would

10    like that addressed in the report.

11        THE COURT:  Yes.  What I am hoping then you will do is

12    set up a series of meetings among yourselves in December and

13    early January so if at all possible I get a report that shows

14    consensus on these issues.  Obviously, if you can't reach

15    agreement, you can't.

16        Anything else with respect to the general issue of

17    discovery?

18        Anything to discuss on the general topic of

19    coordination?

20        MR. TSAPATSARIS:  Peter Tsapatsaris for VNB.

21        I conferred with counsel for Bank of America and

22    counsel for FHFA during the break.  Bank of America's counsel

23    has informed me that they now plan to contest the relatedness.

24    I would like -- I know your Honor was hesitant to grant me this

25    before -- an opportunity to confer with my client.  We came in

1c2QfhaC

1    here thinking it was unopposed, and the Court has raised

2    concerns and FHFA counsel has raised concerns, B of A's counsel

3    has raised concerns which may cause us to withdraw that

4    request.

5          I would ask the Court to give us leave to file a

6    two-page letter after I confer with my client which will either

7    state our grounds for why it should be related or withdraw the

8    request for the relatedness.

9          THE COURT:  Good.  Shall we say I'll get such a letter

10   no later than December 9?

11         MR. TSAPATSARIS:  Yes, your Honor.

12         THE COURT:  Thank you.

13         Any other coordination issue?

14         Settlement:  Have the parties talked about a process

15   for settlement discussions?

16         MR. SELENDY:  Your Honor, Philippe Selendy.  There

17   have not been global discussions with all of the defendants nor

18   has there been discussion of a general process.  There have

19   been certain discussions with certain parties.

20         THE COURT:  While I encourage you all to think about

21   settlement at any time, I am going to assume that you need a

22   decision on the motion to dismiss at least in 5201 before you

23   can really talk seriously about settlement.  So I plan to

24   address that motion.

25         If the motion is denied and if all of these cases are

1c2QfhaC

going forward into discovery, I plan to refer you to Magistrate
Judge Maas initially and potentially to a senior judge on this
court for supervision of settlement discussions.

    If counsel decide among themselves that they would
prefer to make other arrangements for settlement process, that
would be just fine with me, and that would relieve you of the
obligation to participate in good faith in the settlement
discussions before Judge Maas.  So that is how we will leave
that.

    But I do want after a decision on the motion to
dismiss if it is denied for you to at least begin those
discussions.

    Is there any other issue we need to address this
afternoon?

    MS. CHUNG:  Your Honor, we had the remand issues.

    THE COURT:  Yes.  Yes.  I know, Ms. Chung.

    MS. CHUNG:  I think it was in some category.  I was
looking back at my notes.

    Your Honor, you have before you four of the FHFA
actions that were commenced in state court.  There is a
threshold issue of whether the cases have been properly
removed.  Mr. Kasowitz's firm has three of those cases.

    In the Countrywide case, which is the one that our
firm is handling, we had gotten on the phone with Judge
Rakoff's chambers within days of the case being assigned to him

1c2QfhaC

1    with cross applications, and there was an application from the

2    defendants to stay any consideration of what was going to be

3    our motion to remand.  We had asked to have a briefing schedule

4    on the motion for remand that pretty closely complied with the

5    rules of the Court.

6         The Judge turned down a request by the defendants to

7    have a slower schedule, and within a month we were fully

8    briefed and were scheduled to have the argument on this very

9    dramatic day when we got the announcement that the case was

10   being transferred.

11        So, in this case our concern is, did the Judge order

12   that the motion for stay and motion for remand be briefed

13   contemporaneously.  If that schedule had been kept, there is,

14   as your Honor noted, this issue of the JPML transfer motion.

15        It is now agreed by the parties, it's been conceded by

16   the defendants, that the first time it appears that JPML would

17   consider the transfer motion is January 26.

18        We had made a big effort -- and I think Judge Rakoff,

19   he had set a schedule by which it would have been possible to

20   have a decision on that threshold issue well before the JPML

21   would begin even to consider transfer, much less the remand

22   motion if the case were to be transferred.

23        Our view is still that the judicial efficiencies and

24   the efficiencies for the parties is to finish off this process

25   of having the oral argument in the Countrywide case.  It is a

1c2QfhaC

1    case in which this one thing somehow has become sort of --

2    there was a big consequence of having reassignment of cases,

3    which this piece was moving forward at quite a good clip and is

4    now in abeyance.

5         So, we would renew our request to have the argument

6    rescheduled, and I don't know if Mr. Kasowitz wants to address

7    the other remand motion separately.

8         MR. KASOWITZ:  Simply, that there is a schedule for

9    the other remand motions.  There is a schedule set.  There is

10   going to be reply in the Morgan Stanley case filed today and

11   oppositions in the other two cases filed today, and there are

12   dates set for replies then your Honor.

13        THE COURT:  Good.  And, of course, you can consent to

14   removal at any time.

15        MR. KASOWITZ:  Understood, your Honor.  Thank you.

16        MR. PASTUSZENSKI:  Your Honor, if I my Brian

17   Pastuszenski from the Goodwin Procter firm for the Countrywide

18   defendants.

19        Your Honor, I simply want to note that, as Ms. Chung

20   pointed out, there is both pending a motion to remand and a

21   motion to stay in light of the fact that the judicial panel of

22   multidistrict litigation has conditionally transferred the case

23   and your Honor received letters from the parties, from

24   Ms. Chung and then from myself, regarding acceleration of that

25   hearing.

