UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| FEDERAL HOUSING FINANCE AGENCY, AS CONSERVATOR FOR THE FEDERAL NATIONAL MORTGAGE ASSOCIATION AND THE FEDERAL HOME LOAN MORTGAGE CORPORATION, <br><br> Plaintiff, <br><br> -against- <br><br> UBS AMERICAS INC., UBS REAL ESTATE SECURITIES INC., UBS SECURITIES, LLC, MORTGAGE ASSET SECURITIZATION TRANSACTIONS, INC., DAVID MARTIN, PER DYRVIK, HUGH CORCORAN, and PETER SLAGOWITZ, <br><br> Defendants. | **11 CIV. 5201 (DLC)** |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION TO CERTIFY AN APPEAL PURSUANT TO 28 U.S.C. § 1292(b) OF
CERTAIN PORTIONS OF THIS COURT'S MAY 4, 2012 ORDER DENYING IN PART
THE MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

QUINN EMANUEL URQUHART &
 SULLIVAN, LLP
Philippe Z. Selendy
Kathleen M. Sullivan
Adam M. Abensohn
Manisha M. Sheth
Jordan A. Goldstein
51 Madison Avenue, 22nd Floor
New York, New York  10010
(212) 849-7000

*Attorneys for Plaintiff Federal Housing
Finance Agency, as Conservator for Fannie
Mae and Freddie Mac*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT ...................................................................................... 1

ARGUMENT .................................................................................................................... 4

I.     DEFENDANTS FAIL TO IDENTIFY ANY ISSUE AS TO WHICH THERE IS A SUBSTANTIAL GROUND FOR DIFFERENCE OF OPINION .................................. 5

     A.     There Is No Substantial Ground For Difference Of Opinion As To Whether HERA Applies To Statutes Of Repose ...................................................... 5

     B.     There Is No Substantial Ground For Difference Of Opinion As To Whether HERA Applies To Federal Claims ........................................................ 11

II.    NEITHER OF DEFENDANTS' PROPOSED ISSUES CONSTITUTES A CONTROLLING QUESTION OF LAW ........................................................................ 14

III.   AN IMMEDIATE APPEAL WILL NOT MATERIALLY ADVANCE THE TERMINATION OF THE LITIGATION ........................................................................ 19

CONCLUSION ................................................................................................................. 22

## **TABLE OF AUTHORITIES**

**Page**

### **Cases**

*In re 650 Fifth Ave.*,
  2012 WL 363118 (S.D.N.Y. Feb. 2, 2012)............................................................4

*Abrams v. Ciba Specialty Chem. Corp.*,
  659 F. Supp. 2d 1225 (S.D. Ala. 2009)...............................................................6

*In re Alcatel Sec. Litig.*,
  382 F. Supp. 2d 513 (S.D.N.Y. 2005)..................................................................6

*Am. Pipe & Constr. Co. v. Utah*,
  414 U.S. 538 (1974)....................................................................................3, 17

*In re Boesky Sec. Litig.*,
  882 F. Supp. 1371 (S.D.N.Y. 1995)....................................................................9

*Bresson v. C.I.R.*,
  213 F.3d 1173 (9th Cir. 2000) ..........................................................................16

*Byrd v. Trans Union LLC*,
  2010 WL 2555119 (D.S.C. June 18, 2010)..........................................................6

*Cal. Pub. Emps.' Ret. Sys. v. WorldCom, Inc.*,
  368 F.3d 86 (2d Cir. 2004).....................................................................5, 15, 17

*Caraco Pharm. Labs., Ltd. v. Novo Nordisk A/S*,
  132 S. Ct. 1670 (2012)....................................................................................14

*Choquette v. City of New York*,
  ___ F. Supp. 2d ___, 2012 WL 906680 (S.D.N.Y. Mar. 19, 2012).......................18

*Cromer Fin. Ltd. v. Berger*,
  2001 WL 935475 (S.D.N.Y. Aug. 16, 2001)........................................4, 8, 12, 14

*Dolan v. U.S. Postal Serv.*,
  546 U.S. 481 (2006)..........................................................................................9

*Dunn v. Borta*,
  369 F.3d 421 (4th Cir. 2004) ...........................................................................16

*FDIC v. Zibolis*,
  856 F. Supp. 57 (D.N.H. 1994)........................................................................13

*Fed. Housing Fin. Agency v. UBS Am., Inc.*,
  ___ F. Supp. 2d ___, 2012 WL 1570856 (S.D.N.Y. May 4, 2012)................ *passim*

*In re Flor*,
  79 F.3d 281 (2d Cir. 1996)..........................................................................1, 5, 9

*German v. Fed. Home Loan Mortg. Corp.*,
　896 F. Supp. 1385 (S.D.N.Y. 1995)........................................................................4

*German v. Fed. Home Loan Mortgage Corp.*,
　2000 WL 1006521 (S.D.N.Y. July 19, 2000) .......................................................20

*In re Global Crossing, Ltd. Sec. Litig.*,
　313 F. Supp. 2d 189 (S.D.N.Y. 2003)....................................................................6

*Griffin v. PaineWebber Inc.*,
　84 F. Supp. 2d 508 (S.D.N.Y. 2000)......................................................................6

*Hite v. Leeds Weld Equity Partners, IV, LP*,
　429 F. Supp. 2d 110 (D.D.C. 2006) ......................................................................16

*Jinks v. Richland Cnty.*,
　538 U.S. 456 (2003)................................................................................................9

*Jones v. Saxon Mortg., Inc.*,
　537 F.3d 320 (4th Cir. 1998) .................................................................................6

*Keene Corp. v. United States*,
　508 U.S. 200 (1993)..............................................................................................12

*Klinghoffer v. S.N.C. Achille Lauro*,
　921 F.2d 21 (2d Cir. 1990)....................................................................................18

*Lombardo v. Sec'y of Health & Human Servs.*,
　34 Fed. Cl. 21 (Fed. Cl. 1995) ...............................................................................6

*Lyon v. Agusta S.P.A.*,
　252 F.3d 1078 (9th Cir. 2001) ...............................................................................6

*In re Merrill Lynch Auction Rate Sec. Litig.*,
　758 F. Supp. 2d 264 (S.D.N.Y. 2010)..................................................................16

*In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*,
　2005 WL 39918 (S.D.N.Y. Jan. 6, 2005) ..............................................................8

*Mills v. Everest Reinsurance Co.*,
　771 F. Supp. 2d 270 (S.D.N.Y. 2009).........................................................5, 12, 14

*Nat'l Credit Union Admin. Bd. v. RBS Sec., Inc.*,
　No. CV 11-5887-GW (C.D. Cal.) ......................................................................8, 9

