```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
FEDERAL HOUSING FINANCE AGENCY, etc.,   :
                          Plaintiff,    :
                -v-                     :     11 Civ. 5201 (DLC)
                                        :
                                        :     OPINION & ORDER
UBS AMERICAS, INC., et al.,             :
                          Defendants.   :
                                        :
----------------------------------------X
```

APPEARANCES:

For the plaintiff:
Philippe Z. Selendy
Kathleen M. Sullivan
Adam M. Abensohn
Manisha M. Sheth
Jordan A. Goldstein
Quinn Emanuel Urquhart & Sullivan, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010-1601

For defendants:
Jay B. Kasner
Scott D. Musoff
Robert A. Fumerton
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, New York 10036

DENISE COTE, District Judge:

This is one of sixteen actions pending before this Court that have been brought by the Federal Housing Finance Agency ("FHFA" or "the Agency"), as conservator of the Federal National Mortgage Association ("Fannie Mae") and the Federal Home Loan Mortgage Corporation ("Freddie Mac") (collectively, the "Government Sponsored Enterprises" or "GSEs"), against various

financial institutions involved in the packaging, marketing and sale of residential mortgage-backed securities that the GSEs purchased in the period from 2005 to 2007.[1]  An Opinion and Order of May 4 granted in part defendants' January 20 motion to dismiss the Second Amended Complaint.  See <u>Federal Housing Finance Agency v. UBS Americas, Inc.</u>, ___ F. Supp. 2d ___, No. 11 Civ. 5201 (DLC), 2012 WL 1570856 (S.D.N.Y. May 4, 2012) (the "May 4 Opinion").

This Opinion addresses the UBS defendants' May 23 motion to certify an interlocutory appeal from that portion of the May 4 Opinion that denied their motion to dismiss as untimely FHFA's claims under Sections 11, 12(a)(2), and 15 of the Securities Act of 1933, 15 U.S.C. §§ 77k, *l*(a)(2), o.  The Court ordered that the motion be briefed on an expedited schedule, and it became fully submitted on June 8, 2012.

In the interim, document discovery has begun in all sixteen cases.  Pursuant to an Order of June 14, fact and expert discovery in this case must be complete no later than June 14, 2013.  Any summary judgment motion must be fully submitted by August 30, 2013.  Trial is scheduled to begin at 9:30 a.m. on

---

[1] The FHFA has also brought two similar actions, which are pending in federal courts in California and Connecticut.  See <u>FHFA v. Countrywide Financial Corp., et al.</u>, No. 12 Civ. 1059 (MRP) (C.D. Cal.); <u>FHFA v. Royal Bank of Scotland</u>, No. 11 Civ. 1383 (AWT) (D. Conn).

January 13, 2014.  At a scheduling conference on June 13, 2012, the defendants agreed that, if this Court granted their motion for certification, they would seek expedited review in the Court of Appeals.

Defendants seek interlocutory review of two specific conclusions in the Court's May 4 Opinion: (1) that the Housing and Economic Recovery Act of 2008 ("HERA") prescribes comprehensive time limitations for any claim the FHFA may bring as conservator for the GSEs, including a claim to which a statute of repose generally attaches; and (2) that HERA's timeliness provision applies equally to federal and state causes of action.  For the purposes of certification, these conclusions are closely intertwined.  If interlocutory review is granted, the Court of Appeals will address the specific question of whether the May 4 Opinion correctly analyzed HERA's impact on plaintiff's Securities Act claims.  HERA's applicability to federal claims will necessarily be entailed in that analysis.  Thus, while defendants' motion for certification raises two distinct legal issues, they reduce to a single question for appeal: whether the May 4 Opinion erred in concluding that HERA displaces the statute of repose that generally governs claims under the Securities Act.  The Court therefore addresses its analysis of the Section 1292(b) factors to that single question,

recognizing that "it is the order that is appealable, and not the controlling question identified by the district court" or the parties.  California Public Employees' Retirement System v. Worldcom, Inc., 368 F.3d 86, 95 (2d Cir. 2004) (citation omitted).

