UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X
                                          :
FEDERAL HOUSING FINANCE AGENCY, etc.,     :
                          Plaintiff,      :
             -v-                          :   11 Civ. 5201 (DLC)
                                          :
UBS AMERICAS, INC., et al.,               :   OPINION and ORDER
                          Defendants.     :
                                          :
------------------------------------------X


APPEARANCES:

For the plaintiff:
Philippe Z. Selendy
Kathleen M. Sullivan
Adam M. Abensohn
Manisha M. Sheth
Jordan A. Goldstein
Quinn Emanuel Urquhart & Sullivan, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010-1601

For defendants:
Jay B. Kasner
Scott D. Musoff
Robert A. Fumerton
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, New York 10036


DENISE COTE, District Judge:

     This Opinion addresses an issue that was left open by the

Court's decision of May 4, 2012, granting in part defendants'

January 20 motion to dismiss the Second Amended Complaint.  See

Federal Housing Finance Agency v. UBS Americas, Inc., ___ F.

Supp. 2d ___, No. 11 Civ. 5201 (DLC), 2012 WL 1570856 (S.D.N.Y.

May 4, 2012) (the "May 4 Opinion").  Familiarity with the May 4
Opinion and the facts underlying this litigation is assumed.
The parties' briefs regarding the motion to dismiss contained
cursory footnotes debating the issue of whether, for seven of
the issuances upon which plaintiff's claims rely, the Securities
Act's three-year timeliness bar had passed on September 6, 2008,
when the Government Sponsored Entities ("GSEs"), whose rights
plaintiff asserts, were placed into conservatorship.  An Order
of May 4 directed the parties to submit supplemental briefing
addressed to that issue.  The briefs were fully submitted on May
23.  This Opinion rejects the defendants' contention that the
Securities Act claims on the seven securities are time-barred.


                              DISCUSSION
     The Housing and Economic Recovery Act of 2008 ("HERA")
prescribes a three-year statute of limitations, running from the
date of the GSEs' conservatorship, for "any action" that the
FHFA might bring on their behalf.  12 U.S.C. § 4617(b)(12).  As
recognized in the May 4 Opinion, HERA's timeliness provision
supplants the limitations periods that generally govern claims
under the Securities Act.  See 2012 WL 1570856, at *2-*5.  The
parties agree however that, subject to certain exceptions not
relevant here, HERA does not revive claims that were time-barred
prior to the conservatorship.  Under Section 13 of the

                                 2

Securities Act, the right to enforce a liability created under Section 11 generally expires "three years after the security was <u>bona fide offered to the public</u>."  15 U.S.C. 77m (emphasis added).

Thus, the question is whether the seven certificates at issue[1] were "<u>bona fide</u> offered to the public" more than three years before September 6, 2008, when FHFA became conservator of the GSEs.  For present purposes, it is undisputed that if the offering date is the date that the certificates themselves became available for purchase, FHFA's claims are timely.

Defendants point out that each of the seven certificates was marketed pursuant one of three shelf registration statements, all of which became effective before August 31, 2005.  Defendants maintain that the effective dates of these registration statements, not the dates the certificates were actually marketed for sale, establish the beginning of Section 13's three-year repose period.  Thus they conclude that the GSEs' claims regarding these certificates expired prior

---

[1] The certificates in question pertain to the following securitizations: Argent Securities Inc. Trust, Series 2006-W3 ("ARSI 2006-W3"); MASTR Asset Backed Securities Trust, Series 2005-WF1 ("MABS 2005-WF1"); MASTR Asset Backed Securities Trust, Series 2005-FRE1 ("MABS 2005-FRE1"); MASTR Asset Backed Securities Trust, Series 2005-HE2 ("MABS 2005-HE2"); MASTR Adjustable Rate Mortgages Trust, Series 2005-8 ("MARM 2005-8"); Home Equity Mortgage Loan Asset-Backed Trust, Series INABS 2005-C ("INABS 2005-C"); Home Equity Mortgage Loan Asset-Backed Trust, Series INABS 2005-D ("INABS 2005-D").

September 6, 2008, making them ineligible for the extension provided by HERA and therefore untimely.  For the reasons set forth below, the Court concludes that FHFA's claims with regard to these offerings are timely.

I.  Securities Act Shelf Registration

Shelf registration is a process by which securities can be registered to be offered or sold on a delayed or continuous basis.  The purpose of shelf registration is to afford the issuer the "procedural flexibility" to vary "the structure and terms of securities on short notice" and "time its offering to avail itself of the most advantageous market conditions."  Shelf Registration, SEC Release No. 6499, 1983 WL 408321, at *4 (Nov. 17, 1983) ("SEC Reg. 6499"); see In re WorldCom, Inc. Sec. Litig., 345 F. Supp. 2d 628, 667 (S.D.N.Y. 2004).

