C7JPUBSC                    TELEPHONE CONFERENCE

1   UNITED STATES DISTRICT COURT

2   SOUTHERN DISTRICT OF NEW YORK
    ------------------------------x
3                               11 CV 05201 (DLC)
    FEDERAL HOUSING
4   FINANCING AGENCY            11 CV 06188 (DLC)
                                11 CV 06189 (DLC)
5                               11 CV 06190 (DLC)
             v.                 11 CV 06192 (DLC)
6                               11 CV 06193 (DLC)
    UBS AMERICAS INC.           11 CV 06195 (DLC)
7   and others and its          11 CV 06196 (DLC)
    related cases              11 CV 06198 (DLC)
8                               11 CV 06200 (DLC)
                                11 CV 06201 (DLC)
9                               11 CV 06202 (DLC)
                                11 CV 06203 (DLC)
10                              11 CV 06739 (DLC)
                                11 CV 06805 (DLC)
11                              11 CV 07010 (DLC)
                                11 CV 07048 (DLC)
12  ------------------------------x
                                        July 19, 2012
13                                      4:12 p.m.
    Before:
14                       HON. DENISE COTE,

15                                       District Judge

16                        APPEARANCES

17  QUINN EMANUEL URQUHART & SULLIVAN, LLP
         Attorneys for Plaintiff Federal Housing Finance Agency
18  CHRISTINE CHUNG, ESQ.
    RICHARD SCHIRTZER, ESQ.
19  DAVID B. SCHWARTZ, ESQ.

20  KASOWITZ, BENSON, TORRES & FRIEDMAN, LLP
         Attorneys for Plaintiff Federal Housing Finance Agency
21  KANCHANA LEUNG, ESQ.

22

23

24

25

C7JPUBSC                        TELEPHONE CONFERENCE

1                         APPEARANCES (Cont'd)

2     SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
           Attorneys for Defendant UBS AMERICAS INC. and affiliated
3     entities and individuals (11 CV 5201) SG Americas, Inc. and
      affiliated entities and individuals (11 CV 6203)
4     JOSEPH SACCA, ESQ.
      SCOTT MUSOFF, ESQ.
5     ROBERT FUMERTON, ESQ.

6     SULLIVAN & CROMWELL LLP
           Attorneys for Defendants JP Morgan Chase & Co. and
7     affiliated entities
      PENNY SHANE, ESQ.
8     SHARON NELLES, ESQ.
      JONATHAN SEDLACK, ESQ.

9
      SULLIVAN & CROMWELL LLP
10         Attorneys for Defendants Goldman Sachs & Co. and
      affiliated entities and individuals
11    RICHARD KLAPPER, ESQ.
      THEODORE EDELMAN, ESQ.

12
      SULLIVAN & CROMWELL LLP
13         Attorneys for Defendants Barclays Bank PLC and affiliated
      entities and individuals
14    JEFFREY SCOTT, ESQ.

15    SULLIVAN & CROMWELL LLP
           Attorneys for Defendants First Horizon National
16    Corporation and affiliated entities and individuals; Nomura
      Holding America, Inc. and affiliated entities and individuals
17    BRUCE CLARK, ESQ.
      AMANDA DAVIDOFF, ESQ.

18

19    PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
           Attorneys for Defendant Citigroup Global Markets, Inc.
20    (11 CV 6188) CitiGroup, Inc. and affiliated entities and
      individuals (11 CV 6196)
21    BRUCE BIRENBOIM, ESQ.
      CAITLIN GRUSAUSKAS, ESQ.

22
      CRAVATH, SWAINE & MOORE LLP
23         Attorneys for Defendant Credit Suisse Securities (USA) LLC
      and affiliated entities and individuals
24    RICHARD CLARY, ESQ.

25

C7JPUBSC                       TELEPHONE CONFERENCE

1                          APPEARANCES (Cont'd)

2    SIMPSON THACHER & BARTLETT LLP
     Attorneys for Defendant RBS Securities Inc. (11 CV 6188)
3    Deutsche Bank AG and affiliated entities (11 CV 6192)
     THOMAS RICE, ESQ.
4    DAVID WOLL, ESQ.

5    MAYER BROWN, LLP
          Attorneys for Defendants HSBC North America Holdings and
6    affiliated entities and individuals (11 CV 6189)
     JOHN CONLON, ESQ.
7              and
     BOIES SCHILLER & FLEXNER LLP
8    TED NORMAND, ESQ.

9    MAYER BROWN LLP
          Attorneys for Defendants Ally Financial Inc. and GMAC
10   Mortgage Group Inc.
     CATHERINE BERNARD, ESQ.
11   REGINALD GOEKE, ESQ.

12   KIRKLAND & ELLIS LLP
          Attorneys for Defendant Ally Securities LLC
13   PATRICK M. BRYAN, ESQ.

14   WILLIAMS & CONNOLLY, LLP
          Attorneys for Defendant Bank of America Corporation and
15   affiliated entities and individuals (11 CV 6195); Merrill Lynch
     and affiliated entities and individuals (11 CV 6202)
16   EDWARD BENNETT, ESQ.
     BETH A. STEWART, ESQ.
17
     DAVIS POLK & WARDWELL LLP
18        Attorneys for Defendant Morgan Stanley and affiliated
     entities and individuals (11 CV 6739)
19   BRIAN WEINSTEIN, ESQ.
     JAMES ROUHANDEH, ESQ.
20   DANIEL SCHWARTZ, ESQ.

21   WEIL, GOTSHAL & MANGES LLP
          Attorneys for defendant General Electric Company and
22   affiliated entities
     GREGG DANILOW, ESQ.
23   SETH GOODCHILD, ESQ.

