UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FEDERAL HOUSING FINANCE AGENCY, AS CONSERVATOR FOR THE FEDERAL NATIONAL MORTGAGE ASSOCIATION AND THE FEDERAL HOME LOAN MORTGAGE CORPORATION,<br><br>               Plaintiff,<br><br>               -against-<br><br>UBS AMERICAS INC., UBS REAL ESTATE SECURITIES INC., UBS SECURITIES, LLC, MORTGAGE ASSET SECURITIZATION TRANSACTIONS, INC., DAVID MARTIN, PER DYRVIK, HUGH CORCORAN, and PETER SLAGOWITZ,<br><br>               Defendants. | 11 CIV. 5201 (DLC) |

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN SUPPORT OF THE EXPERT REPORT OF CHARLES D. COWAN, PH.D. REGARDING SAMPLING METHODOLOGY**

QUINN EMANUEL URQUHART &
   SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000

*Attorneys for Plaintiff Federal Housing Finance Agency, as Conservator for Fannie Mae and Freddie Mac*

Plaintiff Federal Housing and Finance Agency ("FHFA"), as Conservator for the Federal National Mortgage Association ("Fannie Mae") and the Federal Home Loan Mortgage Corporation ("Freddie Mac") (together, the "GSEs"), respectfully submits this reply memorandum in support of the Expert Report of Charles D. Cowan, Ph.D. (the "Cowan Report") regarding the sampling methodology proposed to be employed in the above-captioned action.

## INTRODUCTION

In disregard of the clear direction from this Court, the UBS Defendants (collectively, "UBS") have failed *either* to accept *or* to move to exclude any of the opinions disclosed in the Cowan Report.[1] UBS does assert a series of irrelevant complaints that manage to betray a basic misapplication of the relevant statistics – for example, by conflating the question of *sample design* with the question of what formula to use for *extrapolating* from each sample to each population of loans. But UBS nowhere in its Memorandum raises any *Daubert* challenge, instead arrogating to itself a purported right to assert such objections on its own schedule, rather than that set by the Court. Because UBS was directed to file any challenge to the Cowan Report by September 7, 2012, yet elected not to, FHFA here seeks an order that UBS has waived any challenge to the methodology set forth in the Cowan Report and that Dr. Cowan's sample methodology and related testimony are admissible under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993).

---

[1] "At this time, the UBS Defendants will *not* seek to bar at trial testimony based upon the opinions in the Cowan report…." UBS Memorandum ("Mem.") 1-2 (emphasis added). The Court will recall that UBS previously attempted a similar maneuver of *neither* endorsing Plaintiffs' proposed sampling method *nor* offering one of its own. *See, e.g.*, Defs.' Resp. Pl.'s Proposed Sampling Protocol (Mar. 14, 2012).

**I.      This Court Already Rejected UBS's Position That *Daubert* Challenges to Plaintiff's Sampling Protocol Are Premature**

At the July 31, 2012 status conference, this Court rejected UBS's argument that an evaluation of Plaintiff's sampling protocol was premature. *See* Tr. 37:1-5 (finding unpersuasive UBS's argument "that it is premature to have a Daubert motion addressed to the sampling protocol that the plaintiff intends to use until one knows the defect rate"). The Court instead directed UBS to file any challenge to FHFA's Expert Report regarding sampling by September 7, 2012. Stip. & Proposed Order (Aug. 28, 2012). The Court noted that, given the amount of work that the parties would invest "in addressing the loans selected through the plaintiff's sampling protocol . . . it would behoove everyone to know whether or not it is going to be the basis of the receipt of admissible evidence at trial." Tr. 37:9-14. UBS agreed to do so, saying that "[o]bviously, we will do what your Honor orders," Tr. 38:16-17, and its counsel even acknowledged that he had "beaten a dead horse about the early Daubert motion," Tr. 49:10-12.

