LAW OFFICES
# WILLIAMS & CONNOLLY LLP

725 TWELFTH STREET, N.W.

WASHINGTON, D. C. 20005-5901

EDWARD BENNETT
(202) 434-5083
ebennett@wc.com

(202) 434-5000

FAX (202) 434-5029

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

March 21, 2013



Via E-mail

Hon. Denise L. Cote
United States Judge
500 Pearl Street, Room 1610
New York, New York 10007-1312

Re: <u>FHFA Actions</u>

**MEMO ENDORSED**

Dear Judge Cote:

      On behalf of the non-UBS defendants in the above cases, we write in response to the Court's March 19, 2013 Order that the defendants across these cases reach a compelled consensus among 15 differently-situated defense groups regarding the timing and allocation of their 20 depositions of plaintiff. Although only the UBS defendants and FHFA were before the Court on the particular issue with respect to which the Order issued, we appreciate that the Order was directed at "[a]ll defendants." In light of the significant prejudice to each of our clients from having to conform each of our discovery and defensive strategies to the schedule in the *UBS* case as well as to the strategies of each of the defendants in the 14 other FHFA cases, we write to seek guidance regarding how the Court intends for the parties to proceed where one or more defendant(s) seek to notice depositions and one or more defendant(s) object.[1]

      Last week, UBS unilaterally sought to notice depositions of three Fannie and Freddie employees over the objections of the non-UBS defendants. Because noticing deponents now, before FHFA has completed its document production, substantially prejudices each of the 14 non-UBS Defendant groups, the non-UBS defendants objected to the depositions being scheduled. Notwithstanding the non-UBS defendants' objection, FHFA has stated that it intends to provide dates on which it will make those witnesses available for deposition and that those dates will be defendants' – including the non-UBS Defendants' – only opportunity to depose those witnesses.

      The coordinated discovery schedule set by the Court was predicated on the parties' substantial completion of document production by September 30, 2012, a date subsequently extended to October 22, 2012. Setting the opening of deposition discovery for January 2013 – and a close of fact discovery in August 2013 in the *UBS* case – was predicated on the parties having sufficient time during the Fall of 2012 to review each other's substantially complete document productions. Under the Court's schedule, depositions commenced more than three months after the substantial completion of document production. That goal of early completion of party document production, however, proved unattainable. *More than 60 percent of FHFA's document production to date has been provided after the October 2012 substantial completion date, with a significant portion being produced during just the last*

---

[1] Defendants reserve and do not waive the previously-stated objections to the discovery limits and procedures set by the Court.

Hon. Denise L. Cote
March 21, 2013
Page 2

*month*. FHFA has declined to provide any estimated date by which its production will be complete or the volume of remaining documents. Moreover, it appears that FHFA has produced crucial material (including key policies and procedures, as well as security-specific credit risk analyses) at the tail end of its planned production. These delays have interfered with defendants' review and analysis of the GSEs' documents, as well as an informed identification of party-deponents.[2] The non-UBS defendants intend to notice and take depositions after having received and reviewed as much of FHFA's delayed document production as possible, making use of the few extra months up to and beyond the *UBS* fact discovery cutoff afforded under the Court's schedule. This use of time is consistent with the Court's Scheduling Order, which contemplated a period of review and analysis of document productions before depositions.

The approximately six month slippage in the schedule for completion of FHFA's document production is not the only cause of prejudice to defendants. The 15 groups of defendants in these cases are each differently situated, as FHFA itself recognized.[3] These distinctions are manifested in multiple ways, including various defendants' pursuit of different strategies in motions and discovery. The distinct securitizations at issue for distinct defendants involve different GSE personnel, GSE policies that differ by product and over time, distinct GSE risk analyses, and varied approaches to evolving GSE housing goals and compensation programs. Because FHFA has brought different legal claims against different defendants, and fraud claims against a subset of defendants, the elements of claims and defenses on which discovery is needed vary, as do the facts of interest to each defendant. For fraud defendants, for example, the testimony of each individual whom FHFA claims relied on defendants' representations (*i.e.*, bond traders) is critical. Based on the documentary record to date, at least 10 different traders had a significant role in recommending or approving the more than 300 Securitizations at issue in the fraud actions. Those defendants which, like UBS, do not face a fraud claim, however, may reasonably wish to depose other GSE personnel about other issues.

The Court's Order, which potentially compels each defendant to accede to the strategies and schedules of dissimilarly-situated peers and to prematurely proceed with discovery based on a review of FHFA's incomplete production, impermissibly deprives the non-UBS defendants of the opportunity to obtain testimony critical to their defenses. *See Garber v. Rendell*, 477 F.2d 711, 716 (2d Cir. 1973) (upholding each party's "due process right to prosecute his own separate and distinct claims or defenses without having them so merged into the claims or defenses of others that irreparable injury will result."); *Long Island Lighting Co. v. Barbash*, 779 F.2d 793, 795 (2d Cir. 1985). Accordingly, the 14 non-UBS defendant groups respectfully request the Court's guidance regarding how it intends for the parties to proceed where one or more defendant(s) seek to notice depositions and one or more defendant(s) object.

---

[2] FHFA itself has identified 112 individuals who are likely to have discoverable information that FHFA may use to support its claims, and an additional 12 persons who were involved in the Securitizations, for no less than 124 people with relevant information, by plaintiff's own count. *See* Plaintiff's Am. Initial Disclosures (Oct. 25, 2012); Plaintiff's Second Am. Resps. to Defendants' First Set of Ints. (Aug. 19, 2012). A Fannie Mae Rule 30(b)(6) designee identified more than 30 individuals within six departments at Fannie Mae alone who were involved in the decision to purchase and manage risks associated with PLS.30(b)(6) Tr. of D. Cook, 57:4-20; 71:9-10; 108:9-17; 122:5-25; 131:14-20; 143:18-21; 151:9-25; 152:14-19; 258:18-259:20; 311:10-312:13; 401-15:20; 412:5-11; 433:9-11; 465:3-8; 533:21-22.

[3] "Among other things, each case contains (i) different securitizations, (ii) collateralized by different mortgage loans, (iii) underwritten by different loan originators (or a different combination of loan originators), (iv) according to different underwriting guidelines, (v) marketed and sold by different defendants, (vi) on different dates, (vii) by means of different registration statements and prospectus supplements, (viii) signed by different directors and officers and (ix) containing different representations." FHFA's Oct. 19, 2011 Submission.

                                            Respectfully submitted,

                                            /s/ Edward J. Bennett

*[Handwritten note:]* The parties shall confer and design a process for selecting deponents. If the parties cannot agree between two competing proposals, the Court shall hear the parties.

*Denise Cote*
*March 22, 2013*