## SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

125 Broad Street
New York, NY 10004-2498

By E-Mail

**MEMO ENDORSED**

June 17, 2013

Hon. Denise L. Cote,
   United States District Judge,
      Daniel Patrick Moynihan United States Courthouse,
         500 Pearl Street, Room 1610,
            New York, New York 10007-1312.

        Re:    *FHFA Actions*, No. 11-cv-5201, *et al.* (S.D.N.Y.) (DLC)

Dear Judge Cote:

        On behalf of Defendants in the above-referenced actions, we write to address FHFA's letter of June 13 concerning Defendants' request to extend the deposition of Michael Aneiro.

        It should come as no surprise that the fourteen Defendant families in these coordinated cases posed few transaction-specific questions during Mr. Aneiro's deposition. Defendants naturally devoted the majority of their limited time to common issues rather than topics that by definition interest only a single Defendant. That Defendants had only 6 minutes of Defendant-specific questions is not a function of prioritization, let alone "poor time management" as FHFA calls it, but rather the result of an inappropriate allotment of only two days for Defendants in 14 separate proceedings to question a witness about 334 different transactions. *See Garber v. Randell*, 477 F.2d 711, 715-16 (2d Cir. 1973) (consolidation of cases cannot "deny a party his due process right to prosecute his own separate and distinct claims or defenses without having them so merged into the claims or defenses of others that irreparable injury will result").

        That Defendants did not pose deal-by-deal questions was also a function of Mr. Aneiro essentially disclaiming reliance on prospectus supplements—at least until he reversed himself upon questioning from FHFA's counsel in the final minutes of the deposition. On the first day of his deposition, Defendants asked Mr. Aneiro in four separate questions whether he recalled the parts of the prospectus supplements that he had scanned: Q: "When you scanned through a prospectus supplement, which parts did you look at?" A: "I don't recall." (June 6 Tr. at 345:3-6); Q: "Can you recall any parts that you looked at?" A: "Not really, no." (*Id.* at 345:7-9); Q: "What part of a prospectus supplement, do you have any recollection of what part of a prospectus supplement you may have reviewed?" A: "I do not." (*Id.* at 349:21-25); "Okay. What information, if you know, does a prospectus supplement contain?" A: "I don't recall specifically." (*Id.* at 350:1-4.) Based on this testimony, Defendants elected not to use their limited time to question Mr. Aneiro on deal-by-deal offering materials. But after Defendants' time to question the witness had expired, FHFA's counsel prompted Mr. Aneiro with questions aimed at fixing this testimony, eliciting testimony that Mr. Aneiro read prospectus supplements to "get a sense as to what the various representations were, fraud representations, repurchase, repurchase representations, collateral descriptions, any kind of additional underwriting that may have occurred from, you know, dealer issuances" and

Hon. Denise L. Cote                                                                                                    -2-

that these representations were "relevant in the decisionmaking process and approving a deal for credit purposes." (June 7 Tr. at 402:7-21.)

It is now essential for Defendants to understand exactly which passages of the prospectus supplements this witness now claims to have read, how he interpreted them, the weight (if any) that he placed on them, and the particular deals for which he read any prospectus supplements. Given Mr. Aneiro's testimony that his subordinates did not read prospectus supplements (June 6 Tr. at 346:12-14), Mr. Aneiro may be the only Freddie Mac witness that will claim to have read any of the prospectus supplements that contain the alleged misstatements on which FHFA has based its case.

The 4.5 hours of examination that FHFA deems "off point" was informative for Defendants and effective against FHFA. Mr. Aneiro explained in detail the process by which traders analyzed the bonds at issue before committing to their purchase. Defendants' questioning established that Freddie Mac's decision whether to buy those bonds and how to price them relied almost entirely on factors that had nothing to do with the kinds of risks posed by the misstatements that FHFA alleges in its Complaints. FHFA's argument that the questioning on interest rate risks was "irrelevant" demonstrates exactly what Defendants were attempting to show: the main drivers of Freddie Mac's purchase and pricing decisions were factors that are irrelevant to FHFA's claims. To the extent traders relied on data that FHFA claims was misstated about the characteristics of loans, they used it only in a very limited way: by running it through a tool (that incorporated additional assumptions and data Mr. Aneiro could not identify or explain) to assess the adequacy of credit enhancement for a deal, a binary question. (*Id.* at 253:1-265:17.) Defendants' questioning also showed that, far from believing that loan collateral from a particular originator underlying PLS deals was somehow superior to the loans generally originated by that lender, traders expected the characteristics of an originator's collateral underlying PLS to reflect the general characteristics of loans underwritten by that originator. (*Id.* at 249:16-23.) Defendants showed Mr. Aneiro documents that he did not author because the deposition protocol does not permit Defendants to depose the authors or recipients of every significant document, and the purview of Mr. Aneiro's responsibilities justified an expectation that his knowledge was broad. The examination touched on certain foundational questions (which occupied no more than a few minutes of time) because such questions were often necessary predicates to later questions. In addition, Mr. Aneiro likely will not be available for trial, and Defendants are entitled to illustrate the meaning of fundamental terms and concepts for jurors through the testimony of Freddie Mac's head trader regardless of whether securities lawyers might consider such matters "elemental."

During the 4.5 hour segment on which FHFA has focused its criticism, Mr. Aneiro repeatedly emphasized his central role in approving purchases for all of the 334 bonds that Freddie Mac purchased from Defendants: "I took responsibility for the portfolio, for the whole thing." (*Id.* at 280:4-6.) "I have ultimate responsibility for the portfolio." (*Id.* at 281:6-7.) "I was the portfolio manager. I had ultimate authority as to whether to purchase [PLS] or not." (*Id.* at 285:5-7.) The importance of permitting further testimony from Mr. Aneiro could not be clearer.

Hon. Denise L. Cote                                                                                                    -3-

                                                  Respectfully Submitted,

                                                  /s/ Penny Shane

cc: Counsel for All Parties

> The request for additional deposition time is denied. The Court has read the entire deposition and considered the Defendants' arguments for additional time. The reasons for this ruling will be placed on the record at a future conference.
>
> /s/ Denise Cote
> June 18, 2013