1c2QfhaC

1      There is the ID case, which is Second Circuit

2 authority, which speaks to the efficiencies of letting the

3 transferee judge decide these issues.  Those are all before

4 your Honor.  If your Honor knows those issues, I simply want to

5 point out that the briefing process on the conditional transfer

6 order is now complete.  That is now fully briefed.  It's before

7 the panel.  The next hearing session is January 26.  We don't

8 know when the panel will issue a ruling, but it has been fully

9 briefed, and it's ready for decision now by the MDL panel.

10      The MDL panel has referred transferred to Judge

11 Pfaelzer 13 mortgage-backed securities cases those include both

12 class cases, most them are individual institutional investors

13 like the cases your Honor has before you.  There are also an

14 additional five mortgage-backed securities cases that have been

15 conditionally transferred.  This is one of them.  Those are in

16 front of Judge Pfaelzer, and the multi-district litigation

17 process is now proceeding forward in front of her.

18      So, your Honor, what Judge Rakoff had in front of him

19 and what was scheduled for hearing on the 16th was not simply

20 the remand issue, but, frankly, also the parallel motion to

21 stay all of that pending action by the JPML.  Because as we

22 noted to Judge Rakoff and noted in the letter to your Honor,

23 one of the core issues that is before your Honor to decide

24 which is in two of the other cases; namely, bankruptcy related

25 to jurisdiction has been addressed a number of times already by

1c2QfhaC

1   Judge Pfaelzer.

2              I simply want to provide that context, your Honor.

3   Thank you.

4              THE COURT:  Thank you very much.

5              MS. CHUNG:  Your Honor, I'm only rising again to

6   respond to your Honor's comment that, of course, we can always

7   consent to removal.  I want to say that in the Countrywide

8   case, of course we knew about the MDL.  Among considerations,

9   the FHFA has statutory top prerogative to file in state court

10  or federal court.  In the Countrywide case, there was this

11  unique situation where we knew that as soon as we filed in

12  federal court, Countrywide was going to try to get the case

13  swept into the MDL.

14             I want to make it clear in terms of your Honor's

15  proposal, we'd be very willing to consent to removal.  So, we

16  would forego our remand motion if the defendants would agree

17  not to pursue their transfer motion to the MDL.  So that would

18  be a way that in that case we would be willing to resolve this

19  issue of the remand motion and the transfer motion.  So just to

20  advance the ball that much.

21             THE COURT:  Well, I think that would be a wonderful

22  result personally, and I encourage counsel to discuss that with

23  each other.  I am not going to ask for commitment from

24  Countrywide on the record one way or the other now, but why

25  doesn't everybody reflect, and why don't you let me know what

1c2QfhaC

1    your positions are -- December 9 seems to be a popular date --

2    so by December 9.

3              MR. PASTUSZENSKI:  Your Honor, if I may very, very

4    briefly, Brian Pastuszenski, Goodwin Procter for the

5    Countrywide defendants.

6              I will certainly confer with Countrywide and will let

7    you know by the 9th Countrywide's response or actually the

8    response of the defendants, because there are other defendants

9    in the case, to the proposition that Ms. Chung just addressed

10   to your Honor.

11             But one thing I want to make clear, your Honor, is

12   that there seemed to be an implication that rushing things to

13   the MDL.  The reason the multidistrict litigation proceeding

14   exists at all, your Honor, is that starting in the third

15   quarter of 2007, four years ago, your Honor, litigants that had

16   bought, investors had bought mortgage-backed securities began

17   suing Countrywide for the very same things that the FHFA is

18   today alleging in the complaint against Countrywide that your

19   Honor has.  More than four years ago, your Honor.

20             The reason that MDL exists is because there are

21   multiple actions, both class and individual, that had at their

22   core the common allegations about alleged abandonment of

23   underwriting guidelines, manipulation of appraisals and so

24   forth.  The reason the JPML formed the MDL was because of the

25   extraordinary commonality and extraordinary efficiency of

1c2QfhaC

1    having one judge deal with those allegations against

2    Countrywide.

3         So, Ms. Chung is right that had this case been filed

4    immediately or initially in federal court, it would have been

5    tagged, but it would have been tagged because of those

6    efficiencies, because of the common factual allegations,

7    because of the common legal issues that all of the cases

8    against Countrywide present.

9         So, I wanted to make clear that this isn't some sort

10   of litigation strategy.  It has to do with the fact that all of

11   these cases allege fundamentally the same thing, your Honor.

12   This one, the many, many cases that are in front of Judge

13   Pfaelzer, frankly, whether they involve mortgage-backed

14   securities, common stock or other kinds of securities, they've

15   all been alleging the same things since August/September of

16   2007, your Honor, which, by the way, also in the Countrywide

17   case, as in these other cases, presents some very, very serious

18   statute of limitations and statute of repose issues.

19        But with respect to the MDL, that has to do with the

20   efficiency and the commonality of the allegation against my

21   clients.

22        THE COURT:  I appreciate that you are trying to let me

23   down gently here, but on December 9 continue to cede the

24   transfer.  There are many different ways to achieve efficiency,

25   of course, and you are arguing in favor of a common defendant.

1c2QfhaC

1    We are here because of a common plaintiff.  There are many

2    different ways to slice and dice this.  So, we are all trying

3    to do our best here to try to figure out how to reduce

4    litigation costs and get to the merits in an efficient way.

5            MR. PASTUSZENSKI:  Absolutely, your Honor.  There is

6    no disagreement.  We will respond to your Honor by the 9th.

7            THE COURT:  Good.  Thank you all for your cooperation

8    today.

9            (Adjourned)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25