*Noble Shipping, Inc. v. Euro-Maritime Chartering Ltd.*,
　2004 WL 741285 (S.D.N.Y. Apr. 7, 2004)...........................................................20

*P. Stolz Family P'ship L.P. v. Daum*,
　355 F.3d 92 (2d Cir. 2004).........................................................................7, 10, 11

*Pettus v. Morgenthau*,
　554 F.3d 293 (2d Cir. 2009)..................................................................................10

*Pollock v. Commonwealth,*
    217 Va. 411 (1976) (per curiam) ........................................................16

*Resolution Trust Corp. v. Olson,*
    768 F. Supp. 283 (D. Ariz. 1991) .......................................................9

*Robinson v. Shell Oil Co.,*
    519 U.S. 337 (1997).............................................................................9

*S.E.C. v. Credit Bancorp, Ltd.,*
    103 F. Supp. 2d 223 (S.D.N.Y. 2000)............................................8, 19

*Santiago v. Pinello,*
    647 F. Supp. 2d 239 (E.D.N.Y. 2009) .................................14, 15, 17

*Stoll v. Ardizzone,*
    2007 WL 2982250 (S.D.N.Y. Oct. 9, 2007) ......................................6

*Stonehedge/Fasa-Tex. JDC v. Miller,*
    110 F.3d 793, 1997 WL 119899 (5th Cir. Mar. 10, 1997).................9

*Thomas v. Housing Auth. of L.A.,*
    2005 WL 6133692 (C.D. Cal. June 3, 2005) .....................................8

*United States v. California,*
    507 U.S. 746 (1993).............................................................................16

*United States v. Evans,*
    340 Fed. App'x 990 (5th Cir. 2009) (per curiam)...........................15

*United States v. Gonzales,*
    520 U.S. 1 (1997).................................................................................13

*United States v. People's Household Furnishings, Inc.,*
    75 F.3d 252 (6th Cir. 1996) ................................................................16

*United States v. Summerlin,*
    310 U.S. 414 (1940)........................................................................3, 15

*Westwood Pharm., Inc. v. Nat'l Fuel Gas Distrib. Corp.,*
    964 F.2d 85 (2d Cir. 1992)...............................................................5, 20

*In re WorldCom Sec. Litig.,*
    496 F.3d 245 (2d Cir. 2007)................................................................6

*In re WorldCom, Inc. Sec. Litig.,*
    2004 WL 1435356 (S.D.N.Y. June 28, 2004) ...................................6

*In re WorldCom, Inc. Sec. Litig.,*
    2003 WL 22953644 (S.D.N.Y. Dec. 16, 2003) ...............5, 8, 15, 17, 18

## **Statutes**

12 U.S.C. § 4617(b)(2) ..............................................................................................10

12 U.S.C. § 4617(b)(12) .................................................................................1, 12, 13, 14

12 U.S.C. § 1821(d)(14) .............................................................................................13

15 U.S.C. § 1635(f) .....................................................................................................6

15 U.S.C. § 1681p ........................................................................................................6

15 U.S.C. § 77m .......................................................................................................6, 7

28 U.S.C. § 1292(b) ...........................................................................................ⁿ *passim*

42 U.S.C. § 300aa-16 ...................................................................................................6

42 U.S.C. § 9658(a)(1) .................................................................................................6

Pub. L. No. 102-339, 106 Stat. 869 (Aug. 11, 1992) ..................................................11

Pub. L. No. 103-298, 108 Stat. 1552 (Aug. 17, 1994) ..................................................6

Pub. L. No. 107-204, 116 Stat. 745 (July 30, 2002) .....................................................7

Pub. L. No. 108-159, 117 Stat. 1952 (Dec. 4, 2003) ....................................................6

Va. Code § 13.1-522(A) ..............................................................................................16

## **Miscellaneous**

12A Joseph C. Long, Blue Sky Law § 9:117.41 .........................................................16

Calvin W. Corman, Limitation of Actions (1991) ..........................................................7

Webster's Third New International Dictionary (1976) ..................................................13

Plaintiff Federal Housing Finance Agency ("FHFA"), as conservator for the Federal National Mortgage Association ("Fannie Mae") and the Federal Home Loan Mortgage Corporation ("Freddie Mac" and, together with Fannie Mae, the "GSEs"), by its attorneys, Quinn Emanuel Urquhart & Sullivan, LLP, respectfully submits this memorandum of law in opposition to Defendants' Motion to Certify an Appeal Pursuant to 28 U.S.C. § 1292(b) of Certain Portions of this Court's May 4, 2012, Order Denying in Part the Motion to Dismiss the Second Amended Complaint ("Mem.").[1]

## PRELIMINARY STATEMENT

This Court's May 4, 2012, Opinion and Order comprehensively evaluates and rejects Defendants' arguments that FHFA's claims are time-barred. *See Fed. Housing Fin. Agency v. UBS Am., Inc.*, ___ F. Supp. 2d ___, 2012 WL 1570856 (S.D.N.Y. May 4, 2012) ("*FHFA*" or "Order").   The Court followed well-established principles of statutory construction and substantial case law, adhering to the "most natural reading" of the Housing and Economic Recovery Act of 2008 ("HERA") to conclude, properly, that 12 U.S.C. § 4617(b)(12) (the "HERA claims period") "affords FHFA three years from the date of conservatorship to bring suit on its Securities Act claims, irrespective of any other provision of law." *FHFA*, 2012 WL 1570856, at *6.  The ruling is consistent with both the plain language of that provision and its place in the larger structure of HERA.

Defendants now seek certification of this Court's Order under 28 U.S.C. § 1292(b).  But Defendants utterly fail to demonstrate the "exceptional circumstances" necessary to deviate from the final judgment rule, *In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996), and instead offer nothing but

---

[1]   "Defendants" refer to UBS Americas, Inc., UBS Real Estate Securities, Inc., UBS Securities, LLC, Mortgage Asset Securitization Transactions, Inc., David Martin, Per Dyrvik, Hugh Corcoran, and Peter Slagowitz.

recycled arguments this Court soundly rejected in its Order.  Defendants' attempt to repurpose their motion to dismiss into a motion for certification is unavailing, as they cannot demonstrate that the Order meets even one of the three statutory prerequisites to certification.