Having considered those factors, the Court concludes, for the reasons that follow, that defendants have carried their burden of demonstrating that an interlocutory appeal should be certified.  The motion is therefore granted on the condition that defendants seek expedited review in the Court of Appeals.

DISCUSSION

The standard for certification is well established. Section 1292(b) provides, in relevant part, that

> [w]hen a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.  The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order.

28 U.S.C. § 1292(b) (emphasis supplied); see Casey v. Long Island R. Co., 406 F.3d 142, 146 (2d Cir. 2005) (noting that

4

Section 1292(b) "imposes both procedural and substantive requirements on a would-be appellant").

The Court of Appeals has emphasized that Section 1292(b) certification should be "strictly limited because only exceptional circumstances will justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." Flor v. BOT Fin. Corp., 79 F.3d 281, 284 (2d Cir. 1996) (citation omitted).  Certification is thus appropriate only in the narrow class of cases in which "an intermediate appeal may avoid protracted litigation." Koehler v. Bank of Bermuda Ltd., 101 F.3d 863, 866 (2d Cir. 1996).  In considering whether to enact Section 1292(b), the House Committee on the Judiciary specifically identified as falling into that category cases such as this one, in which "a long trial is envisioned to determine liability over a defense disputing the right to maintain the action." Id.

1. Controlling Question of Law

The Second Circuit has recognized that "resolution of an issue need not necessarily terminate an action in order to be 'controlling,'" for the purposes of Section 1292(b). Klinghoffer v. S.N.C. Achille Lauro, et al., 921 F.2d 21, 24 (2d Cir. 1990).  Rather, it is enough to satisfy the statute's first prong that the issue is one "that may importantly affect the

5

conduct of [the] action."  In re The Duplan Corp., 591 F.2d 139, 148 n.11 (2d Cir. 1978); accord In re Worldcom, Inc. Sec. Litig., No. 02 Civ. 3288 (DLC), 2003 WL 22953644, at *4 (S.D.N.Y. Dec. 16, 2003).  Moreover, timeliness determinations, which go directly to the plaintiff's ability to maintain some or all of its claims, are precisely the type of legal issue that Congress intended to be addressed through the Section 1292(b) procedure.

In resisting certification, plaintiff insists that, even if the Court of Appeals were to conclude that HERA does not abrogate the statute of repose generally applicable to claims under the Securities Act, some portion of its claims would be preserved by contractual tolling agreements with various defendants or the class-action tolling doctrine enunciated in American Pipe & Construction v. Utah, 414 U.S. 538 (1974).  Plaintiff also suggests that its state-law Blue Sky claims would be unaffected by an interlocutory ruling, because, under the doctrine articulated in United States v. Summerlin, "the United States is not bound by state statutes of limitations."  310 U.S. 414, 416 (1940).  Needless to say, defendants take issue with these contentions.  The May 4 Opinion did not address them in light of the Court's conclusion that plaintiff's claims were timely under HERA.

Whether or not plaintiff is correct that an interlocutory ruling on the issues raised by the defendants could not terminate the litigation, there can be no question that such a ruling would "importantly affect the conduct of [the] action." In re The Duplan Corp., 591 F.2d at 148 n.11.  As defendants note, plaintiff's tolling arguments do not apply to 14 of the 22 Certificates at issue here.  Thus, even if those arguments have merit, an appellate ruling that HERA's timeliness provision does not abrogate statutes of repose would significantly narrow the scope of discovery in this case and the proof that the parties would be able to present at trial, saving the parties and the public time and money.  And given that defendants challenge the plaintiff's Summerlin argument in part on the ground that the Supreme Court's holding does not apply to state statutes of repose (as distinct from statutes of limitations), an appellate decision addressed to the relationship between those two concepts would bear significantly on the Court's decision as to whether to allow the Blue Sky claims to go forward in the event the federal claims were dismissed.  The issues upon which the defendants seek interlocutory review thus constitute "controlling questions of law" within the meaning of the statute.