As a general matter, the registration statement for a new securities offering must include a copy of the prospectus that will be used to market the securities for sale to the public. 17 C.F.R. § 230.404.  In order to satisfy Section 10(a) of the Securities Act, 15 U.S.C. § 77j(a), the prospectus must make detailed disclosures about the securities at issue and, in the case of asset-backed securities, the underlying asset pools. See Regulation S-K, 17 C.F.R. § 229.10 et seq.; Regulation AB, 17 C.F.R. § 229.1100 et seq.; see also In re WorldCom, Inc. Sec. Litig., 345 F. Supp. 2d at 658.

The shelf registration process allows certain would-be issuers to file a generic registration statement with the SEC that omits the type of detailed information that must generally be disclosed to purchasers.  17 C.F.R. §§ 230.409, 230.415, 230.430A.  A qualified registrant commits that, at the time of any offering, it will have made the omitted disclosures in some form or another, including by filing a post-effective amendment to the registration statement, filing a prospectus supplement with the SEC, or filing an annual report pursuant to Section 13(a) or Section 15(d) of the Exchange Act.  See 17 C.F.R. § 229.512.  Once this "shelf registration statement" becomes effective, the issuer can take the registration statement "off the shelf," make the required supplemental disclosures, and use the shelf registration statement to issue securities whenever it chooses, without the need for further SEC action.  Thus, as in this case, a single shelf registration statement may be used for a series of offerings.  SEC Rel. 6499, 1983 WL 408321, at *4.

II.  When is a security issued pursuant to a shelf registration bona fide offered to the public?

As defendants note, the general rule is that the Securities Act's three-year repose period "is triggered by the effective date of the (allegedly false) registration statement."  P. Stolz Family P'ship L.P. v. Daum, 355 F.3d 92, 104 (2d Cir. 2004).  This rule presumes, however, that the registration statement

includes the information upon which the Section 11 claim is
predicated -- the alleged falsehood -- and thus that the
putative defendant's exposure begins with the effective date of
the registration statement.[2]  For some shelf offerings, this
presumption may be valid.  But, where a shelf registration
statement omits required disclosures that are fundamental to
assessing the value of any offering, it would be illogical to
conclude that a security marketed pursuant to that registration
statement is "<u>bona</u> <u>fide</u> offered to the public" before the
relevant information is disclosed.

As one would expect, SEC regulations confirm the view that
securities issued pursuant to a shelf registration statement
that omits critical disclosures are not <u>bona</u> <u>fide</u> offered to the
public until the omitted information is disclosed.  One of the
chief purposes of shelf registration was to allow companies to
issue stock based on their Exchange Act reports, and thereby
take advantage of the "steady stream of high quality corporate
information continually furnished to the market and broadly
digested, synthesized and disseminated," while avoiding the
delay that would be entailed by SEC review if the same

---

[2] As defendants observe, the purpose of a statute of repose is to
limit the defendant's exposure to a defined period.  Thus, "a
statute of repose begins to run without interruption once the
necessary triggering event has occurred, even if equitable
considerations would warrant tolling or even if the plaintiff
has not yet, or could not yet have, discovered that she has a
cause of action." <u>Stoltz</u>, 355 F. 3d at 102-03.

information were submitted in a long-form registration statement.  In re WorldCom, Inc. Sec. Litig., 346 F. Supp. 2d at 667.

Accordingly, before securities may be bona fide offered for sale, registrants must make additional filings.  Item 512 requires that a shelf registrant undertake

> [t]o file, during any period in which offers or sales are being made, a post-effective amendment to this registration statement . . . [t]o reflect in the prospectus any facts or events arising after the effective date of the registration statement . . . which, individually or in the aggregate, represent a fundamental change in the information set forth in the registration statement.

17 C.F.R. § 229.512(a)(1)(ii) (emphasis added).  Such updating is deemed to be a new bona fide offering for the purposes of assessing liability under the Securities Act.  Id. § 229.512(a)(2).  Indeed, the Second Circuit has opined that the requirement of post-registration disclosure would be "meaningless" absent provisions like Section 229.512(a)(2), "since purchasers who acquired securities in a shelf offering more than three years after the initial registration would find their § 11 claims barred by the time limits of § 13, even if they bought the securities in reliance on a fraudulent, post-effective amendment to the registration." Finkel v. Stratton Corp., 962 F.2d 169, 174 (2d Cir. 1992).