24

25

C7JPUBSC                          TELEPHONE CONFERENCE

1                              APPEARANCES (Cont'd)

2    RICHARDS KIBBE & ORBE, LLP
          Attorneys for Individual Defendants George C. Carp, Robert
3    Caruso, George E. Ellison, Daniel B. Goodwin, Juliana Johnson,
     Michael J. Kula, William L. Maxwell, Mark I. Ryan, Antoine
4    Schetritt, Adam Glassner, Matthew Whalen, Donald Puglisi & Paul
     Park
5    NEIL BINDER, ESQ.

6

7    ALLEN & OVERY, LLP
          Attorneys for Individual Defendant Samuel L. Molinaro, Jr.
     PAMELA CHEPIGA, ESQ.
8    JOSEPHINE A. CHEATHAM, ESQ.

9    KRAMER LEVIN NAFTALIS & FRANKEL, LLP
          Attorneys for Defendant Jeffrey L. Verschleiser
10   DANI R. JAMES, ESQ.

11                                  o0o

12

13

14

15

16

17

18

19

20

21

22

23

24

25

C7JPUBSC                          TELEPHONE CONFERENCE

1          THE COURT:  Good afternoon, counsel.  I have you on

2     the speaker phone because my law clerk and a court reporter are

3     with me.  I'll briefly take appearances.  For the FHFA?

4          MS. CHUNG:  Christine Chung, and I have with me today

5     Richard Schirtzer.  My partner is in Los Angeles, his name is

6     David Schwartz.

7          MS. LEUNG:  Kanchana Leung from Kasowitz, Benson,

8     Torres and Friedman.

9          THE COURT:  For UBS?

10          MR. FUMERTON:  Good afternoon, your Honor.  Rob

11     Fumerton from Skadden, Arps.  I'm joined by my colleagues Joe

12     Sacca and Scott Musoff.  Your Honor, Jay Kasner is unavailable

13     to participate today.

14          THE COURT:  For JP Morgan?

15          MS. SHANE:  Your Honor, Penny Shane, Sharon Nelles and

16     Jonathan Sedlak from Sullivan and Cromwell.

17          THE COURT:  From Goldman Sachs?

18          MR. KLAPPER:  Richard Klapper and Theodore Edelman

19     from Sullivan and Cromwell.

20          THE COURT:  For Barclays?

21          MR. SCOTT:  Jeff Scott with Sullivan and Cromwell.

22          THE COURT:  For First Horizon and Nomura.

23          MR. CLARK:  Bruce Clark and Amanda Davidoff, Sullivan

24     and Cromwell.

25          THE COURT:  For Citigroup?

C7JPUBSC                        TELEPHONE CONFERENCE

1          MR. BIRENBOIM:  Bruce Birenboim and Caitlin Grusauskas

2     for Citigroup.

3          THE COURT:  For Credit Suisse?

4          MR. CLARY:  Richard Clary from Cravath, Swaine and

5     Moore.

6          THE COURT:  For RBS?

7          MR. RICE:  Afternoon, your Honor.  Tom Rice and David

8     Woll from Simpson, Thacher and Bartlett.

9          THE COURT:  For HSBC?

10          MR. CONLON:  John Conlon from Mayer Brown.

11          MR. NORMAND:  Ted Normand from Boies, Schiller and

12     Flexner.

13          THE COURT:  For Ally?

14          MR. GOEKE:  Reginald Goeke and Catherine Bernard from

15     Mayer Brown for Ally.

16          THE COURT:  For Ally Securities?

17          MR. BRYAN:  Patrick Bryan, Kirkland and Ellis for Ally

18     Securities.

19          THE COURT:  Bank of America and Merrill Lynch?

20          MR. BENNETT:  Good afternoon, your Honor.  Ted Bennett

21     and Beth Stewart from Williams and Connolly.

22          THE COURT:  For Morgan Stanley?

23          MR. ROUHANDEH:  Jim Rouhandeh, Brian Weinstein and

24     Daniel Schwartz from Davis, Polk.

25          THE COURT:  For GE?

1        MR. DANILOW:  Greg Danilow and Seth Goodchild from

2   Weil, Gotshal.

3        THE COURT:  For the various individual defendants,

4   including George Carp?

5        MR. BINDER:  Neil Binder, Richards, Kibbe and Orbe.

6        THE COURT:  For Mr. Molinaro?

7        MS. CHEPIGA:  Pamela Chepiga and Josephine Cheatham,

8   Allen and Overy.

9        THE COURT:  For Mr. Verschleiser?

10       MS. JAMES:  Dani James from Kramer, Levin.

11       THE COURT:  Thank you, counsel, for making yourselves

12   available on such short notice to address two brief issues.

13   I'm going to ask counsel please to identify themselves by name

14   before they speak so that the record is clear.  I'm also going

15   to ask counsel to be careful not to interrupt each other.  It's

16   very difficult to conduct a telephone conference if two people

17   are speaking.

18       I'll make sure to ask everyone at the end whether they

19   have anything that they need to add; so everyone will be given

20   an opportunity to be heard.

21       We're having this conference call because I've

22   received three letters.  Let me identify those for the record.

23   I have a letter of July 17th from Skadden, Arps and a

24   responsive letter of July 18th from Quinn Emanuel, and then I

25   have a letter of July 18th, and I -- written on behalf of all

C7JPUBSC                    TELEPHONE CONFERENCE

1    parties.  So let's address these two issues separately.