UBS now ignores the Court's ruling as to *Daubert* challenges, as well as its own representations. UBS failed to accept or to challenge the Cowan Report, and instead flogs the dead horse, re-arguing that "it is premature to evaluate the sampling issues in this case," and claiming to reserve rights to challenge "any and all assumptions or findings in the Cowan Report" at some later date. Mem. 1-2. UBS purports to base its argument of prematurity as to challenges of *sample design* on the fact that Dr. Cowan has not said which specific formula he will use to *extrapolate* from the sample to the population.[2] *Id.* But UBS has retained its own statistician and knows perfectly well that its argument lacks all validity, as set forth below.

---

[2]  If UBS intends only to reserve rights to challenge the particular *extrapolation formula* Dr. Cowan will use (once samples are designed, drawn, and tested), then this confirms UBS has no objection to the sample design set forth in Dr. Cowan's report. Notably, any reservation of rights as to extrapolation formulas must be narrow, as Dr. Cowan has already described two standard extrapolation formulas, Cowan Report ¶¶ 69-72, and UBS fails to challenge either one.

### A.  UBS's Argument Is Wrong As A Matter Of Statistics

There is no support in statistics for UBS's argument.  As Dr. Cowan explained in his report at ¶ 63, the particular *extrapolation formula* selected "will be the one that minimizes the margin of error.  Because the selection of the method depends on which reduces the margin of error the most, it is a relatively straightforward and uncontroversial process."

UBS cannot and does not adduce anything to contradict this elementary statistical principle.  As the statisticians on all sides know, the mathematical formulas of *extrapolation* do not determine the method of *sampling*.  Best practice is to determine the mathematical formulas of extrapolation *after* (1) the sample design has been selected, (2) samples have been drawn, and (3) the results have been determined as to the sample populations.  *See* Cowan Report ¶¶ 63-73.  There can be no reasonable objection to such an approach.

UBS does not explain why the open issues as to extrapolation have any bearing on the issues regarding sample design – and it cannot.  Nothing as to the particular extrapolation formula bears upon any legitimate objection as to *sample design*.  Indeed, this Court already recognized that UBS could challenge other aspects of FHFA's sampling methodology.  *See* Tr. 37:5-7 (As to "a margin of error plus or minus 10 percent, someone could say that that is insufficient in and of itself") *and* 37:7-8 ("[T]he expert for the defendants took that position in the June submissions").  If UBS had any legitimate objection to any of the actual steps in Dr. Cowan's *sample design* – such as the selection of the sample, the size of the sample, the margin of error, the confidence level, or the stratification variable – the objection could and should have been raised.  UBS's failure to object ends the inquiry on the validity of the sample design.

### B.  UBS's Argument Has Been Rejected In A Similar Action

UBS's argument has been rejected in almost identical circumstances.  In *MBIA Insurance Corp. v. Countrywide Home Loans, Inc.*, No. 602825/08, 2010 WL 5186702 (N.Y. Sup. Ct. Dec.

4

...

22, 2010), the expert report (also by Dr. Cowan) set forth the sampling methodology, while the re-underwriting and extrapolation had yet to be performed.  The court properly held that consideration of the admissibility of the evidence was not premature, *see id*. at *2-3, and ultimately allowed the sample evidence to be presented for purposes of both liability and damages, and as to both contract and tort claims.  Perhaps understandably, UBS does not cite this authority to the Court here, much less attempt to distinguish it.

> **C.     UBS's Argument Of Prematurity Is Contradicted By Its Own Submission, Which Raises (Meritless) Challenges To Dr. Cowan's Methods On Which UBS Nonetheless Fails To Move**

Claiming that it lacks necessary information to challenge Dr. Cowan's opinions, UBS nonetheless attacks (Mem. 3-5) certain of his methods – thus disproving its own assertion that any objection is premature.  UBS's challenges in any event are unsound.

> **1.     UBS Had Sufficient Information To Challenge The Representativeness And Randomness Of The Sample**

UBS claims it has "insufficient information to properly evaluate . . . whether the samples proposed by Dr. Cowan are representative and random," but it does not identify any information it supposedly lacks to perform this analysis.  Mem. 2 n.2.  The Cowan Report provided the method of sample selection, the samples themselves, and the results of significance testing, performed on eleven key variables to ensure the samples selected were representative of the populations.  If UBS *actually* believed it required more data, it should have advised the Court of *what* information it believed to be unavailable.