*First*, Defendants fail to identify any question of law "as to which there is substantial ground for difference of opinion."   28 U.S.C. § 1292(b).   Defendants' primary argument continues to be that the HERA claims period replaces only limitations periods, and not periods of repose, as to actions by FHFA.   But the central premise of this argument—that HERA's use of the term "statute of limitations," on a plain reading, cannot be understood to encompass periods of repose—is contradicted by over a dozen authorities in which courts (including the Second Circuit), legislators, and commentators have used the term "limitations" precisely as the Court did here.  Defendants have now submitted their fourth brief addressed to this issue, and they still fail to address, much less refute, any of this overwhelming authority.  Unable to square their purported "plain reading" with common usage or Second Circuit precedent, Defendants instead rely on two out-of-Circuit district court "decisions," one of them being a collection of nonbinding tentative rulings and the other a discredited decision over twenty years old—a showing that this Court, along with numerous others in this District, has repeatedly deemed insufficient to give rise to a "substantial ground" for disagreement warranting certification.

Defendants have even less to offer on their second proposed question of law, specifically, whether the Court correctly determined that the HERA claims period applies to federal claims. Defendants cite no authority in conflict with that ruling, and instead rely on a canon of statutory construction that directly undercuts their position.  The use of a term in one portion of a statute, and not another, is presumed to be purposeful.  In HERA, Congress referenced "State law" in only one of two alternative provisions defining the applicable time period in which FHFA may

bring suit, making clear that the other provision is *not* so limited, and therefore applies fully to federal claims.  Defendants also ignore that the HERA claims period expressly applies to "any action" by FHFA, without regard to whether the agency is asserting state or federal claims. Thus, as this Court already determined, Defendants' argument that the HERA claims period applies only to state claims, far from raising a substantial issue, "fails in the face of the limitation provision's plain language." *FHFA*, 2012 WL 1570856, at *6.

*Second*, even if the questions of law Defendants pose could be said to present a substantial ground for difference of opinion, there is no basis to conclude that either question is "controlling" under Section 1292(b).  Even if Defendants' construction of the HERA claims period were correct, and it is not—their "plain reading" is contradicted by more than a dozen authorities—the bulk of FHFA's claims still would proceed.  This is true through application of the doctrines enunciated in *United States v. Summerlin*, 310 U.S. 414 (1940), and *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), as well as due to the tolling agreements entered into between Fannie Mae and several of the Defendants.

Nor, *third*, would immediate appeal of the Order "materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b).  Regardless of how the Second Circuit were to rule on the HERA issues, that decision would have no effect on the number of FHFA suits currently in federal court.  Rather, because all of FHFA's state securities claims will be preserved even if the HERA rulings are reversed, certification will produce no "system-wide benefits" to the federal judiciary.  Instead, such a result would almost certainly create more protracted and expensive litigation, as the parties and the Court would have to engage in a lengthy and complex analysis as to the timeliness of each of the 603 Securitizations at issue in FHFA's suits.

In sum, an interlocutory appeal would not promote the efficiency envisioned by Section 1292(b), but instead would consume resources better devoted to the continued litigation of FHFA's claims.  The best way to address Defendants' purported concerns about the "costs incurred by FHFA in pursuing these actions" (Mem. 14) is to follow this Court's existing schedule for the expeditious resolution of these cases, so that Defendants can compensate the American taxpayer as quickly as possible.  Certification should be denied.

## ARGUMENT

Defendants have failed to demonstrate that the Order satisfies any of the three prerequisites to certification set forth in Section 1292(b).  That provision provides that a district court may certify an order for interlocutory appeal only after finding that the order (1) "involves a controlling question of law" (2) "as to which there is substantial ground for difference of opinion," *and* as to which (3) "an immediate appeal … may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).  "Each prong must be satisfied." *German v. Fed. Home Loan Mortg. Corp.*, 896 F. Supp 1385, 1398 (S.D.N.Y. 1995).  District courts, moreover, "have broad discretion to deny certification even where the statutory criteria are met. The Court will only grant certification, then, if the statutory criteria are met *and* the Court believes that immediate appeal would best foster a simultaneously effective and efficient judiciary." *In re 650 Fifth Ave.*, 2012 WL 363118, at *3 (S.D.N.Y. Feb. 2, 2012) (citation omitted).

Certification, which is discretionary, is "not intended as a vehicle to provide early review of difficult rulings in hard cases." *Cromer Fin. Ltd. v. Berger*, 2001 WL 935475, at *1 (S.D.N.Y. Aug. 16, 2001) (quotation marks omitted).  Instead, as the Second Circuit has cautioned, "use of this certification procedure should be ***strictly limited*** because only ***exceptional circumstances*** will justify a departure from the basic policy of postponing appellate review until

after the entry of a final judgment." *In re Flor*, 79 F.3d at 284 (quotation marks and brackets omitted; emphasis added); *see also In re WorldCom, Inc. Sec. Litig.*, 2003 WL 22953644, at *4 (S.D.N.Y. Dec. 16, 2003) ("Section 1292(b) is to be narrowly construed … and must be strictly limited…."), *aff'd sub nom. Cal. Pub. Emps.' Ret. Sys. v. WorldCom, Inc.* ("*CALPERS*"), 368 F.3d 86 (2d Cir. 2004).  It is for this reason that the Second Circuit has "urge[d] the district courts to exercise great care in making a § 1292(b) certification." *Westwood Pharm., Inc. v. Nat'l Fuel Gas Distrib. Corp.*, 964 F.2d 85, 89 (2d Cir. 1992).  Applying that standard here, certification would in no way promote the efficient resolution of these cases, but would serve only to impose unnecessary costs and burdens on FHFA in fulfilling its statutory mission to hold Defendants accountable for their rampant misstatements.

## I.   DEFENDANTS FAIL TO IDENTIFY ANY ISSUE AS TO WHICH THERE IS A SUBSTANTIAL GROUND FOR DIFFERENCE OF OPINION

On a motion for certification of an order for interlocutory appeal, "it is the duty of the district judge to analyze the strength of the arguments in opposition to the challenged ruling when deciding whether the issue for appeal is truly one on which there is a *substantial* ground for dispute." *In re Flor*, 79 F.3d at 284.  (brackets and ellipses omitted).  To establish a "substantial" ground, the moving party thus must do more than assert "that the court's ruling was wrong" or that "a question is particularly difficult." *Mills v. Everest Reinsurance Co.*, 771 F. Supp. 2d 270, 273 (S.D.N.Y. 2009).  Defendants have raised two questions of law in support of their motion, neither of which satisfies these standards.