2. Material Advancement

For many of the same reasons, appellate resolution of the issues identified by the defendants would "materially advance the ultimate termination of the litigation." As discussed, a conclusion by the Court of Appeals that this Court erred in its May 4 ruling has the potential to end or at a minimum significantly restrict the scope of this litigation. But the efficiencies to be gained by interlocutory review are not lost if the Court of Appeals ultimately affirms this Court's May 4 ruling. An appellate ruling that FHFA's claims are in fact timely is likely to significantly affect the parties' bargaining positions and may hasten the termination of this litigation through settlement.

Appellate resolution of the timeliness of plaintiff's Securities Act claims will also remove a cloud of legal uncertainty that hangs over the other 17 actions in this suite of cases. This, in turn, will facilitate and streamline motion practice in those other cases and may affect the parties' strategic decision-making going forward. Courts may properly consider such "system-wide costs and benefits" in determining whether to permit interlocutory review. Klinghoffer, 921 F.2d at 24. Indeed, several district courts, including this one, have opined that certification may be particularly appropriate

in complex litigation involving multiple coordinated actions. In such cases, interlocutory review may be the best way to "materially advance the ultimate termination of the litigation by avoiding 'protracted litigation and multiple appeals'" of the same or similar issues.  In re Worldcom, Inc. Sec. Litig., 2003 WL 22953644, at *8 (quoting In re Air Crash Off Long Island, New York on July 17, 1996, 27 F.Supp.2d 431, 434 (S.D.N.Y. 1998)).

3. Substantial Grounds for a Difference of Opinion

The remaining prong of Section 1292(b), which requires a finding that the issue to be certified is one about which there are "substantial grounds for a difference of opinion," poses the greatest challenge for the defendants.  It is well established that an issue of "first impression, standing alone, is insufficient to demonstrate a substantial ground for difference of opinion."  Flor v. BOT Fin. Corp., 79 F.3d 281, 284 (2d Cir. 1996).  And, for reasons explained at length in the May 4 Opinion, the Court has little doubt that its interpretation of HERA is the one that best comports with the "everyday" meaning of the statutory text and "the objectives of the statute overall," 2012 WL 1570856, at *5.

In urging certification, defendants suggest that the Opinion's reference to the "semantic distinction between 'statutes of limitations' and 'statutes of repose,'" 2012 WL

1570856, at *4, is inconsistent with Second Circuit precedent emphasizing that the two concepts are substantively distinct. That argument is disingenuous.  The Court's use of the term "semantic" was plainly intended in the literal sense, to refer to a distinction "relating to meaning in language."  See Merriam-Webster's Collegiate Dictionary 1129 (2003).  At no point was it suggested that the terms are synonymous.  To the contrary, the Court was careful to observe the conceptual distinctions between them in arriving at its conclusion that HERA's reference to "statutes of limitations" embraces both the narrow sense of that term intended by the defendants as well as what defendants refer to as "statutes of repose."  See 2012 WL 1570856, at *5.

Nor does the fact that, twenty years ago, Congress passed a single statue tolling "any . . . period of limitation or repose," see Pub. L. No. 102-339, § 3(b), 106 Stat. 869 (Aug. 11, 1992), and has since considered (without enacting) bills that use the term "statute of repose," suggest substantial grounds for a difference of opinion with respect to the meaning of this statute.  As discussed in the May 4 Opinion, Congress, the courts and learned commentators regularly use the term "limitations" to encompass both "statutes of limitations," in the sense intended by the defendants, and "statutes of repose."

2012 WL 1570856, at *4.  Indeed, in 2002 Congress modified the repose period applicable to claims under the Securities Exchange Act of 1934 in a provision entitled "Statute of limitations for securities fraud."  See Sarbanes-Oxley Act, Pub. L. No. 107-204, § 804, 116 Stat. 745, 801 (2002) (codified at 28 U.S.C. § 1658(b)) (emphasis added).