A recent SEC Rule acknowledges that, at the time of a shelf offering, critical disclosures may be made not only through a post-effective amendment but also through the filing of a prospectus supplement.  But again, the filing creates a new effective date and the offering of the securities becomes an "initial <u>bona</u> <u>fide</u> offering."  On December 1, 2005, following seven years of notice and comment, the SEC formally promulgated Rule 430B.  Among other things, the rule clarified that, upon offering securities to the market pursuant to a shelf registration statement, an issuer may satisfy its mandatory disclosure obligations by making them in a prospectus supplement filed with the SEC.  <u>See</u> 17 C.F.R. § 230.430B(d)(2).  As explained in the SEC Release that accompanied its publication, the Rule was intended in part to "provide primary shelf eligible issuers and well-known seasoned issuers with automatic shelf registration statements the ability to add to a prospectus, by means other than a post-effective amendment to the registration statement, more additional or omitted information" than had previously been allowed.  Securities Offering Reform, SEC Release No. 33-8591, 2005 WL 1692642, *82 (July 19, 2005) ("SEC Rel. 33-8591").

Recognizing that Rule 430B permits issuers to make disclosures by prospectus supplement that previously would have

required a post-effective amendment to the registration
statement, the SEC has declared that

> the date on which a form of prospectus is deemed to be
> part of and included in the registration statement
> pursuant to paragraph (f)(1) of [Rule 430B] shall be
> deemed, for purposes of liability under section 11 of
> the Act of the issuer and any underwriter at the time
> only, to be a new effective date of the part of such
> registration statement relating to the securities to
> which such form of prospectus relates . . . . The
> offering of such securities at that time shall be
> deemed to be the initial <u>bona</u> <u>fide</u> offering thereof.

17 CFR § 230.430B(f)(2). This provision thus seeks to reconcile
the Section 11 consequences of disclosure by prospectus
supplement with those of disclosure by means of a post-effective
amendment. The fact that the defendants used prospectus
supplements to accomplish all of their post-effective date
disclosures suggests that, in making the offerings at issue
here, they sought to avail themselves of the liberalized
disclosure framework afforded by Rule 430B.

Both parties question whether the Rule's broadened
interpretation of what constitutes an initial <u>bona</u> <u>fide</u> offering
is applicable to securities issued pursuant to registration
statements that, like these, were filed before December 1, 2005.
Ultimately, it is not necessary to resolve this issue. A filing
that represents "a fundamental change in the information set
forth in the registration statement" has always been deemed to
restart the clock on Section 11 claims, 17 C.F.R.

§ 229.512(a)(1)(ii), and the fact that such a change may now be made through a prospectus supplement as opposed to a post-effective amendment does not alter that rule.  The SEC release that accompanied Rule 430B makes this clear, emphasizing that for non-issuers such as "directors, signing officers, and experts," the new Rule did not intend "the filing of a form of prospectus . . . [to] result in a later Section 11 liability date" than that which previously applied, while emphasizing that for such parties, "the filing of a form of prospectus . . . reflecting fundamental changes in the information in the registration statement" would continue to trigger a new offering date.  See SEC Rel. 33-8591, 2005 WL 1692642, *86; accord In re Countrywide Fin. Corp. Sec. Litig., No. CV-07-052950-MRP, 2009 WL 943271, at *6 (C.D. Cal. 2009) (noting that, under pre-Rule 430B law, a new offering date was triggered by a filing that represented a "fundamental change" in the registration statement).

That standard is plainly met here.  For example, although Registration Statement 333-124678 is 294 pages long, 285 of those pages are devoted to setting forth the format for prospectus supplements to be filed at the time securities are actually marketed.  The Registration Statement emphasizes that these templates are meant only to be "illustrative of the type of disclosure that might be presented for a series of

Certificates or Notes."  And, indeed, the templates omit almost every material description of the collateral that will underlie the offerings, including the representations regarding loan-to-value ratio, owner-occupancy rate and the identities of loan originators upon which FHFA's Section 11 claims are predicated. The remaining nine pages of the Registration Statement likewise contain little, if any, information that would be material to assessing the investment-worthiness of the specific securitizations that might be issued off of it.  The other two Registration Statements are similarly general.

The information that was material to investors in deciding whether to purchase the securities at issue was only provided at the time that each securitization was marketed to the public -- in the form of lengthy prospectus supplements that purported to convey in detail the soundness of the underlying assets.  Thus, for example, the MABS 2005-WF1 securitization was marketed with a prospectus of nearly 400 pages setting forth in detail the information that was left blank in the Shelf Registration Statement, including such crucial information as loan-to-value ratios and owner occupancy rates.  The substitution of the blank spaces in these Shelf Registration Statements with actual data that a would-be investor could analyze constituted a "fundamental change" in their content, and thus triggered a new

Securities Act liability period, running from the date each prospectus supplement was filed.

CONCLUSION

The portion of the January 20 Motion seeking to dismiss plaintiff's claims with regard to the seven issuances identified in note 1, supra, is denied.


SO ORDERED:

Dated:     New York, New York
           June 26, 2012



                                    _____
                                            DENISE COTE
                                    United States District Judge