2            The first issue is the request of all defendants,

3    presented through Skadden, Arps' letter, for access to FHFA's

4    forensic review of individual loan files, which was referenced

5    in the complaints that the FHFA filed in this series of

6    litigations.  If I read Mr. Selendy's letter of July 18th

7    correctly, and this is why I needed to speak to counsel, I

8    understand -- and I'm referring here to the second full

9    paragraph on Page 2 -- that the FHFA intends to produce its

10   forensic review of individual loan files, that is, the specific

11   report or reports that were referenced in the complaints as

12   part of expert discovery.  Is that correct, Miss Chung?  Is

13   that correct, Miss Chung?

14           MS. CHUNG:  Yes, your Honor.  Christine Chung of

15   Quinn, Emanuel.

16           It's not quite correct.  We're offering to produce and

17   have told the defendants that we are willing to produce the

18   loan files themselves, and I think the area of dispute is to

19   the extent they're asking for reports or results that were

20   generated, that's what we consider the work product that they

21   should not be able to get because we're giving them the

22   underlying factual information that will enable them to perform

23   their own analysis and effect their own homework on the loan

24   files.

25           THE COURT:  No, I understood that argument, but

C7JPUBSC                    TELEPHONE CONFERENCE

1    there's a sentence here in the paragraph that begins "Finally,

2    has never been FHFA's claim," that paragraph.

3              MS. CHUNG:  Yes, your Honor.

4              THE COURT:  "Indeed, FHFA intends to produce the

5    former as part of expert discovery and the latter in document

6    discovery."  I understood --

7              MS. CHUNG:  Yes.

8              THE COURT:  -- the former to be the results of the

9    reviews referenced in the complaints.  Am I reading that wrong?

10             MS. CHUNG:  That's correct, your Honor.  If, as the

11   sentence continues, if we determine that we're going to rely on

12   those reviews at trial.  So as your Honor's aware, our proof on

13   the loan files at trial is really going to be the

14   re-underwriting of the samples that we're going to draw at each

15   of the cases.

16             It's not our current intention even to rely on the

17   reviews that were done pre-complaint as part of our trial

18   proof.  However, obviously, to the extent that we decide that

19   we're going to rely on these reviews at trial, we will produce

20   them and we've never said differently.

21             From our very first responses to the requests that

22   were made by the defendants, which said that they were making

23   privileged claims, but subject to those privileged claims, we

24   will produce responsive information.  But we will produce the

25   reports and the reviews.

C7JPUBSC                          TELEPHONE CONFERENCE

1          To answer your Honor's question directly, to the

2     extent that we're going to rely on them at trial or as the rest

3     of the sentence continues, there is some cases in which the

4     reports that were generated that we think are otherwise are our

5     mental impressions and work product, were produced to third

6     parties.  The same reviews were used as a basis for seeking

7     remedies from certain parties.  Obviously, as to those, we

8     don't have the claim that we can make, and we agree to produce

9     those.

10          THE COURT:  Well, I think the natural reading of the

11     paragraph and, of course, that really is beside the point, if I

12     misread the sentence.  The natural reading of that last

13     sentence in the paragraph we're looking at suggested to me the

14     dispute was really one about timing and not whether or not the

15     defendants would ever get to see the reviews that were

16     referenced in the complaints.

17          But I now understand you to be saying, Miss Chung,

18     that you are -- it is your current intention to never produce

19     to the defendants the reviews that are referenced in the

20     complaints unless you're going to rely on those reviews in

21     connection with expert testimony at trial or you shared them

22     with third parties; do I understand that correctly?

23          MS. CHUNG:  Yes, your Honor.

24          THE COURT:  Okay.  So I'll reflect on this further,

25     now that I understand there really is a dispute of substance.

C7JPUBSC                    TELEPHONE CONFERENCE

1              MR. FUMERTON:  Your Honor, may I be heard on this

2    issue?  This is Robert Fumerton from Skadden, Arps on behalf of

3    UBS.

4              THE COURT:  Yes.  After I finish speaking,

5    Mr. Fumerton, I'll let you be heard.

6              MR. FUMERTON:  Sure.  Thank you, your Honor.

7              THE COURT:  So the issue for me in the first instance

8    and how I think I'm going to approach this is really a

9    double-barreled one.  The issue is whether or not the work

10   product privilege has been waived by the use of those reviews

11   in the complaints, but, secondly, even if I find that it has,

12   it seems to me an additional issue could be when those reviews

13   need to be produced, and it seems to me they are in the nature

14   of the kind of document that one would expect to be produced as

15   part of expert discovery.

16             Now, I'll look at the law with respect to the waiver

17   issue and reflect on this, but I would like counsel to talk

18   about, even if I decide they are discoverable, why they

19   shouldn't be produced with respect to the first wave of expert

20   disclosures.

21             Now, I don't think I know what the parties have agreed

22   to informally with respect to the production of waves of expert

23   disclosures.  I know that in our last conference together, I

24   think it was the last one, we talked about how important it

25   would be to begin those disclosures sooner rather than later

C7JPUBSC                    TELEPHONE CONFERENCE

1    and not wait, for instance, until a lot of fact depositions had

2    been taken.  And I was hopeful that you'd begin to start making

3    certain expert disclosures late fall, early winter.

4              Mr. Fumerton, you wanted to be heard?

5              MR. FUMERTON:  Yes, your Honor.  You know, it's,

6    obviously, our position from our letter that we think it's

7    fundamentally unfair for plaintiff to expressly rely on the

8    results of these purported forensic reviews to survive motion

9    practice and then not even disclose those results for the

10   defendants to challenge.

11             But to address your issue on timing, this is work that

12   plaintiff has already done.  They've alleged in the complaint,

13   and while they claim they're going to give us the loan files

14   that comprise that review, which we haven't received yet, the

15   loan files themselves do not inform us at all of the basis for

16   plaintiff's allegations that the loans are defective, and

17   that's precisely what we need to defend against these claims

18   and to develop our defenses through discovery.