> **2.     No Originator-Specific Analysis Is Necessary**

UBS asserts that Dr. Cowan "fails to distinguish among originators," but it does not and cannot explain why such a distinction would be material to Dr. Cowan's analysis.  Mem. 3.

UBS's misrepresentations are not tied to any specific originator but the quality of the loan pool (and whether the loans conformed to guidelines) as a whole. As this Court recognized:

> FHFA's claim here is not that the *originators* failed to scrutinize loan applicants adequately in general; it is that *defendants* failed to act diligently to ensure that, consistent with the representations in the offering materials, the originators' questionable practices did not lead to the inclusion of non-conforming loans in the *particular* securitizations sold to the GSEs.

*Fed. Hous. Fin. Agency v. UBS Americas, Inc.*, No. 11 Civ. 5201 (DLC), 2012 WL 1570856, at *9 (S.D.N.Y. May 4, 2012) (emphases in original).

### 3. UBS Provides No Basis For Challenging Dr. Cowan's Targeted Margin of Error At A 95 Percent Confidence Level

UBS makes vague criticisms of a maximum margin of error of $\pm 10\%$ at a 95% confidence level, without tying these criticisms to any legal or statistical rule or principle. Mem. 4. UBS asserts, for example, that the choice is "arbitrary." *Id.* But the same argument could be said of any particular margin of error.

UBS also asserts that this margin of error may be "insufficiently precise." *Id.* UBS opens with an erroneous argument: According to UBS, an observed breach rate of 30%, for a sample drawn at a margin of error ("MOE") of $\pm 5\%$ (at a 95% confidence level) could show a true breach rate of between 25-35%. That is incorrect. As Dr. Cowan explained, the margin of error for his sample size is the *maximum* potential range of variability; for binary outcomes such as those tested here,[3] this maximum will occur only at the 50% breach rate.[4] Cowan Report ¶¶ 55-56, Chart 2. Thus, on UBS's own example of a 30% breach rate and a 5% MOE, the true breach rate falls within a much narrower range. The same applies to Dr. Cowan's sample

---

[3] A loan either *does* or *does not* materially breach the representations.
[4] The margin of error decreases as the breach rate moves away from 50% in either direction. *Id.*

method with its ±10% MOE: If the observed breach rate is either higher or lower than 50%, the actual breach rate will be within a narrower range than ± 10%. *Id.*

UBS advances no authority as to the purported inadequacy of a margin of error of ±10% (the maximum error margin, which arises only upon a finding of a 50% breach rate), and, more generally, misses the point entirely. The proper question is whether the sample design is adequate for Plaintiff's intended purpose: to provide at a 95% confidence level, an estimated breach rate within a margin of error of, at most, ±10% for each population of loans in each specific securitization. UBS cannot criticize the validity of the sample method by arguing that the margin of error should be ±2% or ±5% or something else. That is not a question of the validity of the method but, ultimately, of how compelling the evidence will be to the fact-finder.[5] Moreover, whether Plaintiff carries its burden of proof as to any claim will depend upon multiple sources of evidence, not just the extrapolated findings from the sample.[6] In making its specious criticisms, UBS is merely attempting to increase, by multiples, the 2,200 mortgage loans FHFA proposes to re-underwrite under Dr. Cowan's sample design.

### 4. Use Of A Stratification Variable Is Expected To Decrease The Margin Of Error

In pointing out that stratification by credit score *may* not reduce the margin of error (Mem. 5), UBS merely repeats one of Dr. Cowan's opinions. *See* Cowan Report ¶ 36 ("Stratification does not *guarantee* a diminution in the margin of error; it makes the diminution

---

[5] For example, if observed breach rates are any of 35% or 50% or 65%, it will not matter whether the margin of error is ±8% or ±10% or ±2%. The breach rates within any of these ranges for any of these values will still be material.

[6] As FHFA has explained, the sample findings are expected to be corroborative of other lines of evidence, and will simply provide additional rigor to FHFA's proof. *E.g.,* Status Conf. Tr. 49:16-21 (June 13, 2012) ("Indeed, we could prove this case without resorting to sampling. We could prove it we think after the first 100 or 200 instances of falsehood. We think that would be enough to show by a preponderance of the evidence that the misrepresentations would be material to reasonable investors.").