### A.   There Is No Substantial Ground For Difference Of Opinion As To Whether HERA Applies To Statutes Of Repose

In contending that there exists a "substantial ground for difference of opinion" as to HERA's applicability to statutes of repose, Defendants principally recycle arguments that this Court found in its Order to have no merit.  Defendants' primary argument continues to be that,

5

on a plain reading, the term "statute of limitations" in HERA is not broad enough to encompass, and thus replace, periods of repose.  Mem. 10.  In advancing this argument, however, Defendants fail to address more than a dozen authorities, identified by the Court and by FHFA, in which courts, legislators, and commentators have all used the term "limitations" in the very manner Defendants contend is untenable.  *See, e.g.*, 15 U.S.C. § 77m (creating a statute of repose under the heading "Limitations of actions" and never using the term "repose"); *In re WorldCom Sec. Litig.*, 496 F.3d 245, 250 (2d Cir. 2007) (noting that this Court "found that the **Securities Act's one- and three-year statutes of limitations** applied to" appellants' claims) (emphasis added).[2] Defendants' argument cannot be squared with this authority—none of which they address, and all of which refutes their purported plain reading.  Thus, as the Court recognized, and as Defendants have still failed to counter, the term "statute of limitations" is commonly understood

---

[2] *See also, e.g.*, *In re WorldCom, Inc. Sec. Litig.*, 2004 WL 1435356, at *3 (S.D.N.Y. June 28, 2004) (describing 15 U.S.C. § 77m as "the three year statute of limitations contained in the Securities Act"); *Stoll v. Ardizzone*, 2007 WL 2982250, at *2 (S.D.N.Y. Oct. 9, 2007) (discussing "the 'one year/three year' statute of limitations" in Section 13) *In re Alcatel Sec. Litig.*, 382 F. Supp. 2d 513, 522 (S.D.N.Y. 2005) ("the three-year statute of limitations under section 13 of the Securities Act"); *In re Global Crossing, Ltd. Sec. Litig.*, 313 F. Supp. 2d 189, 198 (S.D.N.Y. 2003) ("the one-year/three-year statute of limitations set forth in 15 U.S.C. § 77m"); *Griffin v. PaineWebber Inc.*, 84 F. Supp. 2d 508, 512 n.1 (S.D.N.Y. 2000) (discussing whether claims are "barred by the 3-year statute of limitations" in Section 13); *Lyon v. Agusta S.P.A.*, 252 F.3d 1078, 1084 (9th Cir. 2001) (concluding that Section 2(a)(1) of the General Aviation Revitalization Act of 1994, Pub. L. No. 103-298, 108 Stat. 1552 (Aug. 17, 1994), entitled "Time limitations on civil actions against aircraft manufacturers," is a statute of repose); *Jones v. Saxon Mortg., Inc.*, 537 F.3d 320, 326 (4th Cir. 1998) (construing 15 U.S.C. § 1635(f), entitled "Time limit for exercise of right," as a statute of repose); *Byrd v. Trans Union LLC*, 2010 WL 2555119 (D.S.C. June 18, 2010) (construing 15 U.S.C. § 1681p, which Congress captioned as a "statute of limitations," Pub. L. No. 108-159, § 156, 117 Stat. 1952 (Dec. 4, 2003), as a period of repose); *Abrams v. Ciba Specialty Chem. Corp.*, 659 F. Supp. 2d 1225, 1233 (S.D. Ala. 2009) (concluding that 42 U.S.C. § 9658(a)(1), entitled "State statutes of limitations for hazardous substance cases" and applying to all "applicable limitations period[s]," extends statutes of repose); *Lombardo v. Sec'y of Health & Human Servs.*, 34 Fed. Cl. 21, 25 (Fed. Cl. 1995) (concluding that 42 U.S.C. § 300aa-16, entitled "Limitations of actions," is a statute of repose); *see generally* Calvin W. Corman, Limitation of Actions (1991).

"to encompass both types of timeliness provision[s]," *FHFA*, 2012 WL 1570856, at *4, and there is no "substantial grounds" for any contrary conclusion.

Defendants' failure to address pertinent authority upon which the Court relied in its Order is especially glaring with respect to the Second Circuit's decision in *P. Stolz Family Partnership L.P. v. Daum*, 355 F.3d 92 (2d Cir. 2004). As this Court observed, the Second Circuit in *Stolz* concluded that a provision of the Sarbanes Oxley Act, Pub. L. No. 107-204, § 804(a), 116 Stat. 745, 801 (July 30, 2002), captioned "*Statute of Limitations* for securities fraud," extended the previously applicable *statute of repose* from three years to five years. *See FHFA*, 2012 WL 1570856, at *4 (emphasis in original) (*citing Stolz*, 355 F.3d at 104). The Court's ruling here, that the "statute of limitations" in HERA likewise displaces previously applicable repose periods, is fully in accord with that binding precedent. Defendants also ignore this Court's observation that Section 13 of the Securities Act, the very source of the repose period Defendants seek to impose here, "itself is entitled 'Limitations on Actions,' and nowhere uses the term 'repose.'" *FHFA*, 2012 WL 1570856, at *4 (quoting 15 U.S.C. § 77m). These authorities directly contradict the central premise of Defendants' argument—that the term "statute of limitations" is too narrow to encompass periods of repose—and amply support this Court's ruling that the HERA claims period governs this action. *FHFA*, 2012 WL 1570856, at *5. In four briefs submitted on this issue,[3] Defendants have yet to provide any answer to this authority, much less an answer sufficient to raise a "substantial" issue worthy of immediate interlocutory appeal.

---

[3] Defendants previously raised these same arguments, citing almost identical authorities (while also ignoring the authorities cited here in text), in their Opening Memorandum of Law in Support of Defendants' Motion to Dismiss the Second Amended Complaint ("MTD Mem.") at 13-16 (Dkt. No. 52), their Reply Memorandum of Law in Further of Their Motion to Dismiss the Second Amended Complaint at 3-6 (Dkt. No. 59), and their March 5, 2012 response to FHFA's Sur-Reply at 2-3.

Instead, Defendants again rely on the same two out-of-Circuit district court decisions to argue that there is a "stark contrast" between those decisions and this case.  Mem. 9-10.  But "neither disagreement outside this Circuit, nor the presence of disputed matters of first impression demonstrate a substantial ground for a difference of opinion."  *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 2005 WL 39918, at *2 (S.D.N.Y. Jan. 6, 2005); *see also Cromer Fin.*, 2001 WL 935475, at *3 ("the fact that there may be disagreements among courts outside the Second Circuit … is insufficient" to demonstrate a substantial ground for difference of opinion); *In re WorldCom*, 2003 WL 22953644, at *7 (declining to find a substantial ground for difference of opinion despite there being "[r]eported decisions from at least four courts" holding to the contrary, because "[t]his issue was fully addressed in the [challenged] Opinion, and the [moving parties] have not shown where that analysis was wrong"); *S.E.C. v. Credit Bancorp, Ltd.*, 103 F. Supp. 2d 223, 227 (S.D.N.Y. 2000) ("The fact that there is a some level of disagreement among the courts does not mean, however, that the standards of 1292(b) are necessarily satisfied.").  The two cases on which Defendants rely prove the wisdom of this rule.  The first decision is no "decision" at all, but rather two "*tentative* decisions," now in their third iteration, issued by the Central District of California.  *See* Mem. 9-10 (citing *Nat'l Credit Union Admin. Bd. v. RBS Sec., Inc.* ("*NCUA*"), No. CV 11-5887-GW (C.D. Cal.) (Dkt. Nos. 108, 126)).  Such a "tentative order binds neither the court nor the parties," since it is "subject to change before the end of the proceedings" and "do[es] not conclusively determine the dispute[d] question."  *Thomas v. Housing Auth. of L.A.*, 2005 WL 6133692, at *1 (C.D. Cal. June 3, 2005) (quotation marks and citation omitted).