As the Supreme Court again reminded us only recently, when confronted with a textual ambiguity of this kind, the task of the Court is to give the statutory terms their ordinary meaning unless the context clearly suggests that an atypical usage is intended.  Taniguchi v. Kan Pacific Saipan, Ltd., 132 S. Ct. 1997, 2002, 2004 (2012).  In ordinary usage, the term "statute of limitations" refers generally to "a statute assigning a certain time after which rights cannot be enforced by legal action or offenses cannot be punished."  Merriam-Webster's Collegiate Dictionary 1220 (2003).  Nothing in HERA suggests that, in prescribing "the applicable statute of limitations with regard to any action brought by the [FHFA]," 12 U.S.C. § 4617(b)(12), Congress sought to depart from this ordinary meaning in favor of the more technical definition proffered by the defendants.  To the contrary, the statutory context indicates powerfully that the opposite is true.  As emphasized in the May 4 Opinion, "[r]eading HERA's reference to 'statute of

11

limitations' in the narrow fashion that defendants propose would undermine the congressional purpose of a statute whose overriding objective was to maximize the ability of FHFA to 'put the [GSEs] in a sound and solvent condition.'"  2012 WL 1570856, at *5 (quoting 12 U.S.C. § 4617(b)(2)(D)).

In seeking certification, defendants do not challenge this characterization of HERA's purpose.  Rather, to establish that there is a substantial ground for difference of opinion as to HERA's meaning, they rely on two brief district court decisions interpreting entirely different statues, albeit statutes whose text is nearly identical to that of HERA's extender provision.  See Nat'l Credit Union Admin. Board v. RBS Secs., Inc., No. CV 11-5887-GW (C.D. Cal. Jan 30, 2012); Resolution Trust Corp. v. Olson, 768 F. Supp. 283 (D. Ariz. 1991).  It goes without saying that these decisions, which concern the Federal Credit Union Act, 12 U.S.C. § 1787(b)(14)(B)(i), and the Financial Institutions Reform, Recovery, and Enforcement Act (FIRREA), 12 U.S.C. § 1821(d)(14), do not bear directly on the issue before the Court: the proper interpretation that is to be given to HERA, a different statute, enacted under different circumstances, and addressed to a different class of problems.  While the Credit Union Act and FIRREA, like HERA, indicate a Congressional intent to "preserve and conserve" the assets of

insolvent financial institutions, there are reasons to think that Congress was willing to go further to ensure the solvency of the two GSEs than to ensure the survival of any one of the thousands of banks and credit unions around the country.  See May 4 Opinion, 2012 WL 1570856, at *5 n.8 (noting that "HERA creates an exception" to the Securities Act's typical time limitations for "a single, privileged plaintiff -- FHFA"). Indeed, given that in 2008 the GSEs financed about 40% of all American mortgages and owed debt in excess of $5.3 trillion, their failure would have been catastrophic for the American economy in a way that, with few exceptions, the failure of a single bank or credit union would not be.  See Carol D. Leonnig, How HUD Mortgage Policy Fed the Crisis, Washington Post, June 10, 2008, at A01.

   Yet the two decisions cited by the defendants do not reach these issues of statutory purpose.  Rather, with little explanation, they conclude that the terms "statute of limitations" and "statute of repose" are mutually exclusive, and unambiguously so.  For reasons that have been outlined at length here and in the May 4 Opinion, the Court finds this position untenable in light of the commonly understood meaning of "statute of limitations" and the frequent practice by Congress, federal courts and commentators of using the term to encompass

13

all forms of time limitation. Nonetheless, it must be acknowledged that the existence of these two decisions suggests that there may be grounds, however weak, for a difference of opinion on this question.

In light of the compelling arguments for certification on the other two prongs of the Section 1292(b) analysis, the tension between the May 4 Opinion and the two decisions cited by the defendants is sufficient to justify certification. But because the Court's decision to certify is driven primarily by the prospect that an immediate appeal may expedite the conclusion of this litigation -- whether through judicial resolution or settlement -- the certification is contingent on the defendants' seeking expedited review in the Court of Appeals, a condition to which they agreed at the June 13 conference.

## CONCLUSION

Defendants' May 23 motion for certification of an interlocutory appeal of the May 4 Opinion is granted.

SO ORDERED:

Dated:   New York, New York
         June 19, 2012

                                    _____
                                         DENISE COTE
                                    United States District Judge