19             If you take the UBS action, as an example, plaintiff

20   claims to have conducted a review of 996 loans and claims that

21   78 percent did not comply with applicable underwriting

22   standards.  This is information that they've already -- they

23   can't allege that if they don't have that information in their

24   possession now, if they haven't already done that review.  But

25   from defendants' perspective, we do not know which of the 996

1    loans plaintiff claims were defective, and just as importantly,

2    we do not know the manner in which plaintiff claims they're

3    defective.

4          There are a myriad ways in which plaintiff could

5    allege the loan was not underwritten in accordance with

6    underwriting guidelines.  It could be missing documentation or

7    a FICO score that's too low, but we can't prepare our defenses

8    without knowing the basis for plaintiff's claims, and this is a

9    review that plaintiff predicated its action on.

10          To the extent in its letter from yesterday, plaintiff

11    indicated, well, we may not rely on that same review to

12    prosecute its claims.  If that's the case, you know, we need

13    the sample and the results of whatever review they're

14    purporting to rely on as soon as possible, as well.

15          As your Honor just indicated, and as your Honor

16    indicated during the June 13th conference, we should have

17    rolling expert disclosures.  We have repeatedly asked plaintiff

18    at meet and confers over the last several weeks, for a date

19    certain by which plaintiff will identify the specific loans by

20    loan ID, and any sample it intends to use, the loans within

21    that sample that it claims are defective and the manner in

22    which each such loan is purportedly defective.

23          If we have that information, if plaintiff agrees to

24    provide that information, defendants will respond on a

25    loan-by-loan basis, and then the parties can narrow the

C7JPUBSC                          TELEPHONE CONFERENCE

1    disputed loans at issue for the rest of discovery and for

2    expert discovery.  The loans at issue, meaning the loans that

3    plaintiff intends to rely on to prosecute its claims.

4            So in terms of timing with respect to the forensic

5    review that they've alleged, that's all been done, and we think

6    we're entitled to at least the results of those reviews or any

7    report.  And after we've received that, we can think about how

8    to potentially narrow the request.

9            I would point out for your Honor that the only cases

10   that plaintiff cites that address these issues in footnote one

11   of their submission, in both of those cases plaintiff had

12   already produced to defendants either the final report or the

13   results of the forensic review, i.e. the specific loans it was

14   claiming were in breach and the specific manners in which they

15   were breached.  That's the information we're asking for here in

16   the first instance, and we don't see any reason why it

17   shouldn't be produced right away.

18           THE COURT:  Well, Mr. Fumerton, I have a couple of

19   reactions to that.  Whatever review the plaintiffs did at the

20   time they were preparing their complaint would not limit their

21   ability to present an argument at trial.  So in a way, it's

22   sort of a wasted effort for you, even if you had access to this

23   review, to spend much time on it because the plaintiffs would

24   be entirely within their rights to do a completely new review

25   of different loan files with completely different numbers and

1    present that evidence at trial.

2            Let me ask you this question, Mr. Fumerton.  How long

3    have the plaintiffs had the loan files for the supporting loan

4    groups that are at issue in the UBS case?

5            MR. FUMERTON:  Your Honor, to address that question,

6    we don't know what loan files plaintiff has.  We've repeatedly

7    asked plaintiff for the loan files in the supporting loan

8    groups in the UBS action and they have not produced them to us

9    yet.  UBS does not maintain these loan files as a matter of

10   course; so we don't have them.  We've sought from third parties

11   the loan files, the -- sorry.  We sought from plaintiff on

12   May 22nd all of the loan files they have, and we served

13   third-party discovery requests for all the loan files from

14   third parties.

15           So if those plaintiffs and UBS are trying to get all

16   of the loan files from the supporting loan groups, we don't

17   have them in our possession.  We know that plaintiff does have

18   some because they've conducted this review, and we've asked

19   them for it, but we haven't received them to date.

20           If I could just, your Honor, address the point you

21   just made, which is, you know, if plaintiff is going to change

22   its methodology, you know, we don't need to see the results of

23   the review they allege in their complaint.  We actually think,

24   you know, we are entitled to see the result of that review

25   because to the extent the review they conducted or the results

1    of that review, which they've predicated their entire claims

2    on, as your Honor recognized in the motion to dismiss decision,

3    we think we're entitled to see what that methodology was, to

4    the extent it contradicts the methodologies plaintiff intends

5    to use down the line.

6            We think that's very fertile ground for

7    cross-examination and, again, we think we're entitled to that

8    information because plaintiff expressly relied on those very

9    reviews and the results of those very reviews to survive

10   motions to dismiss.

11           THE COURT:  Well, Mr. Fumerton, thank you for those

12   comments, but I think -- and, of course, Ms. Chung can give me

13   the perspective of the FHFA, but it seems to me in knowledge in

14   supervising civil litigation, that the defendants are entitled

15   to develop an evidentiary basis through discovery beyond that

16   on which they premise their pleadings.

17           And I'm happy to meet with counsel, if you're at

18   loggerheads, in working out a more detailed schedule for the

19   conduct of expert discovery.  But as we discussed at the last

20   conference, the position of the plaintiff, in response to the

21   defendants' position, was such that there was no agreement that

22   any subset of loan files from the supporting loan groups would

23   be the basis of the trial of the claims in this case.