*possible*.") (emphases added).  UBS then erroneously infers (Mem. 5) that Dr. Cowan may not be able to achieve a maximum margin of error of ±10% at a 95% confidence level using stratification.  This is wrong as a matter of basic statistics.  As Dr. Cowan explained clearly, his target margin of error at a 95% level is the maximum; the margin of error will only be narrowed, not widened, by stratification, Cowan Report ¶¶ 34, 36, 51– a point Defendants' own statistician, Dr. Barnett, himself admitted.  *See* Declaration of Arnold Barnett, Ph.D., dated June 7, 2012 at ¶¶ 13(f) ("Plaintiff correctly notes that proportionate stratified random sampling . . . can potentially increase the precision of the population-wide estimates generated from the sample, as compared to pure random sampling.").

## II.   FHFA Is Entitled To An Order That Its Sampling Methodology Is Admissible

Plaintiff FHFA has submitted a fair and complete description of Dr. Cowan's proposed sampling methodology, as ordered by this Court.  By contrast, UBS simply disregarded the Court's Orders, and neither accepted the sampling method nor moved to exclude any testimony relating to such method on any basis, thereby waiving its objections.[7]  UBS has no right to supersede the Court's control over its own docket with purported reservations of rights to file untimely objections.[8]

---

[7]  *See Bedingfield v. Deen*, No. 09-369, 2011 WL 2712950 (W.D. La. July 8, 2011) (denying motion in limine to strike testimony of defense expert as "a veiled *Daubert* motion" which deadline had passed); *Praseuth v. Newell-Rubbermaid, Inc*., 219 F. Supp. 2d 1157 (D. Kan. 2002) (defendants waived right to challenge certain experts by failing to make *Daubert* motion prior to court's deadline); *Hernandez v. Gen. Motors Corp*., No. C-00-332, 2001 WL 36103819 (S.D. Tex. July 3, 2001) (granting plaintiff's motion to strike as untimely defendant's motion to exclude testimony of plaintiff's expert witnesses, noting "a party who ignores any case-management deadline does so at his own peril"); *Webster v. Fulton Cnty., Ga.*, 85 F.Supp.2d 1375 (N.D. Ga. 2000) (denying *Daubert* motion as untimely).

[8]  UBS's attempt to reserve its rights at the July 31 conference was ineffective, and contrary to the Court's direction for it to provide any challenge to FHFA's Expert Report regarding sampling by September 7, 2012.  *See* Tr. 38:10-18.  It is well-established that a district court has broad authority to manage its own docket.  *S.E.C. v. Rajaratnam*, 622 F.3d 159, 186

Because FHFA's motion is unopposed, this Court should hold that Dr. Cowan's sampling methodology is proper and admissible under Federal Rule of Evidence 702 and *Daubert*.

## CONCLUSION

For these reasons, FHFA respectfully requests that this Court issue an order that: (1) UBS has waived any challenge to Dr. Cowan's opinions as to sample design; and (2) the methodology set forth in the Cowan Report is admissible under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993).

DATED:   New York, New York
         October 4, 2012

                                                  QUINN EMANUEL URQUHART &
                                                     SULLIVAN

                                                  By: /s Philippe Z. Selendy
                                                         Philippe Z. Selendy
                                                         Christine H. Chung
                                                         Adam M. Abensohn
                                                         Manisha M. Sheth
                                                         Jordan A. Goldstein

                                                51 Madison Avenue, 22nd Floor
                                                New York, NY 10010-1601
                                                (212) 849-7000

                                                *Attorneys for Plaintiff Federal Housing*
                                                *Finance Agency, as Conservator for Fannie*
                                                *Mae and Freddie Mac*

---

(2d Cir. 2010) ("A district court has a legitimate interest in maintaining control over its docket and enjoys considerable discretion in setting schedules for discovery, motions, and trial . . . ."); *Harris v. Barkley*, 202 F.3d 169, 170 (2d Cir. 2000) (recognizing "broad authority of a presiding judge to set the trial schedule").