That procedural oddity notwithstanding, the tentative *NCUA* decisions are wrong for the same reason the other decision on which Defendants rely is wrong.  Specifically, Defendants

again invoke *Resolution Trust Corp. v. Olson*, 768 F. Supp. 283 (D. Ariz. 1991), a decision from the District of Arizona that is over twenty years old and has been criticized by courts within this District as "legally unsound."  *In re Boesky Sec. Litig.*, 882 F. Supp. 1371, 1380-81 (S.D.N.Y. 1995); *see also Stonehedge/Fasa-Tex. JDC v. Miller*, 110 F.3d 793, 1997 WL 119899, at *2 (5th Cir. Mar. 10, 1997) (unpublished) (finding *Olson* "unpersuasive for several reasons").  This Court's Order shows why that assessment remains apt.  In *Olson*, the court ruled that the same statutory language at issue here did not apply to statutes of repose because the statutory language "deal[s] only with procedural statutes of limitations and not substantive statutes of repose."  768 F. Supp. at 285.  But this Court recognized in its Order that Defendants, like *Olson*, "have the legal doctrine backwards" because "the Supreme Court has rejected defendants' argument that state statutes of limitations should be considered 'procedural' for purposes of [a] federalism analysis."  *FHFA*, 2012 WL 1570856, at *5 (citing *Jinks v. Richland Cnty.*, 538 U.S. 456, 464-65 (2003)).  *NCUA* likewise depends on this false procedural/substantive dichotomy.  *See NCUA*, Dkt. No. 108, at 14-15 (relying on *Olson*'s discussion of "substantive time limits"); Dkt. No. 126, at 2 (incorporating prior tentative ruling by reference and reaching same conclusion).  These decisions are thus patently incorrect, and therefore provide no basis for finding a *substantial* ground for difference of opinion.  *See, e.g.*, *In re Flor*, 79 F.3d at 284.

Having staked their position on an untenable "plain reading" of the term "statute of limitations," Defendants fail to address, much less proffer a substantial argument, directed to the fundamental tenet that statutory language must be understood in context and consistent with the purposes of the statute as a whole.  *See, e.g.*, *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 486 (2006) (Kennedy, J.); *see also Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997) (Thomas, J.) (meaning of statutory language turns on "the specific context in which that language is used, and

the broader context of the statute as a whole."); *Pettus v. Morgenthau*, 554 F.3d 293, 297 (2d Cir. 2009) ("[W]e attempt to ascertain how a reasonable reader would understand the statutory text, considered as a whole.").  Defendants actually undermine themselves on this point, conceding that HERA was enacted for the purpose of empowering FHFA "to take actions necessary" to restore the GSEs to financial health (Mem. 11), while offering no rationale as to how their cramped construction would serve that purpose.[4]  As this Court ruled, "[r]eading HERA's reference to 'statute of limitations' in the narrow fashion that defendants propose would undermine the congressional purpose of a statute whose overriding objective was to maximize the ability of FHFA to 'put the [GSEs] in a sound and solvent condition.'"  *FHFA*, 2012 WL 1570856, at *5 (quoting 12 U.S.C. § 4617(b)(2)(D)).  This is one more reason that the Court's ruling is correct, and one more portion of the Court's analysis that Defendants do not and cannot adequately address.

Finally, Defendants wrongly assert that the Order "conflicts with Second Circuit authority and other case law" by purportedly describing differences between a statute of limitations and a statute of repose as merely "semantic."  Mem. 12.  But the Order did no such thing:  in the very next sentence after using the phrase "semantic distinction," the Order recognized that the two time limitations are "conceptually distinct," and quoted extensively from the Second Circuit's decision in *Stolz* to describe the operation of each.  *FHFA*, 2012 WL 1570856, at *4 (quoting *Stolz*, 355 F.3d at 102).  As discussed above, moreover, *Stolz*, which is controlling here and which this Court properly followed, itself demonstrates that the term

---

[4]    Defendants instead rely again on *Olson* and *NCUA*, neither of which analyzed the purposes of the statutes before them and both of which are flawed for reasons explained in text. Moreover, while Defendants insist that the statutes at issue in those cases served "exactly the same policies" underlying HERA (Mem. 11), this Court correctly observed that HERA was passed under unique circumstances as emergency legislation "aimed at addressing some of the most pressing problems of the housing crisis."  *FHFA*, 2012 WL 1570856, at *5.

"statute of limitations," specifically in the securities context, is used by Congress and understood by the Courts, to encompass periods of repose.  355 F.3d at 104.  As this Court also recognized, the conceptual distinction between limitations periods and repose periods does not change the fact that Congress does not use the term "statute of repose" when it creates one—as it did in the Securities Act, Sarbanes-Oxley, and a host of other federal laws; instead, Congress "use[s] the term 'limitations' to encompass both types of timeliness provision[s]."  *FHFA*, 2012 WL 1570856, at *4.  Defendants' continued reliance on a ***single*** uncodified law governing the time to bring suit related to Native American land claims in certain South Carolina counties (Mem. 11) only underscores this point—even there, Congress created a "repose" period under the heading of "STATUTE OF LIMITATIONS."  *See* Pub. L. No. 102-339, § 3, 106 Stat. 869 (Aug. 11, 1992) (capitalization in original).[5]

In sum, in their bid for certification Defendants offer nothing more than the same, well-worn arguments this Court has already rejected, and fail to identify any rationale or authorities that provide a cogent explanation for why this Court's analysis could be found lacking. Defendants have therefore failed to identify a substantial ground for difference of opinion as to HERA's applicability to statutes of repose, and their motion should be denied.

**B.    There Is No Substantial Ground For Difference Of Opinion As To Whether HERA Applies To Federal Claims**

Defendants also argue that a "substantial ground for difference of opinion" exists as to whether the HERA claims period applies to federal claims.  In support of this position,

---

[5]  Defendants similarly rely on a collection of ***proposed*** bills without explaining why any of these bills—none of which ever made it out of a single house of Congress—qualify as evidence of "Congress's" intent (Mem. 11), or why, if Congress's "recogni[tion of] a distinction between 'repose' and limitations'" (*id.*), is so clear, Congress has used the word "repose" only once in the last two centuries to refer to such a time limit, and has repeatedly used the terms "limitations" or "statute of limitations" instead.