24           As a result, despite the burden and expense it will

25   place on all parties, my conclusion from that conference is

C7JPUBSC                      TELEPHONE CONFERENCE

1    that you were all in agreement, you had to have access to a

2    hundred percent of the loan files from the supporting loan

3    groups and so unless and until the plaintiffs and defendants

4    have access to that complete universe, based on your current

5    positions with each other, that it is impossible to do any

6    sampling, at least from the defendants' position, meaningful

7    sampling to which you're willing to restrict yourself without

8    access to all of the loan files for the supporting loan groups.

9          It would be impossible to expect either defense

10   counsel's expert or plaintiff counsel's expert to come up with

11   the analysis on which they're going to rely at trial.  Now, if

12   your position is chain ming and you're happy to restrict the

13   trial in the UBS case to the loan files that the FHFA currently

14   has in its possession and require it then to produce an expert

15   report on, you know, a prompt basis, I think we're talking

16   about a different kind of schedule.

17         So let me say I'll think about these issues, but

18   preliminarily, I'm not going to require the FHFA to produce its

19   review that it used of loan files for draft complaints in this

20   litigation before it would produce the expert report on which

21   it's going to rely at trial for its analysis of, among other

22   things, a failure to comply with underwriting guidelines.  I'll

23   look carefully at my own research and, of course, anything the

24   parties have cited in their letters with respect to whether it

25   even needs to produce its review that it used for the

C7JPUBSC                    TELEPHONE CONFERENCE

1    complaints at that time.

2            Let's turn to the second issue -- Well, before we do

3    that --

4            MR. FUMERTON:  Your Honor, I can address two points

5    quickly, please?

6            THE COURT:  Is this Mr. Fumerton?

7            MR. FUMERTON:  It is.  I'm sorry.  Rob Fumerton from

8    Skadden, Arps.

9            With respect to the results of the forensic review

10   alleged in the complaint, we're aware of no authority that

11   would allow them, to the extent that they've waived that work

12   product privilege, and we think that it's clear that they have

13   by placing at issue in the complaint, we're of aware of no

14   authority to delay production of materials that they already

15   have.

16           We're not saying that the plaintiff isn't entitled to

17   develop its claims or to develop further methodologies

18   throughout discovery.  We're not taking that position at all.

19   We're saying to the extent that they already performed this

20   work and put it at issue in the complaint, we're entitled to it

21   now.

22           Second, with respect to sampling, the defendants'

23   position hasn't changed.  We do think it's inappropriate for

24   all the reasons we talked about at the last conference, in our

25   submission, to restrict the universe of loan files at this

C7JPUBSC                           TELEPHONE CONFERENCE

1    stage.  Plaintiff, however, has indicated to us that it intends

2    to prosecute its claims through the use of the sample.

3    Plaintiff's counsel even informed us, informed defendants, that

4    it would, quote, roll out these samples so the prioritization

5    of loan file production could include the loans in their

6    sample.

7            What we're saying here is, look, we, obviously, need

8    access or potentially need access to loan files outside of

9    plaintiff's sample to develop various defenses, including

10   causation and everything we've submitted last month.  But what

11   we are in favor of, which your Honor has expressed, you know, a

12   view of at the last conference is to set a schedule early for

13   plaintiff to identify the sample that it has already informed

14   us it is using, identify the loans in that sample that claims

15   are defective and the manner in which they're defective.

16           And then we can respond, but we can't respond until we

17   have that additional information because we don't know how

18   plaintiff attempts to prosecute these claims.  We don't know

19   what loans plaintiff intends to rely on, and we don't know the

20   breaches that plaintiff is going to affirm to prove.  Once we

21   have that information, we can respond.

22           THE COURT:  Okay.  And have you made a proposal,

23   Mr. Fumerton, with what you think is an appropriate schedule

24   here?

25           MR. FUMERTON:  We are -- We've asked plaintiff

C7JPUBSC                    TELEPHONE CONFERENCE

1    repeatedly at meet and confer if they would agree to a date

2    certain.  They said they would not, but we are absolutely

3    prepared to propose a specific date, specific deadlines for the

4    plaintiff to provide the samples and the manner in which such

5    loans are defective, and then respondents will respond at least

6    on behalf of UBS on a loan-by-loan basis.  So we're absolutely

7    prepared to present a schedule to the Court.

8         THE COURT:  So, Miss Chung, is there any reason why

9    these meet and confers can't meet and the parties agree on a

10   schedule and, if necessary, then meet with me the following

11   week?

12        MS. CHUNG:  Your Honor, no, but I think I would like a

13   chance to respond.  Your Honor rightly pointed out that there

14   are sort of two groups of loans at issue.  There's a group of

15   loans that were reviewed for the complaint.  There is a group

16   of loans that are going to be samples, at least, you know, we

17   do plan to propose a sample.

18        I can tell the Court in terms of what Mr. Fumerton is

19   proposing, we're going to identify next week to him the loans

20   that we are going to be looking at in both of those groups.  We

21   said in our letter to the Court that we're going to be sending

22   to all defendants a list of the loans, by loan number, that we

23   reviewed in getting the complaint.

24        To the extent that their concern is we don't have

25   notice right now of which loans you were looking at in that

1    group, they're going to have that.  They're going to have most

2    of that next week.  It might carry over until the week after

3    that, but we're going to be able to identify all those loans to

4    them in very short order.

5          In the second group of loans that Mr. Fumerton is

6    talking about, I want to be clear because your Honor is making

7    a proposal.  This has been the topic of many, many meet and

8    confers between the plaintiff and defendants.  In our view, it

9    has two separate sets.  We are willing to identify, and I said

10   this at the outset, the loans that we're going to be looking at

11   as samples and we're generating the sampling protocols, but

12   that has been limited by, among other things, our inability or

13   suffice -- let me put it in a positive way.

14         The parties have been working together to get us all

15   the information that we need to generate our sampling protocol.