Defendants identify no conflicting authority but instead principally contend that the Court's ruling is in tension with certain principles of statutory construction.   Mem. 15-16.   A "[s]ubstantial ground for a difference of opinion," however, "requires more than a *claim* that the court's ruling was wrong."   *Mills*, 771 F. Supp. 2d at 273 (emphasis added).   And as this Court has previously recognized, Congress did "not intend[] [Section 1292(b)] as a vehicle to provide early review of difficult rulings in hard cases."   *Cromer Fin.*, 2001 WL 935475, at *1 (quotation marks omitted).   Defendants' argument falls far short of the applicable standard, as the applicability of the HERA claims period to federal claims is not even a "difficult" question, much less a question as to which there is any "substantial" basis for disagreement.

Defendants identify the correct rule of construction:   "Where Congress includes particular language in one section of a statute but omits it in another, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."   *Keene Corp. v. United States*, 508 U.S. 200, 208 (1993) (quotation marks, brackets, and ellipsis omitted) (quoted in FHFA's Memorandum Of Law In Opposition To Defendants' Motion To Dismiss The Second Amended Complaint ("MTD Opp.") at 18 (Dkt. No. 57); Mem. 15-16).   But Defendants draw the wrong conclusion:  the HERA claims period refers to "State law" only with respect to one of two alternative start-times for the applicable three-year limitations period.   That language does not appear at all in the provision, applicable here, setting the limitations period as "the 3-year period beginning on the date on which the claim accrues," 12 U.S.C. § 4617(b)(12)(A)(ii)(I), as measured from September 6, 2008, the date the conservatorships commenced.   Thus, *Keene* requires a conclusion directly opposite from the one that Defendants proffer here.   Given the omission of any mention of "State law" from one of two alternative provisions, there is no basis to suppose that Congress intended that provision to apply only with

respect to state claims.  Defendants' failure (Mem. 15-16) to cite even a single case coming to a contrary conclusion is only further confirmation that there is no ground for difference of opinion on this issue, let alone a substantial one.

In any event, Defendants again fail to address this Court's reasoning in its Order, in which it correctly concluded that the plain language of HERA, which sets the limitations period for "*any action* brought by the Agency as conservator," governs both state and federal law. *FHFA*, 2012 WL 1570856, at *6 (emphasis in original) (quoting 12 U.S.C. § 4617(b)(12)(A)); *see also FDIC v. Zibolis*, 856 F. Supp. 57, 61 (D.N.H. 1994) (concluding that "[t]he fact that a fraudulent transfer claim cannot easily be defined as a contract or a tort claim does not make the federal statute of limitations inapplicable" because the identical statutory language applies "'to *any* action brought by the FDIC as receiver'" (quoting identical language in 12 U.S.C. § 1821(d)(14)(A))).  That italicized language is broad, because, "[r]ead naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'"  *United States v. Gonzales*, 520 U.S. 1, 5 (1997) (quoting Webster's Third New International Dictionary 97 (1976)).  This capacious language likely explains why Congress felt no need to elaborate that it was referring to "Federal or State law claims" in the relevant portion of the statute (*contra* Mem 16 & n.8), since it had already set the statute of limitations for "whatever kind" of action FHFA, as conservator or receiver, may need to bring.  This broad language, combined with Congress's intentional exclusion of the term "state law" from one half of a disjunctive test, makes clear that the HERA claims period is in no way limited to state law claims.

Equally unpersuasive is Defendants' reiteration of their argument that this Court's interpretation of the HERA claims period would "shorten" several federal statutes of limitation. Again, this Court rejected this argument as one that "fails in the face of the limitations

provision's plain language," *FHFA*, 2012 WL 1570856, at *6, and Defendants offer no argument why that construction was even arguably erroneous.  Defendants' effort to cherry-pick a limited number of statutes as to which limitations periods hypothetically could be shortened also ignores that, with respect to all of those provisions, the HERA claims period would actually *extend* the limitations period for any claims accruing before September 6, 2007, and that, even as to claims that accrued later, FHFA would have *at least three years* "to decide whether and how to pursue any claims it inherited as the GSEs' newly-appointed conservator," which is precisely the purpose of 12 U.S.C. § 4617(b)(12).  *FHFA*, 2012 WL 1570856, at *5 (quotation marks and brackets omitted).  In any event, such hypothesizing, which when raised previously was insufficient to justify a deviation from the statute's natural reading, *see Caraco Pharm. Labs., Ltd. v. Novo Nordisk A/S*, 132 S. Ct. 1670, 1682 (2012), does not constitute a "substantial ground for a difference of opinion."  *See Mills*, 771 F. Supp. 2d at 273 ("Substantial ground for a difference of opinion requires more than a claim that the court's ruling was wrong.").  Because Defendants have offered nothing but the same arguments they previously raised and this Court soundly rejected, there is no substantial ground for difference of opinion.

## II.  NEITHER OF DEFENDANTS' PROPOSED ISSUES CONSTITUTES A CONTROLLING QUESTION OF LAW

Defendants also fail to demonstrate that either of the issues they identify in support of certification constitutes a "controlling question of law," as required under Section 1292(b).  Both the Second Circuit and this Court have repeatedly stated that a question of law is not "controlling" within the meaning of Section 1292(b) when there are independent and alternative grounds upon which a plaintiff may pursue its claims.  *See, e.g.*, *Santiago v. Pinello*, 647 F. Supp. 2d 239, 243 (E.D.N.Y. 2009) (To be "controlling" the "determination of the issue on appeal [must] materially affect the litigation's outcome."); *Cromer Fin.*, 2001 WL 935475, at *2

(concluding that "[s]ince the [challenged] Opinion also based its finding of personal jurisdiction over [the defendant] on general jurisdiction, the issue of specific jurisdiction does not present a controlling issue of law").   Thus, in *CALPERS*, the Second Circuit agreed with this Court's decision not to find a question regarding "related to" jurisdiction controlling, stating that "[b]ecause at least one alternative basis for 'related to' jurisdiction may exist … we are not convinced that the [moving parties] have raised a 'controlling question' that should be reviewed on an interlocutory basis."   368 F.3d at 95; *see also In re WorldCom*, 2003 WL 22953644, at *5 (concluding that "because there are alternative analyses to that of the [challenged] Opinion that may support jurisdiction, the plaintiffs have not shown that the second question is a controlling question of law").   Under this authority, there are several reasons why neither of Defendants' proposed questions is "controlling."