16   I don't know what the defense is doing in terms of their

17   protocol, but we will generate ours now.  The UBS protocol, we

18   will identify standalones that we intend to rely on next week.

19         So we know that your Honor's aware that we proposed a

20   UBS protocol in our mission support for the last conference.

21   We did reserve the right to refine that based on other

22   information that came in from the loan case.  So we're revising

23   that analysis now, but sometime next week we'll be able to

24   identify, next week, in the UBS case, which loans will be --

25   let's put it this way, will be in our sample, and they will

C7JPUBSC                          TELEPHONE CONFERENCE

1    challenge that whatever way they want, but they will have

2    notice of which loans we intend to sample.

3            But the second stage of that analysis, and I think we

4    discussed this before your Honor at the last conference.  It's

5    a separate thing to say, well, we also want to know what you

6    think is wrong with the loans.  Our view is we should identify

7    the loans to them, and then both sides should go to work and

8    figure out what they think is right and wrong about the loans,

9    and then have expert discovery because that will take some time

10   and the experts have to go to work on that.

11           And in expert discovery, the parties will then

12   exchange expert reports about what they found as a result of

13   having re-underwritten the loan files to see if they were

14   indeed originated, the loans were originated in compliance with

15   the guidelines when they were originally originated.

16           What the defendants want, in our view, is sort of

17   preliminary discovery, expert discovery from the plaintiff, and

18   what we propose is, no.  We're totally going to identify the

19   loans to you, but then each side should go to work, sort of

20   contemporaneously, and then be ready to exchange expert reports

21   in short order.  Of course, we'll go first.  We will exchange

22   expert reports with them first.

23           What we oppose is the idea of moving that aspect of

24   expert discovery into basically document discovery.  That's the

25   proposal that has been discussed before, and we're willing to

1    meet and confer about it again.  But to the extent that

2    there's -- and I still hear it in Mr. Fumerton's proposal, they

3    want the analysis at the same time that they're asking for the

4    loan identifications, that's where we have had a disagreement

5    in the past, and I would guess that we're not going to agree on

6    that going forward.

7           THE COURT:  Well, Miss Chung, you will not receive an

8    agreement from defense counsel as to any sampling technique you

9    propose, based on what I heard at the last conference.

10          MS. CHUNG:  We understand that, your Honor.  And what

11   we're offering to do is tell them what our sample is.  We

12   absolutely understand that they have reserved their right to

13   challenge in any way but, you know, we also feel that -- we're

14   trying to offer what we think is more than fair, which is we'll

15   identify our samples to you.

16          The part that we don't feel that they're entitled to

17   is they request and demand our analysis of those loans in the

18   document discovery.

19          THE COURT:  Well, Miss Chung, I would like you to meet

20   and confer with Mr. Fumerton or defense counsel, more

21   generally, whoever is appropriate on these issues next week

22   with a proposal, a proposed schedule for how you would like

23   this information and these reports to be rolled out.  Your

24   proposal, with dates or with as much specificity as you can.

25          Mr. Fumerton, or other defense counsel, will meet and

C7JPUBSC                    TELEPHONE CONFERENCE

1  confer with you, or whoever on your team they should be talking

2  to, with counter proposals if they're unhappy, but I'd like the

3  meet and confer process to occur next week so we can have

4  something concrete to address.  And I'll be happy to see you

5  the following weak, if that is necessary.  Mr. Fumerton?

6          MR. FUMERTON:  Yes, thank you, your Honor.  That

7  sounds great to us, and we look forward to continuing to meet

8  and confer to try to get an agreed-upon schedule.

9          THE COURT:  Okay.

10          MS. CHUNG:  That's fine, your Honor.

11          THE COURT:  Before we move to the second issue,

12  Miss Chung, is there anything further you wish to say?

13          MS. CHUNG:  I just wanted to say, your Honor, we're

14  happy to meet and confer.  You actually said something that, in

15  my mind, is worth including in this meet and confer process.

16  We've also raised this with the defendants before, which is, if

17  there is going to be disagreement about the sampling procedure,

18  and we all anticipate there will be, certainly in our view the

19  orderly way to approach this would be people would -- we're

20  going to go first.  We're willing to do it.  We're going to

21  make our sample known.

22          If there's going to be a challenge to that, or there's

23  going to be competing samples or the defendants are still

24  saying we may just object to sampling altogether, we think that

25  should be part of what gets aired because our view would be if

1   that's going to be one disagreements we're going to have, we

2   should air that to the Court sooner rather than later.

3   Otherwise --

4            THE COURT:  Great.  Put that in your proposal.

5            MS. CHUNG:  Thank you, your Honor.

6            THE COURT:  Good.  Now, before we move on to the

7   second issue, Mr. Fumerton, is there anything else you wanted

8   to add?

9            MR. FUMERTON:  No.  Thank you, your Honor.

10           THE COURT:  Is there any other counsel on this

11   telephone call, before we move on to the second issue, who

12   wishes to be heard on this issue?  Not hearing anyone, and

13   thank you for your restraint, much appreciated, let's move to

14   the second issue.

15           And that is a request, a joint request by the FHFA and

16   defense counsel for the briefing of a protective order motion.

17   The motion would be made by the FHFA on July 25th and would

18   become fully submitted on August 3rd, and I would just -- I'm

19   happy to have a motion, if that's the most efficient way to

20   resolve an issue.  But it was unclear to me from the letter

21   what the issue is that would be the subject of the motion and,

22   therefore, whether a motion is the most efficient way to

23   address it and preserve the defendants' or protect all parties'

24   rights.  So, Ms. Chung, what's this --

25           MR. SCHIRTZER:  Actually, this is Richard Schirtzer,

C7JPUBSC                    TELEPHONE CONFERENCE

1    and I'm going to be addressing this issue.