*First*, although Defendants assert that a "ruling in favor of Defendants" that HERA does not apply to statutes of repose "would dispose of Plaintiff's claims" (Mem. 6), there are in fact independent and alternative reasons that the scope of these actions would remain essentially unchanged.  *See Santiago*, 647 F. Supp. 2d at 243.  For example, as FHFA has argued (*see* MTD Opp. 20 n.14; FHFA's Letter to Hon. Denise L. Cote at 2 (Mar. 30, 2012)), even if HERA's plain language did not apply to statutes of repose, FHFA's state "Blue Sky" claims would survive, because "[i]t is well settled that the United States is not bound by state statutes of limitation," *Summerlin*, 310 U.S. at 416, including state repose periods.  *See, e.g.*, *United States v. Evans*, 340 Fed. App'x 990, 993 (5th Cir. 2009) (per curiam) ("Because the fundamental question addressed by *Summerlin* is whether a claim brought by the United States can be time-barred under state law, the effect of a statute of repose—which bars a claim that is untimely—is equivalent to that of a statute of limitations and thus is treated the same under *Summerlin*.");

15

*Bresson v. C.I.R.*, 213 F.3d 1173, 1178 (9th Cir. 2000) (concluding that a state "extinguishment provision causes a valid, fully accrued right of action to lose its vitality through the passage of time—precisely the result against which *Summerlin* protects the United States.").  Courts have also specifically held that the *Summerlin* doctrine applies, as here, when the government, in furtherance of a public purpose, accedes to private rights via the operation of federal law.  *See, e.g., United States v. California*, 507 U.S. 746, 757 (1993); *United States v. People's Household Furnishings, Inc.*, 75 F.3d 252, 255-56 (6th Cir. 1996).  Thus, even if FHFA's Securities Act claims were dismissed under Defendants' incorrect construction of the HERA claims period as inapplicable to statutes of repose, FHFA's state securities claims would survive.  As Defendants themselves have recognized, the elements of FHFA's Blue Sky claims are largely identical to those under the Securities Act.[6]  This substantial similarity defeats Defendants' suggestion that certification would "result in this case being dramatically narrowed," (Mem. 8), and thus demonstrates that this issue is not "controlling".

Similarly, even if the HERA claims period were held inapplicable to statutes of repose, FHFA's arguments based on *American Pipe* and the existence of tolling agreements between the parties would support the Court's ruling that FHFA's federal and state claims are timely with

---

[6]  *See* MTD Mem. at 13 n.18 (citing *Hite v. Leeds Weld Equity Partners, IV, LP*, 429 F. Supp. 2d 110, 114 (D.D.C. 2006) to argue that "[g]iven the D.C. Securities act's substantial similarities to the federal securities laws, case law interpreting the 1933 Act is persuasive"); *see also Pollock v. Commonwealth*, 217 Va. 411, 413 (1976) (per curiam) (same for Virginia Blue Sky Act).  The notable exception is that FHFA's Blue Sky claims do not require proof of loss causation.  *See, e.g., In re Merrill Lynch Auction Rate Sec. Litig.*, 758 F. Supp. 2d 264, 281 (S.D.N.Y. 2010) ("Indeed, loss causation is a specialized federal securities law concept. Therefore, the Court's loss causation analysis is not applicable in wholesale to these state law claims.") (citation omitted); *Dunn v. Borta*, 369 F.3d 421, 432 (4th Cir. 2004) (holding that Section 13.1-522(A) of the Virginia Code "does not include any reference to either reliance or causation."); 12A Joseph C. Long, Blue Sky Law § 9:117.41 ("The [Uniform Securities Act] is essentially saying that 'thou shall not lie in the sale of a security.'  If you do, the investors may rescind the transaction without showing causation, reliance, injury, or bad mind on the part of the seller.").

respect to many of the securitizations in each Complaint.  MTD Opp. 29-31.  As FHFA has argued, the Supreme Court held in *American Pipe* that the filing of a class action tolls the statute of repose for all putative class members.  *Am. Pipe*, 414 U.S. at 554.  Multiple courts, including in this jurisdiction, have since applied *American Pipe* to toll claims asserted by certificateholders arising out of mortgage-backed securities that have been the subject of prior class actions.  *See* MTD Opp. 30 (collecting cases).  These precepts apply to several of the securitizations in this case, and will likely apply to many securitizations across all of FHFA's cases pending before this Court.  While this Court had no need to reach these arguments on a securitization-by-securitization basis, given its ruling that the HERA claims period replaces statutes of repose, these arguments show that there is "at least one alternative basis" on which FHFA's claims can be ruled timely. *CALPERS*, 368 F.3d at 95.

Second, in the unlikely event of a ruling that the HERA claims period is inapplicable to federal claims, FHFA's state Blue Sky claims would still survive, again leaving the scope of these actions largely unchanged.  And for the same reasons discussed above, even if Defendants were correct that HERA does not apply to federal claims, many of FHFA's federal claims would still be timely based on *American Pipe* and the tolling agreements.  Thus, even if Defendants could prevail on one or both issues they identify as warranting interlocutory appeal, FHFA's actions would survive and their scope would be essentially unchanged, meaning that neither issue Defendants identify is "controlling."  *See Santiago*, 647 F. Supp. 2d at 243.

Third, these independent and alternative grounds for finding FHFA's claims timely regardless of the HERA claims period's applicability to statutes of repose and/or federal claims mean that certification cannot be justified based on an analysis of the "system-wide costs and benefits."  *In re WorldCom*, 2003 WL 22953644, at *4 (quoting *Klinghoffer v. S.N.C. Achille*

*Lauro*, 921 F.2d 21, 24 (2d Cir. 1990)).  As discussed, a ruling for Defendants on appeal would not result in dismissal of any of FHFA's state securities claims (based on application of the *Summerlin* doctrine), and would not affect FHFA's ability to pursue state and federal claims with respect to those transactions that are timely under *American Pipe* or the applicable tolling agreements.  If anything, then, a ruling on appeal in Defendants' favor would only serve to expand the burdens on the parties and on the Court to resolve issues arising out of these doctrines.   The analysis of whether *American Pipe* tolling applies to each of the 603 Securitizations at issue across the 18 pending complaints would be especially complex.  For example, in *Choquette v. City of New York*, ___ F. Supp. 2d ___, 2012 WL 906680, at *1-10 (S.D.N.Y. Mar. 19, 2012), Judge Koeltl recently undertook a lengthy discussion of the procedural history of a separate class action in order to determine whether the class action before him was tolled, including determining when the class was certified, when the parties first settled, when the district court gave preliminary approval to the settlement, and when final settlement was entered, both to determine when the *American Pipe* tolling began and when it ended.  Along similar lines, for each of the 603 Securitizations, it would be necessary first for FHFA to identify all pending class actions in the nation in which claims have been asserted on behalf of certificateholders, and it would then be necessary for the parties and the Court to assess the particulars of each of those class actions in order to resolve the extent to which they qualify for tolling.  This analysis would hardly "streamline" these proceedings, but would be complex and require the expenditure of substantial time and resources.