2              THE COURT:  So, Mr. Schirtzer, what motion do you want

3    to bring?

4              MR. SCHIRTZER:  Well, candidly, I agree with your

5    Honor that it is probably premature to describe what motion

6    we're going to bring, and it's not clear to FHFA that

7    submitting a brief on Tuesday under a briefing schedule is the

8    most efficient way of doing this.

9              I essentially ceded to a request for a joint briefing

10   schedule based on a series of meet and confers with defense

11   counsel, where they indicated pretty clearly that despite the

12   meet and confers and despite considerable additional

13   information that we had promised to provide them on Monday,

14   that they were fairly confident that there was still going to

15   be unresolved issues, and they were very concerned about time

16   frame.  And so on that basis, without crystallization of the

17   exact issues in dispute, we submitted the proposal for a joint

18   briefing schedule.

19             I, however, remain sanguine, as I told the defendants

20   before, that when they see the additional information that we

21   have promised to provide and plan to provide on Monday, that

22   much of this dispute will be obviated and perhaps the motion

23   will be unnecessary.

24             THE COURT:  Okay.  Mr. Fumerton, I don't know if this

25   is your issue?

1          MR. FUMERTON:  It is, your Honor, and we're very

2     frustrated with the pace of discovery here.  Just to give your

3     Honor some context, in the June 7th Rule 26F report, both

4     parties agreed to early 30(b)(6) depositions aimed specifically

5     at the identity of custodians with relevant knowledge and

6     discoverable information.

7          As we indicated in our July 2nd letter to the Court,

8     the parties have exchanged additional lists of custodians and

9     search terms, and defendants believe the list of custodians the

10    plaintiff proposes search for ESI responsive to our document

11    request is plainly insufficient.  And based on the limited

12    information the defendants have in their possession, and this

13    is just information -- essentially it's communications between

14    defendants and the GSEs, we've identified a tremendous number

15    of GSE employees that had substantive communications concerning

16    issues that are directly relevant to the claims and defenses at

17    issue here that the plaintiff has omitted from its custodian

18    list.

19          So as we indicated in that letter, rather than having

20    to move to compel on the custodian list, based on just the

21    limited information in our possession and then potentially have

22    to move again after we receive more information, we noticed a

23    rule 30(b)(6) deposition.  We noticed it on June 28th pursuant

24    to the parties' agreement.

25          We noticed the deposition to seek information

C7JPUBSC                      TELEPHONE CONFERENCE

1    concerning the organizational structure of the GSEs, the

2    identities of groups and individuals that conducted things like

3    operational reviews, the mortgage originators, maintained

4    originator score cards, to see the lines of communications

5    between various divisions of these organizations; whether the

6    groups had access to shared libraries containing information

7    relevant to the securitization and the issues in this case; the

8    admitted document destruction of Freddie Mac, which just came

9    to light in the last couple of weeks.

10           All of these issues are all relevant to identifying

11   all appropriate custodians.  So we noticed that deposition on

12   June 28th and we noticed it for July 12th, and in the last

13   couple of weeks, you know, we've had some meet and confers on

14   those topics, but the plaintiff indicates that it objects to

15   producing a 30(b)(6) witness, which has little or no burden on

16   the vast majority of topics in our notice.  That's why we have

17   been pressing for a briefing schedule on the protective order.

18           It's, obviously, therefore for them to seek the

19   protective order, but we sought a briefing schedule as quickly

20   as possible so we can resolve this issue, take the 30(b)(6)

21   deposition and identify all of the relevant custodians.  We're

22   concerned that time is running out here.  It's, obviously, a

23   very compressed schedule, and we're moving as quickly as

24   possible.  And we don't think there's any better vehicle than a

25   30(b)(6) deposition, which is why we've noticed it.

1      Plaintiff, on the other hand, has refused to produce

2  any witness other than essentially a couple of IT people from

3  Freddie and Fannie to address basic document retention issues

4  or electronic systems. so that's why we did press plaintiff for

5  a briefing schedule, to get that locked in so we could move

6  forward here as expeditiously as possible.

7      MR. SCHIRTZER:  Your Honor, this is Mr. Schirtzer

8  again.  I have, not surprisingly, a very different perspective

9  on the process.  As Mr. Fumerton said, we have agreed to

10  produce designee on document preservation issues, which I

11  believe covers three or four of the 12 topics in the 30(b)(6)

12  notice.

13      With respect to custodial issues, what I've said to

14  defense is that rather than trying to find a designee to

15  essentially parrot information that we're going to be

16  gathering, let us provide you with written responses on many of

17  the custodial topics that you claim you need more information

18  on.

19      The real dispute, however, your Honor, it stems from

20  not this 30(b)(6) notice, frankly, but from the scope of

21  discovery the defendants seek of Freddie Mac and Fannie Mae,

22  which is probably best exemplified in their interrogatory No.

23  3.  With your indulgence, it asks that we identify all persons

24  employed by you or acting on your behalf who participated in,

25  were involved in, approved or were responsible in any way for

1    the GSE's relationships, including as purchasers of loans with

2    any mortgage originator disclosed in the prospectus supplements

3    for the securitizations.

4            Your Honor, that is essentially half of the employees

5    at Freddie Mac and Fannie Mae, and these list of custodians who

6    they claim are absolutely relevant are, by and large, people

7    who work on what are called single side of Freddie Mac and

8    Fannie Mae, involved in purchasing conforming loans and putting

9    them into Freddie Mac or Fannie Mae securitizations, none of

10   which are at issue in this case.