     *Fourth*, the Court's Order is not one in which "[t]he answer [to the issue of law] will determine whether scores of lawsuits are properly before this Court."  *In re WorldCom*, 2003 WL 22953664, at *5.  The Court has already rejected Defendants' assertion that a decision

whether HERA applies to statutes of repose and/or federal claims will "have far-reaching precedential impact." (Mem. 8; *see also id.* at 15). As the Court explained, under its analysis of HERA, "Section 13 [of the Securities Act] continues to apply with full force to the vast majority of litigants; HERA creates an exception for a single, privileged plaintiff—FHFA." *FHFA*, 2012 WL 1570856, at *5 n.8. The fact that another federal agency, the Federal Deposit Insurance Corporation ("FDIC"), has recently filed suit to protect the public interest pursuant to its own statutory commands (Mem. 8-9) in no way changes that "the vast majority of litigants" will be unaffected by the Order. Nor is this an issue that regularly recurs, even as to those federal agencies subject to their own statutory limitations periods. The Court's Order thus hardly presents the type of recurring question that requires immediate appellate review.[7]

## III.   AN IMMEDIATE APPEAL WILL NOT MATERIALLY ADVANCE THE TERMINATION OF THE LITIGATION

Defendants also fail to satisfy the third prerequisite to certification—that an "immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). While "the question of whether there is a controlling issue of law is distinct from the question of whether certification would materially advance the ultimate termination of the litigation, in practice the two questions are closely connected." *Credit Bancorp*, 103 F. Supp. 2d at 227. Therefore, as with Section 1292(b)'s "controlling question" requirement, where there is "an alternative ground for [ruling] that remains unadjudicated," "[r]esolution of [an] issue on

---

[7]     Defendants' repeated refrain (Mem. 8-9, 14) about the burdens associated with 17 FHFA cases fails to account for the fact that 15 of these cases were coordinated at Defendants' request for initial motion briefing and discovery. *See* Defendants' Proposal For The Efficient And Convenient Handling Of These Cases at 3 (Dkt. No. 18) (proposing "coordination of briefing on common grounds for motions to dismiss" and "coordination of planning for potential discovery"); Nov. 16, 2011 Order at 4 (Dkt. No. 20) (ruling that all 15 actions "are now assigned to me for all purposes"). As a result, the burdens for the parties and the Court are far less than they would be if those cases were proceeding entirely independently.

appeal will not materially advance the ultimate termination of this litigation." *Noble Shipping, Inc. v. Euro-Maritime Chartering Ltd.*, 2004 WL 741285, at *1 (S.D.N.Y. Apr. 7, 2004); *see also Westwood Pharm.*, 964 F.2d at 88 (concluding that "it is not clear to us that our disposition of these issues will materially advance the ultimate determination of this case" because even if there were a reversal as to the defense at issue, "many of the same factual issues relevant to that defense would still have to be litigated pursuant to" separate statutes).

Here, certification will not materially advance the termination of this action because even if the Second Circuit were to hold that HERA does not apply to statutes of repose and/or federal claims, FHFA has put forward independent and alternative grounds why most or all of its claims are timely. As discussed in Part II, *supra*, FHFA's state law claims will still survive any such ruling through application of the *Summerlin* doctrine, and will largely require the identical time, expense, and participants to litigate. Likewise, FHFA's state and federal claims pertaining to many of the securitizations at issue in each Complaint would likely survive based on *American Pipe* tolling. Thus, even if the Order were certified and the Second Circuit were to grant permission to appeal and reverse, "many of the same factual issues relevant to [the suit] would still have to be litigated." *Westwood Pharm.*, 964 F.2d at 88; *cf. German v. Fed. Home Loan Mortg. Corp.*, 2000 WL 1006521, at *2 (S.D.N.Y. July 19, 2000) (quoted in Mem. 20) (ruling that an immediate appeal as to dismissal of federal claims would materially advance the litigation because "a ruling by the Circuit would greatly simplify the scope of discovery").

Finally, Defendants argue that certification will spare taxpayers the costs of pursuing this litigation insofar as a result on appeal in Defendants' favor would mean dismissal of FHFA's pending cases. (Mem. 4.) This professed concern for U.S. taxpayers is richly ironic as this entire litigation represents an effort by FHFA to recover on behalf of those taxpayers for the

massive losses Defendants caused through their sale of billions of dollars in toxic mortgage-backed securities.[8]   In any event, the premise of Defendants' argument is wrong.   An interlocutory appeal would not reduce costs, but would expand them, as the parties would incur substantial expenses in pursuing briefing and argument before the Court of Appeals on issues this Court has already properly resolved.   In addition, as discussed, *supra*, even if that appeal were to succeed (which is exceedingly unlikely), FHFA's state securities claims would survive under the *Summerlin* doctrine, as would its state and federal claims for numerous transactions under *American Pipe*.   Thus, this action, and the costs associated with it, would not be substantially narrowed, as Defendants presume, and FHFA would continue to have to expend significant resources to vindicate the rights of the very taxpayers whose interests Defendants now disingenuously purport to defend.

---

[8]   While Defendants repeatedly cite statements by individual legislators who have "expressed concern over the litigation costs incurred by FHFA in pursuing these actions," (Mem. 14) (citing Kasner Decl. Ex. F), it is telling that Defendants do not find any legislators who have taken the position that FHFA lacks the authority to pursue these claims, or is time barred from doing so.  The fact that legislators are apparently monitoring these suits, and have made no such statements, of course undercuts Defendants' contention that Congress, in passing HERA, intended for federal and state repose periods to defeat suits like this one.  In any event, the best way to resolve any concern with the costs of this litigation is not to authorize a futile interlocutory appeal, but instead to resolve these cases as expeditiously as possible based on the schedule the Court has established, so that the American taxpayers can recover what Defendants owe them.

## CONCLUSION

For the reasons set forth above, FHFA respectfully requests that the Court deny certification of its May 4, 2012, Order.

DATED:   New York, New York
June 5, 2012

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

By: _____
Philippe Z. Selendy
Kathleen M. Sullivan
Adam M. Abensohn
Manisha M. Sheth
Jordan A. Goldstein

51 Madison Avenue, 22nd Floor
New York, New York  10010-1601
(212) 849-7000

*Attorneys for Plaintiff Federal Housing
Finance Agency, as Conservator for Fannie
Mae and Freddie Mac*

22