11           We have consistently said to defendants that we would

12   identify custodians who were involved in the securitizations

13   that are involved in this case, which are all under what we

14   call the private label security side.  We have a list of 64

15   agreed custodians who fall into that category, and we are

16   continuing to consider and add others.

17           Just so your Honor knows, based on that list and

18   agreed-upon search terms, we've already identified over 700,000

19   responsive documents.  And based on search terms that we've

20   negotiated and agreed to with defendants, the universe of

21   responsive documents is going to go up to a million and a half

22   documents.  So the question, really, that they seek to get at

23   with respect to these 30(b)(6) depositions is have we

24   appropriately identified relevant custodians, and we believe

25   that the written materials that we are to give them on Monday

1    will show that, in fact, we have.

2              THE COURT:  Well, I --

3              MR. SCHIRTZER:  There will always be, quite

4    apparently, a dispute between the plaintiff and the defendant

5    as to whether information that was used or possessed on the

6    single-family side of Freddie Mac or Fannie Mae that was not

7    provided or considered by the people purchasing these

8    securitizations is, nevertheless, relevant, and that will be a

9    dispute.

10             But I don't know that that dispute is best tee'd up in

11   the context of a 30(b)(6) notice, and so for that reason, I do

12   think it would behoove all the parties to wait and see what we

13   are providing in the way of substantive information about

14   custodians, about what those custodians roles were, and how

15   they fit into the organizational structure so that they can

16   understand that we have, in fact, identified everyone who is

17   germane to these securitizations.

18             THE COURT:  Thank you, counsel.  I expect that

19   everyone would have a lot to say about this issue, and I don't

20   want to deprive anyone of an opportunity to be heard, and I

21   expect, Mr. Fumerton, you, in particular, have things you'd

22   like to advise me about; so this is my proposal.

23             I'd like you to meet and confer and get back to my

24   chambers with a time that's convenient for an in-court

25   conference Monday through Wednesday, July 30th to August 1st.

C7JPUBSC                         TELEPHONE CONFERENCE

1    Hopefully, sometime that would be convenient to most of you one

2    of those three days.  That will give you next week to meet and

3    confer about any number of issues, scheduling of expert

4    discovery, access to additional custodians, anything else,

5    timing of 30(b)(6) witnesses, and we won't have briefing of a

6    protective order motion.

7             I'm happy to spend half a day looking at documents,

8    understanding the factual context for arguments you're making,

9    whatever would be helpful, and give you some rulings at that

10   conference for organizing this stage of the case.  Is that

11   agreeable, Mr. Fumerton?

12            MR. FUMERTON:  Yes, your Honor.

13            THE COURT:  Thank you.  Is that agreeable,

14   Mr. Schirtzer?

15            MR. SCHIRTZER:  Yes.  It is, your Honor.  And as it

16   turns out, I'm going to be in New York that week anyway; so I

17   appreciate that offer.

18            THE COURT:  Okay.  And is there any other attorney on

19   this phone call who wishes to be heard with respect to this

20   second issue?

21            MS. SHANE:  Yes, briefly.  This is Penny Shane from

22   Sullivan, Cromwell.

23            We agree that that proposed approach is a good one,

24   but would ask that we have, as well, a date by which the

25   parties may provide your Honor with written material of

1    whatever sort your Honor may feel is likely to be helpful so

2    the parties can make a judgment about what might be helpful.

3         It is an important factual context between the

4    parties.  Mr. Schirtzer and the rest of us will be exploring

5    those facts with great interest and hope to be as comfortable

6    as Mr. Schirtzer is at some point with the facts and the

7    completeness of the facts as what he thinks we will be when we

8    see it.

9         Just in case, we would hope to have the opportunity to

10   provide your Honor with what seem to be the important factual

11   materials.  Just by way of example, some of the structural or

12   organizational provisions that Mr. Schirtzer says we will have

13   demonstrated to us this coming week are directly contradicted

14   by both Freddie and Fannie's public files.  That's the way I

15   survey it, period.  So we would hope to have the opportunity

16   and have your Honor have the benefit of that, as well as

17   counsels' thoughts at that time.

18        THE COURT:  Well, I'm happy to take written

19   submissions, and certainly anything that the parties plan to

20   show me at the conference, they should share with each other in

21   advance of the conference.  I would like any written

22   submissions at least one full business day before the

23   conference.

24        You can decide on what schedule that suggests to you.

25   I'm happy to have them earlier if you have agreement, but

1   again, any letter is no longer than two pages.  You can have

2   attachments you want me to look at, but I'm primarily going to

3   concentrate on giving you an opportunity to be heard at the

4   conference.  And, again, if you're planning to hand out

5   anything at the conference, share it with your adversary well

6   in advance of the conference so they have a chance to look at

7   it and talk about it with you.

8          Anyone else who wishes to be heard?  Thank you so

9   much.

10         MR. BENNETT:  Your Honor, Ted Bennett from Williams

11  and Connolly for Merrill Lynch 5202.

12         I guess I go a step farther.  I think, given the

13  gravity of these issues to the entire case and the defendants'

14  ability to put on their defense and, for that matter, for FHFA

15  to prove the elements in it claims which are its burden, we'd

16  suggest that the Court entertain full briefing on these issues.

17         We'd be happy to do it on as abbreviated a schedule as

18  is reasonable, but we think this would be better served by full

19  briefing than by a hearing, at which surprise might be more

20  norm than well-written arguments by counsel.

21         THE COURT:  Thank you.  Your application is denied.

22         Anyone else need to be heard?  Thank you so much

23  counsel for participating in today's conference.

24         (Adjourned)

25